R. Joseph Barton
jbarton@cohenmilstein.com
Bruce F. Rinaldi
brinaldi@cohenmilstein.com
**COHEN MILSTEIN SELLERS & TOLL PLLC**
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, DC 20005-3934
Telephone: (202) 408-4600
Facsimile: (202) 408-4699

Derek C. Johnson OSB #882340
djohnson@jjlslaw.com
Jennifer Middleton, OSB #071510
jmiddleton@jjlslaw.com
**JOHNSON JOHNSON LARSON & SCHALLER**
975 Oak Street, Suite 1050
Eugene, Oregon 97401
Telephone: 541-484-2434
Facsimile: 541-484-0882

**UNITED STATES DISTRICT COURT**
**DISTRICT OF OREGON**
**MEDFORD DIVISION**

| | |
|---|---|
| ROBERT W. JIMERSON, PHILIP BELLOTTI, and BRADLEY S. SNODGRASS on behalf of themselves individually, and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>JELD-WEN, INC., EMPLOYEE STOCK OWNERSHIP AND RETIREMENT PLAN, the ADMINISTRATIVE COMMITTEE OF THE Jeld-Wen, INC., EMPLOYEE OWNERSHIP AND RETIREMENT PLAN, RODERICK C. WENDT, RONALD SAXTON and John and Jane Does 1 through 5.<br><br>    Defendants. | Case No.:_____<br><br>**CLASS ACTION ALLEGATION COMPLAINT**<br><br>(ERISA Violations: 29 U.S.C. §1001 et seq.) |

Plaintiffs Robert W. Jimerson, Philip Bellotti, and Bradley S. Snodgrass, by and through their counsel, alleges as follows:

## <u>NATURE OF THE ACTION</u>

1.      This is a civil enforcement action brought pursuant to the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001 et seq., by Plaintiffs, on behalf of themselves and other participants and beneficiaries in the  Jeld-Wen, Inc., ("Jeld-Wen" or the "Company") Employee Stock Ownership and Retirement Plan ("Jeld-Wen ESOP," "ESOP" or "Plan") arising out of the failure of the plan fiduciaries to prudently invest the assets of the Plan and resulting in the adoption and implementation of amendment dated November 19, 2010 (the "2010 ESOP Amendment") that was designed to and did reduce and eliminate prior vested, accrued benefits under the Plan for employees who had previously separated from service with Jeld-Wen.

2.      The Jeld-Wen ESOP is a pension plan under ERISA that is designed to be and, upon information and belief, is primarily invested in the stock of Jeld-Wen, Inc.  There is no recognized market for Jeld-Wen stock.  As such, the value of Jeld-Wen stock is and must be determined at least annually by an independent valuation firm.

3.      Prior to November 19, 2009, the Jeld-Wen ESOP governing plan document provided that a plan participant who had separated from service with Jeld-Wen, but was not yet 55 years of age and was therefore ineligible for early retirement ("Separated Employee"), would have his or her vested accrued benefit under the Plan calculated based on the year-end valuation of Jeld-Wen stock in the year that he or she terminated employment, the value of which would then be placed in an "Undistributed Account," and that value would then continue to accrue interest at the "Local Passbook Rate" until the plan participant was qualified to receive and

received a full distribution of his or her benefits under the Plan Document. As a result of these pre-2010 plan provisions, Separated Employees did not benefit from any post-termination increases in the value of Jeld-Wen stock and likewise would not be affected by any post-termination decreases in the value of Jeld-Wen stock.

4.      As the terms of the Plan provided that Separated Employees would receive distributions of benefits that were fixed based on the value of Jeld-Wen stock as of the Annual Valuation following their termination, plus a Local Passbook Rate, the benefits paid to these Separated Employees were unrelated to the value of Jeld-Wen stock at the time that the benefits were actually paid (i.e. in installments over several years). Despite the Plan's obligation to pay benefits unrelated to the actual value of Jeld-Wen stock, the assets of the Jeld-Wen ESOP remained primarily invested in Jeld-Wen stock. The fiduciaries of the Jeld-Wen ESOP did not prudently invest sufficient assets of the Plan, including by investing the assets of the Plan in diversified investments, so that the Plan could honor its obligation and pay the benefits that were unrelated to the current value of Jeld-Wen stock.

5.      Through December 31, 2007, Jeld-Wen stock generally increased year over year. As a result, the appreciation of Jeld-Wen stock through 2007 was sufficient to satisfy the Plan's obligations to pay benefits unrelated to the current value of Jeld-Wen stock. In 2008, however, the value of Jeld-Wen stock began to decline, which, according to Jeld-Wen management, was a result in large part to a slowdown in new housing construction and a corresponding decline in the demand for the doors and windows manufactured by the Company. Between December 31, 2007 and December 31, 2011, the value of Jeld-Wen stock declined over 70%.

6.      This precipitous decline combined with the number of Separated Employees resulted in the Jeld-Wen ESOP facing the prospect of shortfall as the Plan had to use more of its

declining assets in Jeld-Wen stock to pay benefits to Separated Employees whose benefits were not only unrelated to the current value of Jeld-Wen stock, but increasing at a rate of three percent per year. This shortfall was caused by the Plan's fiduciaries' failure to have previously prudently invested the ESOP's assets to plan for the foreseeable time when Jeld-Wen stock would not sufficiently appreciate to fund the benefits promised to Separated Employees.

7.      On November 19, 2010, Jeld-Wen amended the Plan retroactively to January 1, 2010 to drastically change the value and amount of the vested and accrued benefits of Separated Employees. The 2010 ESOP Amendment eliminated the Local Passbook Rate of interest and provided that the Undistributed Accounts of Separated Employees would now be valued based upon the underlying value of Company stock. The 2010 ESOP Amendment also permitted the assesment of "new expenses" against the accounts of the participants in the ESOP, including the Undistributed Accounts of the Separated Employees (the "New Expenses"). These New Expenses consisted primarily if not exclusively not of actual expenses to administer the fund, but amounts used to pay distributions to certain participants whose accounts continued to be credited with the Local Passbook Rate of interest and continued to be valued without regard whether Jeld-Wen stock in the ESOP appreciated or depreciated in value (defined below as the "Grandfathered Accounts"). In essence, the Plan and its fiduciaries were using the New Expenses to cover up the losses to the plan caused by its fiduciaries' breaches of fiduciary duty.

8.      Prior to 2010, Plaintiffs, who had separated from service from Jeld-Wen had their vested benefits under the ESOP valued at the Annual Valuation Date following their termination, held in trust, and were entitled to have those benefits accumulating interest at the Local Passbook Rate until such time as the Plaintiffs became eligible for and received a full distribution of their benefits. Each year following their separation from service as provided under the Plan until

2010, their benefits increased by the Local Passbook Rate (without being assessed any New

Expenses) . Effective as of January 1, 2010, Plaintiffs' Undistributed Accounts no longer

accrued interest at the Local Passbook Rate, increased or decreased in value at the same rate at

which Jeld-Wen stock increased or decreased, and were assessed the New Expenses. As a result

of the 2010 ESOP Amendment, instead of growing by at least 3% per year, the vested benefits of

Plaintiffs and other similar Separated Employees decreased as a result of the continuing decline

in value of Jeld-Wen stock and the assessment of New Expenses. Between January 1, 2010 and

December 31, 2011, instead of increasing in value by at least 6%, Plaintiffs' benefits based on or

maintained in the Undistributed Accounts declined by more than 43% as a result of the decline in

Jeld-Wen stock and were assessed New Expenses totaling 8% of the balances in the

Undistributed Accounts

9.      The adoption of the 2010 ESOP Amendment and its application by the Defendant

Administrative Committee: (i) has deprived and will continue to deprive the Plaintiffs and the

Class of accrued benefits for which they are entitled to assert a claim under the Plan; (ii) violated

the anti-cutback provision of Section 204(g) of ERISA, 29 U.S.C. 1054(g) which prohibits

reductions in accrued benefits; (iii) reduced significantly the rate of benefit accruals of the

Plaintiffs and the Class without providing proper notice under ERISA § 204(h), 29 U.S.C.

1054(h). In addition, the Administrative Committee of the Jeld-Wen ESOP violated its

obligations to discharge their duties solely in the interest of participants and beneficiaries of the

ESOP and for the exclusive purpose of providing benefits to the participants and beneficiaries,

with care, skill, prudence, and diligence, by diversifying the assets of the ESOP so as to

minimize the risk of large losses, and to administer the Plan in accordance with the governing

instruments of the ESOP in violation of Section 404(a)(1)(A), (B), (C) and (D) of ERISA, 29 U.S.C. § 1104(a)(1)(A),(B), (C) and (D).

## JURISDICTION AND VENUE

10.    **Subject Matter Jurisdiction**.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and ERISA § 502(a), 29 U.S.C. § 1132(a).

11.    **Personal Jurisdiction**.  This Court has personal jurisdiction over Defendants because they transact business in, and have significant contacts with, this District, and because ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2) provides for nationwide service of process..

12.    **Venue.**  Venue is proper in this district pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), for at least the following reasons:

(a)    Defendants may be found in this District, as they transact business in, and/or have significant contacts with this District; and/or

(b)    Some of the alleged breaches took place in this District because some of Plaintiffs and other class members earned some or all of their pension credits and receive(d) their pension payments in this District and/or were or will be denied the benefits in this District.

## PARTIES

**Plaintiffs**

13.    Plaintiff Robert W. Jimerson is a former employee of Jeld-Wen and a current participant in the Jeld-Wen ESOP within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7). Plaintiff Jimerson began working at Jeld-Wen in 1981 as a Management Trainee in Arizona. After working for a short time at the manufacturing plant in Jeld-Wen of Oregon in Klamath Falls, Oregon, as a Group Manger, Jimerson was transferred in 1983 to Jeld-Wen's corporate

offices in Klamath Falls, Oregon, where he held a number of management level positions with

Jeld-Wen, Inc. through 2005.  In his final position at Jeld-Wen, Manager: Market Research

Analyst, Jimerson was responsible for market research and economic analysis at the corporate

level. Jimerson terminated his employment with Jeld-Wen in 2005 at the age of 47.  At the time

of his separation from employment, Jimerson was a fully vested participant in the ESOP having

accumulated 25 years of vesting credits.  Jimerson currently resides in Puyallup, Washington.

      14.     Plaintiff Philip Bellotti is a former employee of Jeld-Wen and a current

participant in the Jeld-Wen ESOP within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7).

Bellotti began working at Jeld-Wen in 1992 as the Controller of Trendwest, an affiliate of Jeld-

Wen, and over the next sixteen years worked as a Controller or Group Controller for a number of

Jeld-Wen Divisions and/or affiliated entities.  In his final position at Jeld-Wen as Group

Controller-Pacific Rim Bellotti was responsible for integrating the accounting systems of new

acquisitions of the Company in the Pacific region.  Bellotti terminated his employment with Jeld-

Wen on September 10, 2008, at the age of 46.  At the time of his separation from employment

Bellotti was a fully vested participant in the ESOP having accumulated 16 years of vesting

credits.  Bellotti currently resides in Pleasanton, California.

      15.     Plaintiff Bradley S. Snodgrass is a former employee of  Jeld-Wen and a current

participant in the Jeld-Wen ESOP within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7).

Snodgrass began working in 1989 as a Group Manager for Jeld-Wen at their Stayton Oregon

Window plant.  He left the Company in 1994 and returned in 1999 assuming the position of

Regional Door Sales Manager for the Pacific Northwest.   Until he terminated his employment

with Jeld-Wen in 2007, he generally worked as a manager in window and door sales.  At the time

of his separation from employment, Snodgrass was a fully vested participant in the ESOP having accumulated 15 years of vesting credits.  He is currently a resident of Canby, Oregon.

**Defendants**

 **The Defendant Plan**:

 16. The Jeld-Wen ESOP is an "employee pension benefit plan" within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A). Upon information and belief, the Plan is administered in Klamath Falls, Oregon.  The Jeld-Wen ESOP purports to be a "defined contribution plan" within the meaning of ERISA § 3(34), 29 U.S.C. § 1002(34).  Based on the description in the Jeld-Wen Plan Document, at least a portion of the Plan as described therein constitutes a "defined benefit plan" within the meaning of ERISA § 3(35), 29 U.S.C. § 1002(35), because at least some of the benefits provided by the Plan were not based solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other participants which may be allocated to such participant's account.

 **The Administrative Committee Defendants**

 17. Defendant Ronald Sexton at the time of the 2010 ESOP Amendment was an Executive Vice-President and Chief Administrative Officer of JELD-WEN, and on information and belief was and continues to be a member of the ESOP Administrative Committee.

 18. Defendant Roderick C. Wendt, at the time of the 2010 ESOP Amendment was the President and Chief Executive Officer of Jeld-Wen and on information and belief was and continues to be a member of the ESOP Administrative Committee.

 19. John Does 1 through 5 are the other members of the Administrative Committee of the Jeld-Wen, Inc., Employee Ownership And Retirement Plan (the "ESOP Administrative Committee"), the identity of whom are unknown to Plaintiffs at this time.

20.    The ESOP Administrative Committee acts as the Administrator of the Plan within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A) is responsible for the administration of the Plan and is responsible for the investment of the ESOP's assets.  Defendants Wendt, Saxton and Does 1-5 (collectively the "Administrative Committee Defendants") are fiduciaries with respect to the ESOP within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21), as members of the ESOP Administrative Committee and because they exercise discretionary authority or discretionary control respecting management of the ESOP, exercises authority and control respecting management or disposition of the ESOP's assets, and/or have discretionary authority or discretionary responsibility in the administration of the ESOP.

## CLASS ACTION ALLEGATIONS

21.    Plaintiffs brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Classes:

Class #1:        (A) Participants in the Jeld-Wen ESOP (1) who terminated their employment with Jeld-Wen before November 19, 2010, (2) who were vested in the Plan at the time of their termination of employment, (3) for whom the Plan at the time of their termination provided that their benefits would be valued at the Annual Valuation following their termination and would accrue interest at the Local Passbook Rate and (4) to whom the 2010 ESOP Amendment was applied to their benefits.

(B)        Beneficiaries of any of the Participants described above.

Class #2:        Participants in the Jeld-Wen ESOP whose accounts in the ESOP were

assessed the New Expenses after January 1, 2010 and their beneficiaries. Excluded from the Class are the following persons:  (a) the Administrative Committee Defendants, (b) any fiduciaries of the Plan, (c) any officers and directors of Jeld-Wen (d) any other persons who had any decision-making or administrative authority relating to the adoption and application of the ESOP Amendment to the Plan and (e) any member of the immediate family of and any heirs, successors or assigns of any such excluded party .

**Numerosity**

22.     According to the Forms 5500 filed with the Department of Labor by Jeld-Wen, between 2007 and 2010 the number of active eligible participants in the ESOP decreased from 10,892 to 7,921.   As of the end of the year 2007, the Form 5500 reported 3,062 "other retired or separated participants entitled to future benefits."   By the end of 2010 the number of other retired or separated participants entitled to future benefits had increased to 3,401.   Based on the decline of the number of active participants in the Plan between 2007 and 2010 of nearly 4,000 and a significant increase in the number of retired or separated participants entitled to future benefits during that same time frame, it is estimated that there are a substantial number of Separated Employees whose vested benefits were reduced as a result of the 2010 ESOP Amendment.   It is further estimated that every participant Class Member also has at least one corresponding beneficiary.  Therefore, the number of Class participants is sufficiently numerous so that joinder would be impractical.

23.     Additionally, Jeld-Wen operates manufacturing facilities all over the United States and does business in at least 19 nations around the world.   Upon information and belief, employees of Jeld-Wen and participants in the Jeld-Wen ESOP are located across the country. Therefore, the members of the Class are estimated to be geographically disbursed across the United States.

**Commonality**

24.    The issues of liability are common to all members of the Class as those issues concern whether vested benefits under the ESOP of Separated Employees were improperly reduced by the adoption and application of the 2010 ESOP Amendment and whether the fiduciaries of the Plan breached their fiduciary duties in administering, operating and investing the assets of the ESOP.

25.    The issues regarding the relief are also common to the members of the Class as the relief will primarily consist of a (a) declaration that the members of the Class are entitled at a minimum to benefits paid from the Jeld-Wen ESOP in accordance with the terms of the Plan in effect at the time of their termination, plus interest thereon, (b) an order that the benefits be calculated and paid in conformity with that declaration, (c) an order requiring the fiduciaries to make whole any losses to the plan and/or disgorge any profits, (d) other appropriate equitable relief against the fiduciaries of the Plan to remedy their breach of fiduciary duties.

**Typicality**

26.    Plaintiffs' claims are typical of the claims of the other members of the Class because their claims arise from the same event, practice and/or course of conduct.  Specifically, Plaintiffs' claims on behalf of themselves and the members of  Class #1 challenge Defendants' ability to amend the terms of the Jeld-Wen ESOP after their termination from employment and to apply the post-termination 2010 ESOP Amendment in calculating the value of vested benefits which accrued pre-termination.  Specifically, Plaintiffs' claims on behalf of themselves and the members of Class #2 challenge whether Defendants' prudently managed and invested the assets of the ESOP.

27.    Plaintiffs' claims are also typical of the claims of the other members of the Class because the relief primarily sought consists of (a) a declaration establishing their rights under the

11-CLASS ACTION ALLEGATION COMPLAINT

Plan in effect at the time of their termination (b) requiring the fiduciaries to make the Plan whole any losses caused by their fiduciary breaches and to disgorge their profits to the Plan, and (c) any such recovery will be paid to the Plan and any equitable relief flow to all participants.

28.    Defendants do not have any defenses unique to any of Plaintiffs' claims.

**Adequacy**

29.    Plaintiffs will fairly and adequately represent and protect the interests of the members of the Classes.

30.    Plaintiffs do not have any interests antagonistic to or in conflict with the interests of the Classes.

31.    Defendants have no unique defenses against the Plaintiffs that would interfere with Plaintiffs' representation of the Classes.

32.    Plaintiffs have engaged counsel with extensive experience prosecuting class actions in general and ERISA class action litigation in particular.

**Rule 23(b)(1)(B)**

33.    The requirements of Fed. R. Civ. P. 23(b)(1)(B) are satisfied because the primary issues in this case involve questions concerning the interpretation of the terms of the Jeld-Wen ESOP, the 2010 ESOP Amendment, and the requirements of ERISA as it applies to all participants in the ESOP.

34.    As a practical matter, resolution of the question of whether the adoption and application of the 2010 ESOP Amendment resulted in an improper decrease in the benefits accrued by the Plaintiffs and the Class subsequent to their termination of employment would be dispositive of the interests of the other members of the Class.  As a practical matter, resolution of

the question whether the Administrative Committee breached their fiduciary duties as to one

Plaintiff would also be dispositive of those claims as to the other members of the Class.

**Rule 23(b)(1)(A)**

35.    The requirements of Fed. R. Civ. P. 23(b)(1)(A) are also satisfied because the

Plan Administrator has a legal obligation to interpret and apply the terms of the Plan consistently

for all similarly situated participants and to uniformly act in the best interests of the Plan.  As one

of the primary issues in this case involves the interpretation of the terms of the Plan, conflicting

interpretations of the same Plan as to similarly situated participants creates the risk of

establishing incompatible standards of conduct for the Plan and its administrator. Similarly,

conflicting determinations about whether the Administrative Committee Defendants breached

their fiduciary duties creates the risk of establishing incompatible standards of conduct for the

Plan and its fiduciaries.

**Rule 23(b)(2)**

36.    The requirements of Fed. R. Civ. P. 23(b)(2) are met in this action as to certain

claims because the Administrative Committee applied the 2010 ESOP Amendment to the

Plaintiffs and all Class members in the same manner.  Additionally, the relief sought by the

Plaintiffs is a declaration of their rights under the terms of the Plan, making appropriate final

declaratory and injunctive relief with respect to the Class as a whole.

**Rule 23(b)(3)**

37.    The requirements of Fed. R. Civ. P. 23(b)(3) are met in this action because (a) the

questions of law and/or fact -- whether the adoption and application of the 2010 ESOP

Amendment resulted in an improper decrease in the accrued benefits of the Plaintiffs and all

Class members and whether the Administrative Committee Defendants breached their fiduciary

obligations -- are not only common, but will predominate over any individual questions and (b) a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

## FACTUAL ALLEGATIONS

**Background of Jeld-Wen**

38.   Jeld-Wen is a privately owned company based in Klamath Falls, Oregon that was founded in 1960.   Its principal business is the manufacture and distribution of a range of interior and exterior doors, wood, vinyl and aluminum windows and related products for use in the repair, remodeling and new construction of homes and commercial buildings.

39.   Jeld-Wen has manufacturing facilities in, and offers its door and window products for sale through dealers throughout, the United States.  The Company also has manufacturing and distribution locations in Australia, Austria, Canada, the Caribbean, Chile, Denmark, Estonia, Finland, France, Hungary, Germany, Latvia, Norway, Poland, Romania, Spain, Sweden, Switzerland, and  the United Kingdom.

40.   There is, and at least since 2009 has been, no public market or nationally recognized market for Jeld-Wen stock.   Each quarter since at least 1989 Jeld-Wen's management has valued shares of Jeld-Wen stock on an Adjusted Book Value Per Share Basis. Each year between 1989 and 2007, the Adjusted Book Value Per Share of Jeld-Wen stock as determined by its management increased in value.

**The Jeld-Wen ESOP**.

41.   The Jeld-Wen ESOP was established effective March 15, 1995, when the Jeld-Wen, Inc., Employee Stock Bonus and Retirement Plan was amended and restated to convert the plan into the Jeld-Wen ESOP.  The written instrument, within the meaning of ERISA § 402, 29 U.S.C. § 1102, pursuant to which the Plan is maintained is the Jeld-Wen, Inc., Employee

Ownership and Retirement Plan (the "Plan Document"). On information and belief, the Plan Document has since been amended and restated as of at least January 1, 2002, January 1, 2007, and January 1, 2008.   The Jeld-Wen ESOP has been amended several times since January 1, 2008, including the 2010 ESOP Amendment.   On information and belief, the Jeld-Wen ESOP has not been restated since January 1, 2008.

42.     Pursuant to Section 7.1 of the Plan Document, the Administrative Committee is supposed to maintain a number of separate "subaccounts under the Account for each Participant."   According to Section 7.1 of the Plan Document, these subaccounts include, among others, (i) the "Regular Employer Contributions Account," (ii) the "Basic Employer Contribution Account," and (iii) the "Tax Credit Employer Contribution Account," into which accounts Jeld-Wen made employer contributions.

43.     According to Plan Document § 7.1, Participant's Accounts also included an "Elective Deferrals Account" which contains an employee's elective deferral for the plan years prior to January 1, 2007.  Effective January 1, 2007, Jeld-Wen established the Jeld-Wen 401(k) Retirement Savings Plan (the "Retirement Savings Plan").  After that date, employees were eligible to make elective deferral into the Retirement Saving Plan, but no additional employee deferrals were permitted into the Elective Deferral Account of the ESOP.  On information and belief, the Retirement Savings Plan does not offer Jeld-Wen stock as an investment option

44.     According to Plan Document  § 7.1, a Participant's Accounts also included a "Matching Contributions Account" which contains discretionary matching contributions made on behalf of eligible participants who have made elective deferrals into the Elective Deferral Account.

45.    Pursuant to Section §14.2 of the Plan Document, the investment of the ESOP's assets, which "shall be controlled by the Administrative Committee," are to be held in Trust by a Trustee.

46.    Pursuant to § 12.1 of the Plan Document, the investment and funding policy of the Plan is to invest the assets of the ESOP "primarily in Company Stock."

47.    Pursuant to §§ 12.4 and 12.5 of the Plan Document, the Administrative Committee may also direct the Trustee to invest in Collective Investment Funds.

48.    Under the terms of the Plan Document §§ 2.5 and 7.3(b), Company Stock held by the Jeld-Wen ESOP is required to be valued by an independent appraiser at least once a year on December 31, the "Valuation Date."

49.    Pursuant to Plan Document § 12.1, the  value of a Participant's Account and each of the subaccounts of a participant increases or decreases with the appreciation or depreciation of the value of Jeld-Wen stock so long as, but only so long, as a participant continues to be employed by Jeld-Wen.  Under the Plan Document prior to 2010, after a participant ceases to be employed by Jeld-Wen, the participant's account did not increase with the appreciation of the value of Jeld-Wen stock and did not decrease with the depreciation of Jeld-Wen stock.

50.    Plan Document § 7.5 provides that as of each Annual Valuation Date, Participant Accounts for current employee-participants, as appropriate, must be adjusted to credit participants with a portion of contributions, forfeitures, elective deferrals, and the appreciation or depreciation in the value of Company Stock held by the Trust

51.    Pursuant to Plan Document §§ 9.4 and 2.49, when a participant separates his or her employment relationship with the Company he or she is a considered to have "Separated from Service" and pursuant to § 9.4 of the Plan "participation in the Plan shall cease," and the

participant's interest in his or her Participant's Accounts is subject to distribution as provided under the Plan Document.

52.     Pursuant to Plan Document § 7.6, at the time an employee separates his or her employment relationship with the Company, the balances in his or her Participant Accounts are valued as of the next Annual Valuation Date for Jeld-Wen stock.

53.     The Plan Document § 2.1 provides that a "Participant's accrued benefit under the Plan shall be equal to the combined balance of all the subaccounts maintained for the Participant [the Participant's Accounts]" at the next Annual Valuation Date.  The vested balance in a Participant's Accounts under the Jeld-Wen ESOP as determined at the time of an employee's separation from service with the Company constitute an "accrued benefit" within the meaning of Section 3(23)(B) of ERISA, 29 U.S.C. § 1003(23)(B).

54.     Once a participant acquires an accrued benefit in the form of a Participant Account balance upon separation from service, the Plan Document §§ 16.2(c) and (e) expressly provides that "[n]o amendment shall decrease a Participant's Account balance" and "no amendment shall cause any reduction in the nonforfeitable accrued benefit of any Participant."

55.     The Plan Document § 16.2(f) provides that any amendment to the Plan that "has the effect of eliminating or reducing a protected benefit" should be disregarded by the Administrator of the ESOP.

56.     Pursuant to Plan Document § 10.4(b)(ii)(a), a participant's accrued benefits in the Elective Deferrals Account, the Basic Employer Contribution Account and the Matching Contributions Account are subject to distribution as soon as administratively feasible in the year following a participant's separation from service.

57.     Pursuant to Plan Document § 10.4(b)(ii)(b), a participant who separates his/her employment with the Company before attaining the "Early Retirement Age," which is defined under the Plan § 2.19 as 55 with 15 years of service ("Early Retirement'), is entitled to a distribution of the accrued benefits in his or her Regular Employer Contribution Account or the Tax Credit Employer Contribution Account only upon the earlier of the date the participant has (i) attained Early Retirement or (ii) six more years.

58.     Under §10.3(a)(ii) of the Plan Document, once a Separated Employee qualifies for a distribution, either by reaching Early Retirement age or being separated from service at least six years, a distribution of the accrued benefits in his or her Regular Employer Contribution Account or the Tax Credit Employer Contribution Account in "substantially equal annual installments over a period of five years."

**The Treatment of Accrued Benefits in the Undistributed Accounts Prior to the 2010 ESOP Amendment**

59.     Pursuant to Plan Document § 7.8 prior to the 2010 ESOP Amendment, a participant who separated his or her employment but was not yet eligible for Early Retirement, the accrued benefits in his or her Participant's Accounts which were not subject to immediate distribution under the Plan, including the Regular Employer Contribution Account and the Tax Credit Employer Contribution Account, were required to be placed in an "Undistributed Account" and subject to a "Deferred Distribution" at such time as the participant became eligible to receive a distribution of the Undistributed Account.

60.     Section 7.8 of the Plan Document provided as follows:

7.8    **Undistributed Accounts**. Any part of a Participant's Account which is retained in the Trust after the Participant's Separation From Service . . . . shall be held and administered as follows:

* * * * *

(b) **Deferred Distribution**. If the time of distribution of the Participant's Account is deferred . . . the value of the Participant's Account shall be the value of the Participant's Account on the December 31 coinciding with or following the Participant's Separation From Service. *The Account shall be credited with interest at the Local Passbook Rate in effect for such year.* The Account shall not be credited with any further contributions, Forfeitures, or for any appreciation or depreciation in the value of Company Stock held by the Trust after the December 31 Valuation Date used to value the Account. (emphasis added).

61.    The Local Pass Book Rate at which accrued benefits in a participant's

Undistributed Accounts were credited with interest after his or her separation from service until

the Undistributed Accounts were distributed was defined under § 2.40 of the Plan as follows:

2.40.    **"Local Passbook Rate"** shall mean the Wells Fargo passbook rate of interest credited from time to time to savings account; however, the minimum rate shall be 3% and the maximum rate shall be 5%.

62.    Prior to the 2010 ESOP Amendment, the vested accrued benefits in the

Participant Accounts of a Separated Employee, including the Regular Employer Contribution

Account and the Tax Credit Employer Contribution Account, were supposed to remain in an

Undistributed Account and were credited each year with the Local Passbook Rate of interest

until the Undistributed Account was fully distributed.  Prior to the 2010 ESOP Amendment, the

Undistributed Accounts were no longer credited with any appreciation or depreciation in the

value of Jeld-Wen Stock held by the Trust once the participant had separated his or her

employment with the Company.

63.    Pursuant to Section 7.3(a) of the Plan Document, all Plan expenses for which the

Trustee had not obtained reimbursement from the Company were deducted from the value of the

Trust Fund, but were not allocated to the Undistributed Accounts.

**The Financial Decline of Jeld-Wen**

64.    On March 8, 2008, Jeld-Wen's management announced to participants of the ESOP in the 2007 Annual Jeld-Wen, Inc. Activity Report that the Adjusted Book Value of Jeld-Wen's was $746.31 per share.

65.    On March 14, 2009 the Jeld-Wen Board of Directors reported to shareholders that "[i]n 2008 we began to experience a global recession highlighted by unprecedented financial market turmoil.  This exacerbated the poor market conditions we had already been dealing with in most areas we operate in" and "[c]onsolidated net sales [for the Company] were down 6% in 2008."   As a result the Jeld-Wen Board announced to shareholders on March 14, 2009, that as of December 31, 2008, it had determined value of the Jeld-Wen stock had fallen to $612.15.

66.    Four months later on July 29, 2009, the Board announced that an independent appraiser had determined that in fact the value of Jeld-Wen stock as of December 31, 2008, was only $507.63.  In the span of one year, between year end 2007 and year end 2008 Jeld-Wen stock lost over 38% of value.

67.    At the end of 2009 the Jeld-Wen Board indicated to shareholders that it did not know whether Jeld-Wen had "hit the bottom of the downturn."  According to the Board, the reported results of the Company continued to "reflect the impact of the global economic recession and the challenges facing the New Construction and Repair & Remodel industries, which drive [Jeld-Wen's] manufacturing operations" and the company "did not expect meaningful recovery of economic conditions to occur very rapidly."

68.    By the end of 2009 the value of Jeld-Wen stock had declined an additional 18% in value to $417.42 per share.

69.    As the Jeld-Wen Board had predicted, there was no meaningful recovery in the value of Jeld-Wen Stock after 2009.  At the end of the 3rd Quarter of 2010, management of Jeld-Wen reported to the shareholders that "Year over year, . . . gross profit fell 4%."

70.    By December 31, 2010, the value of Jeld-Wen shares had declined another 13% to $364 per share and by December 31, 2011, the value Company Stock had fallen to $236.15 a decline of an additional 35% in value.

71.    Between December 31, 2007 and December 31. 2011, Jeld-Wen stock lost over $510 a share or approximately 69% of its value.

72.    By the end of 2010 Jeld-Wen was highly leveraged. As of the end of 2010, Jeld-Wen reported that it had over $1.1 billion in outstanding indebtedness, including: (i) Senior Secured Notes due September 30, 2012 in the amount of $475,429,000; (ii) borrowings under a domestic secured credit agreement dated July 8, 2009, in the amount of $534,082,000; and (iii) borrowings under the Europe B.V. secured credit agreement dated as of July 8, 2009 in the amount of $100,855,000.

73.    This level of indebtedness increased the risk that Jeld-Wen would be unable to generate cash sufficient to pay the amounts due with respect to this indebtedness and had the effect of, among other things:

- Limiting the Company's ability to obtain financing in the future for working capital, capital expenditures, acquisitions, debt service and other general corporate purposes;

- Requiring the Company to use a substantial portion of available cash flow to serviced debt;

- Increasing the Company's vulnerability to economic downturns and adverse industry conditions;

- Placing the Company at a competitive disadvantage compared to its competitors;

- Increasing the risk of the Company failing to satisfy its obligations with respect to its debt which could have resulted in an event of default; and

- Increasing the Company's cost of borrowing.

74.    Additionally, as of December 31, 2010, Jeld-Wen estimated that its unfunded liabilities under its U.S. defined benefit plans were $127.9 million and under its foreign defined benefit plan $20 million.

75.    The Company reported that under the Internal Revenue Code, the Pension Protection Act and related Treasury Regulations, its "pension plan will be deemed an 'at-risk' plan for 2011."

**The 2010 ESOP Amendment**

76.    As the value of Jeld-Wen stock lost over 50% of value and the price fell from $746.31 to $364.00 per share between 2007 and 2010, Jeld-Wen announced on November 12, 2010, the adoption of the 2010 ESOP Amendment.   The 2010 ESOP Amendment changed the manner in which benefits would be calculated based on the balances of Participants' Accounts maintained in Undistributed Accounts by the Administrative Committee after Separated Employees had terminated their employment with the Company.

77.    As a result of the 2010 ESOP Amendment, which was made retroactive to January 1, 2010, the account balances of retired and separated participants no longer were credited with interest on the Undistributed Accounts at the Local Passbook Rate of between 3% and 5%.

78.    A Q&A Sheet was distributed on November 12, 2010 informing employees of the adoption of the 2010 ESOP Amendment (the "Q&A Sheet").  According to the Q&A Sheet, participants' benefits held by the Plan in the Undistributed Accounts would be valued based

upon the underlying Company stock and "ESOP account values will increase or decrease in value with the ongoing increases or decreases in the Company's stock value starting in 2010."

79.    The 2010 ESOP Amendment contained a provision which exempted the application of the amendment to distributions from Undistributed Accounts which were either paid or started in 2010 (the "Grandfather Provision"). The changes in the 2010 ESOP Amendment did not apply, and upon information and belief have not been applied to former employees who were entitled to and elected, on or before December 13, 2010, to receive a lump sum distribution or to start the distribution of installment payments.  Eligible participants were given one month to make such an election, otherwise their accounts would no longer would be credited with interest and would rise or fall with the future value of Jeld-Wen stock.

80.    The Q&A Sheet claimed that the 2010 ESOP Amendment resulted from the fact that "the IRS issued new guidance calling into question the ESOP's ongoing ability to use a rate of interest to adjust the ESOP accounts of former employees after their termination."  The Q&A Sheet stated that "[t]his new guidance suggests that one way to preserve the tax qualified status of the ESOP is for all ESOP participants to have their accounts adjusted and valued in the same way, with reference to the value of the core underlying assets of the ESOP Trust – Company stock."

81.    A subsequent Confidential Disclosure Document was given to shareholders of Jeld-Wen in a stock repurchase disclosure statement on October 21, 2011 (the "Disclosure Document").  The Disclosure Document explained the 2010 ESOP Amendment and the IRS guidance as follows:

> The crediting of interest to the former employee participants' accounts and not charging their accounts for decreases in the value of Common Stock of the Company further reduced the value of the accounts of the employee participants.

In February 2010, the internal Revenue Service (the "IRS") published guidance on handling participant accounts in employee stock ownership plans generally, and indicated that the IRS would seek to challenge certain methods that treat terminated employees differently from active employees. *The guidance did not squarely address the foregoing allocations method for our ESOP, which was the methodology on which the ESOP's prior favorable IRS determination letters were based.* However we determined to amend our ESOP effective January 1, 2010, in part to be consistent with the new IRS guidance, with certain grandfathering and transition rules preserving the prior allocation methodology during a phase out period for former employee participants who were paid benefits or commenced receiving installments before December 31, 1010. (*emphasis added*)

Disclosure Document at page 7.

82.     The 2010 ESOP Amendment also conferred upon on the Administrative Committee the "discretion about the manner of allocating reasonable plan and trust expenses among Participants and Beneficiaries" including Separated Employees whose accrued benefits were maintained in Undistributed Accounts.

**The Impact of the 2010 ESOP Amendment On the Value of Accrued Benefits in the Undistributed Accounts**

83.     The 2010 ESOP Amendment had the effect of eliminating or reducing the value of the accrued benefits of Participant Accounts held by the ESOP in Undistributed Accounts as of December 31, 2010.

84.     First, the 3% Local Passbook Rate of interest was not paid on the account balances of retired or separated participant for the for the entire year of 2010, as would have otherwise occurred if the 2010 ESOP Amendment had not become effective and made retroactive to January 1, 2010.

85.    Second, except for certain retired employees who elected to take immediate lump sum cash out or to request an immediate distribution before the end of 2010, the balances in the Undistributed Accounts of  Separated Employee declined by approximately 13%, the amount by which the value of Company stock depreciated in 2010.

86.    Third, rather than subtracting Plan expenses from the Trust Fund, the Administrative Committee allocated New Expenses to the Undistributed Accounts which amounted to approximately 1% of the balances in the Undistributed Accounts.

87.    As a result of the retroactive application of the 2010 ESOP Amendment, the value of Undistributed Accounts of Separated Employees at the end of Plan year 2010 was approximately 17% less than it would have been absent the 2010 ESOP Amendment.

88.    In 2011, the 2010 ESOP Amendment had the effect of further reducing the value of participants Undistributed Accounts. In addition to not having the 3% Local Passbook Rate of interest credited to their Undistributed Account, the account balance in Undistributed Accounts declined at least an additional 35%, the amount by which Jeld-Wen stock depreciated in 2011. The Administrative Committee also allocated New Expenses to the Undistributed totaling approximately 7% of the balances in those accounts.

89.    As a result of the application of the 2010 ESOP Amendment, at the end of Plan year 2011 (the last year for which data is available), the value of Undistributed Accounts of Separated Employees was approximately 44% less than it would have been absent the 2010 ESOP Amendment.

**Notice of the 2010 ESOP Amendments**

90.    Participants of the ESOP were given a letter dated November 12, 2010, signed by Roderick C. Wendt, as President & CEO of Jeld-Wen, regarding the 2010 ESOP Amendment which stated that "[t]his Amendment is effective January 1, 2010.

91.     Attached to the letter was the Q&A Sheet entitled "Jeld-Wen, Inc., Employee Stock Ownership and Retirement Plan (ESOP), Q&A Sheet About Recent Changes, November 10, 2010."  The Q&A Sheet discussed the elimination of the Local Passbook Rate of interest in calculating the value of Undistributed Accounts and the adjustment of Undistributed Accounts based upon the appreciation and depreciation in the value of Jeld-Wen stock.

92.     The Q&A did not disclose that the Plan Document was being amended to give the Administrative Committee discretion to allocate Plan Expenses to the Undistributed Account of Separated Employees or that in the future, Undistributed Accounts could be subject to a substantial decline in the rate of benefit accruals as a result of the assessment of such New Expenses.

**Effect of the 2010 Amendment on Plaintiff Jimerson's Account**

93.     As of December 31, 2005, the December 31 following Jimerson's separation from employment, Jimerson's benefit under the Plan (i.e., the combined balance of all the Participant Accounts maintained for the Plaintiff by the Administrative Committee before the crediting of any future interest rate credits), was valued at $1,739,892.52.

94.     Following his termination, Jimerson immediately elected to take a withdrawal or distribution of his Basic Company Contribution Account and the Elective Deferrals Account in annual installment payments.

95.    By contrast, the benefits from Jimerson's Regular Company Contribution Account and his Tax Credit Employer Contribution Account were affected by the 2010 ESOP Amendment.  Because Jimerson had not yet attained the age of 55 and therefore was not eligible for Early Retirement, the balances in his Regular Company Contribution Account and his Tax Credit Employer Contribution Account were maintained by the Administrator of the ESOP as an Undistributed Account which was subject to a Deferred Distribution at such time as Jimerson qualified for Early Retirement or six years, whichever came first.  Collectively, these Accounts and/or Jimerson's benefits under the Plan were valued as of December 31, 2005 at $799,683.99.

96.    Effective December 31, 2005, under the then-existing terms of the Plan, Jimerson no longer had any of his Participant Accounts credited with appreciation or depreciation in the value of Company Stock held by the Trust.

97.    Over the next two years until December 31, 2007, the value of Jeld-Wen Stock appreciated in value from $668.50 per share to $746.31, an increase of 11.6 %, but Plaintiff's Undistributed Account did not benefit from this appreciation.

98.    Instead, Jimerson's Undistributed Account was credited with a Local Passbook Rate of interest as provided under § 7.8(b) of the Plan for each of the next four years.

99.    Over each of the next four years following his separation from employment with Jeld-Wen, December 31, 2006 to December 31, 2009, no expenses of any type were allocated or deducted from Plaintiff's Participant Accounts.

100.    As a result of the crediting of the Local Passbook Rate of interest, Jimerson's Regular Company Contribution Account grew from $777,830.12 as of December 31, 2005, to $875,454.65, as of December 31, 2009, and his Tax Credit Employer Contribution Account grew from $21,853.87 as of December 31, 2005 to $24,596.72 as of December 31, 2009.  Collectively,

these accounts and Jimerson's benefits under the Plan had a value of $900,051.37 as of December 31, 2009.

101.    Because Jimerson had commenced to take distribution of his Basic Company Contribution Account and his Employee Elective Contribution Account in 2006, the accounts came under the Grandfather Provision and were not affected by the 2010 ESOP Amendment.

102.    As a result of the 2010 ESOP Amendment, which was made retroactive to January 1, 2010, Jimerson's Regular Company Contribution Account and his Tax Credit Employer Contribution Account which, according to the Plan Document, were maintained in an Undistributed Account, ceased to be credited with the Local Passbook rate of 3% interest in 2010 and 2011.

103.    As a result of the retroactive application of the 2010 ESOP Amendment, Jimerson's Regular Company Contribution Account and his Tax Credit Employer Contribution Account, which according to the Plan Document were maintained in an Undistributed Account, were valued based upon and/or reinvested in Company stock.  As of December 31, 2010, the balances in these accounts declined and/or his benefits from the Plan decreased by $114,042.95 or approximately 13%, and had a collectively value of $786,008.42 (prior to the deduction of the New Expenses).

104.    In addition, as a result of the retroactive application of the 2010 ESOP Amendment, Jimerson's Regular Company Contribution Account and his Tax Credit Employer Contribution Account were assessed for the first time New Expenses by the Administrative Committee which totaled $8,927.98, or approximately 1% of the balances in the accounts.  As such, the assessment of the New Expenses in 2010 further reduced Jimerson's benefits under the Plan.

105.    Jimerson has not been provided with an Account Statement as of December 31, 2011.  Based on the reported 35% decline in the value of Jeld-Wen stock in 2011, Jimerson's Regular Company Contribution Account and his Tax Credit Employer Contribution Account and/or his benefits under the Plan have decreased by an additional 35% or approximately $264,000 as of December 31, 2011 as a result of the implementation of the 2010 ESOP Amendment.

106.    On information and belief, as a result of the implementation of the 2010 ESOP Amendment, in Plan year 2011 Jimerson's Regular Company Contribution Account and his Tax Credit Employer Contribution Account were not credited with a 3% Local Passbook Rate of interest and his accounts were or will be assessed New Expenses totaling approximately 7% of the balance in the accounts.  As such, the assessment of the New Expenses in 2011 further reduced Jimerson's benefits under the Plan.

107.    By the end of 2011, Jimerson's benefits under the Plan were approximately $491,000 less than if the 2010 ESOP Amendment had not been implemented by the Administrative Committee and his benefits had been determined and valued in conformity with the terms of the Plan in effect at the time of his termination.  These lost benefits include: (i) approximately $55,000 in the loss of the Local Passbook Rate of interest that should have been credited to the Account; (ii) $378,000 in depreciation in value as a result of valuing these benefits based upon or reinvesting his account in Jeld-Wen stock; and (iii) approximately $58,000 in New Expenses which have been charged to his Undistributed Accounts.

108.    Approximately six years after Jimerson severed his employment relationship with Jeld-Wen, Jimerson received a check from the Jeld-Wen ESOP dated December 9, 2011, in the amount of $155,416.09.   On June 25, 2012, Plaintiff received a second check from the Jeld-Wen

ESOP in the amount of $101,851.29.   On information and belief, these checks represent the first two of five installment distributions under §10.3(a)(ii) of the Plan Document of accrued benefits in the Regular Employer Contribution Account or the Tax Credit Employer Contribution Account (the "Benefit Checks") which, according to the Plan Document, the Administrator maintains in the Undistributed Account.

**Effect of the 2010 Amendment on Plaintiff Bellotti's Account**

109.    As of December 31, 2008 (the December 31 following Bellotti's separation from employment), Bellotti's total accrued benefit under the Plan (i.e., the combined balance of all the Participant Accounts maintained for the Bellotti by the Administrative Committee before the crediting of any future interest rate credits), was valued at $242,345.36.

110.    In 2009, Bellotti elected to take an immediate distribution of his Basic Company Contribution Account and the Elective Deferrals Account.  As a result, his benefits relating to these accounts were unaffected by the 2010 ESOP Amendment.

111.    By contrast, the benefits resulting from Bellotti's Regular Company Contribution Account were affected by the 2010 ESOP Amendment.  Because Bellotti had not yet attained the age of 55 and therefore was not eligible for Early Retirement, the balance in his Regular Company Contribution Account, valued at $123,137.12 as of December 31, 2008, was, according to the Plan Document, maintained by the Administrator of the ESOP as an Undistributed Account subject to a Deferred Distribution at such time as Bellotti qualified for Early Retirement.

112.    Prior to the 2010 Amendment, Bellotti's Regular Company Contribution Account had been credited with a Local Passbook Rate of interest in 2009 and had increased in value by 3% to $126,831.23 by December 31, 2009.

113.    After the 2010 ESOP Amendment was implemented, Belotti's Regular Company Contribution Account was valued based upon and/or reinvested in Company stock instead of being credited with the 3% Local Passbook Rate of interest and was assessed 1% in New Expenses.  As a result of the application of the 2010 ESOP Amendment, his account balance and/or his benefits under the Plan decreased by $17,328.50 as of December 31, 2010.

114.    In 2011, as a result of the 2010 ESOP Amendment, Bellotti's Regular Company Contribution Account and/or his benefits under the Plan, instead of  increasing in value by the 3% Local Passbook Rate, decreased by an additional $43,319.21.

115.    By the end of 2011, Belotti's benefits under the Plan were approximately $67,800 less than if the 2010 ESOP Amendment had not been not been implemented by Administrative Committee and his benefits had been determined and valued in conformity with the terms of the Plan in effect at the time of his termination.

**Effect of the 2010 Amendment on Plaintiff Snodgrass**.

116.    As of December 31, 2007 (the December 31 following Snodgrass' separation from employment), his total accrued benefit under the Plan (i.e., the combined balance of all the Participant Accounts maintained for the Plaintiff by the Administrative Committee before the crediting of any future interest credits), was valued at $299,702.49.

117.    Snodgrass immediately elected to take a distribution of his Basic Company Contribution Account and the Elective Deferrals Account in 2008 and these accounts were therefore unaffected by the 2010 ESOP Amendment.

118.    By contrast, the benefits resulting from Snodgrass' Regular Company Contribution Account were affected by the 2010 ESOP Amendment.  Because Snodgrass had not

yet attained the age of 55 and therefore was not eligible for Early Retirement, the benefits from his Regular Company Contribution Account, valued at $162,542.10 as of December 31, 2007 were, according to the Plan Document, to be maintained by the Administrator of the ESOP as an Undistributed Account subject to a Deferred Distribution at such time as Snodgrass qualified for Early Retirement.

119.     Prior to the 2010 Amendment, Snodgrass' Regular Company Contribution Account was credited with a 3% Local Passbook Rate of interest in 2008 and 2009 and his benefits under the Plan increased in value 3% each year to $172,440.91 by December 31, 2009.

120.     After the 2010 ESOP Amendment was implemented, Snodgrass' Regular Company Contribution Account was valued based upon and/or reinvested in Company stock instead of being credited with the 3% Local Passbook Rate of interest and was assessed 1% in New Expenses.  As a result of the application of the 2010 Amendment, his account balance and/or his benefits under the Plan decreased by $23,560 as of December 31, 2010.

121.     In 2011, as a result of the 2010 ESOP Amendment Snodgrass's Regular Company Contribution Account and/or his benefits under the Plan decreased by $58,897.16 instead of increasing in value by the 3% Local Passbook Rate.

122.     By the end of 2011, Snodgrass' benefits under the Plan were approximately $87,400 less than if the 2010 ESOP Amendment had not been implemented by Administrative Committee and his benefits had been determined and valued in conformity with the terms of the Plan in effect at the time of his termination.

**The New Expenses of the ESOP**

123.     On information and belief, between 2008 and 2010, until the adoption of the 2010 ESOP Amendment, the benefits maintained in or based on the Undistributed Accounts of Separated Employees continued to grow at the Local Passbook Rate of interest without regard

for whether the investments of the ESOP appreciated or depreciated in value. As such, the benefits under the Plan were not based solely upon the amount contributed to the participant's account and any income, expenses, gains and losses, and any forfeitures of accounts of other participants and therefore constituted and/or were paid pursuant to a "defined benefit plan" within the meaning of ERISA § 3(35), 29 U.S.C. § 1002(35) (the "Guaranteed Benefits").

124.    Because the liability of the ESOP with respect to these Undistributed Accounts was increasing at a time when the underlying ESOP investments in Jeld-Wen stock were declining in value, a shortfall existed between the obligations of the ESOP and the assets held in Trust to meet the ESOP's obligations, including the obligations related to the Guaranteed Benefits.

125.    Additionally, on information and belief, after the adoption of the 2010 ESOP Amendment, all Participant Accounts which were subject to distribution prior to December 17, 2010, under the Grandfather Provision continued to be credited with the Local Passbook Rate of interest, without regard to whether the investments of the ESOP appreciated or depreciated in value (the "Grandfathered Accounts").

126.    Because the liability of the ESOP with respect to the Grandfathered Accounts was increasing at a time when the underlying ESOP investments in Jeld-Wen stock were declining in value, a further shortfall existed between the obligations of the ESOP and the Trust assets available to meet all of the ESOP's obligations, including the obligations related to the Guaranteed Benefits.

127.    On information and belief, by years end 2010 the ESOP's liability for the Guaranteed Benefits which continued to grow at the 3% Local Passbook Rate until the 2010 Amendment was adopted, and the liability for the Grandfathered Accounts, which continued to

grow at the 3% Local Passbook Rate even after the 2010 ESOP Amendment was adopted, exceeded the value of the Jeld-Wen Trust assets available to fund that liability.   As the value of Jeld-Wen stock depreciated in value even further in 2011, the shortfall between Trust assets and the ESOP's total obligations grew even greater.

128.     On information and belief, in order to address this funding shortfall the Administrative Committee exercised the discretion conferred upon it by the 2010 ESOP Amendment and began in 2010 to allocate or assess a pro rata share of the ESOP's funding shortfall as a New Expense against the remaining Participant Accounts in the ESOP, including the Guaranteed Benefits which were not subject to the Grandfather Provision.

129.     In 2010, the New Expenses represented approximately 1% of the total balance in all the ESOP Participant Accounts not subject to the Grandfather Provision.   In the year 2011, the New Expenses increased to approximately 7% of the total balance in all those ESOP Participant Accounts not subject to the Grandfather Provision..

130.     The assessment of the New Expenses resulted in the Participant Accounts not subject to the Grandfather Provision assuming the unfunded liability for the accrued benefits in the Guaranteed Benefits and the Grandfathered Accounts.

131.     Neither the Account Statements nor the disclosures provided to participants of the ESOP by the Administrative Committee explained the reason for the New Expenses.

132.     Jeld-Wen explained these New Expenses in the October 21, 2011 Disclosure Document as follows:  "[t]he crediting of interest to the former employee participants' accounts and not charging their accounts for decreases in the value of Common Stock of the Company further reduced the value of the accounts of the employee participants"

**Plaintiffs' Exhaustion of Administrative Remedies**

133.    On June 27, 2012, Plaintiff Jimerson submitted a letter to the Administrative Committee asserting a Claim for Benefits in accordance with § 14.5 of the Plan Document ("Jimerson's Benefit Claim").  Jimerson requested that the balances in his Regular Employer Contribution Account and his Tax Credit Employer Contribution Account be recalculated as provided under Section 7.8 of the Plan, without regard to the 2010 ESOP Amendment, and that his current Statement of Account be amended to reflect the accrued benefit to which he would have otherwise been entitled under the Plan if the 2010 ESOP Amendment were disregarded as required under § 16.2(f) of the Plan, less any distribution which Plaintiff has received to date from the Undistributed Account.

134.    On October 9, 2012, Plaintiff Bellotti submitted a letter to the Administrative Committee asserting a Claim for Benefits in accordance with § 14.5 of the Plan Document (the "Bellotti's Benefit Claim").  Bellotti requested that the balances in his Regular Employer Contribution Account be recalculated as provided under Section 7.8 of the Plan, without regard to the 2010 ESOP Amendment, and that his current Statement of Account be amended to reflect the accrued benefit to which he would have been entitled under the Plan if the 2010 ESOP Amendment were disregarded.

135.    On October 15, 2012, Plaintiff Snodgrass submitted a letter to the Administrative Committee asserting a Claim for Benefits in accordance with r § 14.5 of the Plan Document ("Snodgrass' Benefit Claim").   Snodgrass requested that the balances in his Regular Employer Contribution Account be recalculated as provided under Section 7.8 of the Plan, without regard to the 2010 ESOP Amendment, and that his current Statement of Account be amended to reflect the accrued benefit to which he would have otherwise been entitled under the Plan if the 2010 ESOP Amendment were disregarded.

136.    The Plan Administrative Committee, which under § 14.5(b) of the Plan Document had 90 days in which to deny in whole or in part the claims, responded to Jimerson's Benefit Claim on September 13, 2012.  In response, the Administrative Committee, without identifying any special circumstances justifying further time, indicated that it was impossible for members of the Administrative Committee to meet within the 90 days allotted to them to consider the Jimerson's Benefit Claim and requested a 90 days extension to rule on the Jimerson's Benefit Claim.

137.    Both the § 14.5(d) of the Plan and the Department of Labor regulations which govern Jimerson's Benefit Claim, specifically 29 CFR § 2560.503-1(f)(1), require that an extension notice "shall indicate the special circumstances requiring an extension of time."   Since the Denial Letter contained no such explanation of the special circumstances that justified the requested 90 day extension, Jimerson advised the Administrative Committee by letter dated September 30, 2012, that the Plaintiff believed he had effectively exhausted the administrative remedies available under the Plan and was, therefore, entitled to pursue any available remedies under ERISA § 502(a) on the basis that the plan had failed to provide a reasonable claims procedure that would yield a decision on the merits of Plaintiff's Benefit Claim. *See* 29 CFR § 2560.503-1(l).

138.    On November 19, 2012, each of the Plaintiffs received another letter from the Administrative Committee, advising them that the Administrative Committee was "in receipt of a federal law suit filed by former employee Roonie Dooley on behalf of a class of ESOP participants," and that any settlement from a proposed mediation of those claims "could be binding upon [Plaintiff's] claim."  The letter concluded by stating that "[a]bsent a written response" by November 30, 2012, the Committee will hold your claim in abeyance pending the

outcome of the class action." Prior to November 19, 2012, the Administrative Committee had not advised Jimerson, Bellotti or Snodgrass of the existence of the Dooley lawsuit.

139. Each of the Plaintiffs informed the Administrative Committee in writing that they did **not** consent to holding their claims in abeyance and requested that the Administrative Committee act within the time limits set forth in 29 C.F.R. § 2560.503-1 and issue a decision promptly and without any further delay.

140. On December 21, 2012, the Administrative Committee sent Jimerson a letter denying his claim for benefits (the "Jimerson Denial Letter"), stating in part as follows:

> The Administrative Committee of the JELD-WEN, inc. Employee Stock Ownership and Retirement Plan (the "Committee") has reviewed your claim for benefits dated June 27, 2012. For the reasons explained below, the Committee has concluded that your benefits were calculated correctly in accordance with the terms of the Plan.

141. The Jimerson Denial Letter stated that "[i]f you disagree with the Committee's decision you may request that the Administrator [which is defined as the Administrative Committee under § 2.2 of the Plan Document] review this decision in accordance with Section 14.5(c) of the Plan."

142. On January 4, 2013, Jimerson sent a letter to the Administrative Committee requesting that it review the denial by the Administrative Committee of his benefit claim in accordance with Section 14.5(c) of the Plan.

143. On January 9, 2013, the Administrative Committee sent Snodgrass a letter denying his claim for benefits for essentially the same reasons the Administrative Committee denied the Jimerson Benefit Claim (the "Snodgrass Denial Letter"). The Snodgrass Denial Letter also stated that "[i]f you disagree with the Committee's decision you may request that the Administrator [which is defined as the Administrative Committee under § 2.2 of the Plan Document] review this decision in accordance with Section 14.5(c) of the Plan."

144.    On January 9, 2013, the Administrative Committee sent Bellotti a letter denying his claim for benefits for essentially the same reasons the Administrative Committee denied the Snodgrass Benefit Claim and the Jimerson Benefit Claim (the "Bellotti Denial Letter"). The Bellotti Denial Letter also stated that "[i]f you disagree with the Committee's decision you may request that the Administrator review this decision in accordance with Section 14.5(c) of the Plan."

145.    The Administrative Committee, which was responsible under the Plan Document for reviewing the denial of Jimerson Benefit Claim, the Snodgrass' Benefit Claim and the Bellotti Benefit Claim (collectively "Plaintiffs' Benefit Claims"), made the initial determination that Plaintiffs' Benefit Claims should all be denied for the same reason.  Under the terms of the Plan, any appeal of the initial benefit decision by the Administrative Committee will be reviewed by the same Administrative Committee that made the initial determination.  As such, there is no likelihood that the Administrative Committee will, upon review of the same issue a fourth time, grant any of the Plaintiffs' Benefit Claims.   Accordingly, it is futile for Plaintiffs to pursue the review process provided under § 14.5 of the Plan Document.  Therefore it should be deemed that Plaintiffs' Benefit Claims have all been finally denied following a review by the Administrative Committee and that Plaintiffs have fully exhausted their remedies under the Plan Document.

### COUNT I
### CLAIM FOR BENEFITS PURSUANT TO ERISA § 502(A)(1)(B)
### (ON BEHALF OF CLASS #1 AGAINST ALL DEFENDANTS)

146.    Plaintiffs repeat and re-allege the allegations contained in all foregoing paragraphs herein.

147.    ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) provides that a participant may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his

rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

148.    Once an employee separates from employment, the terms of the pension plan that govern the benefits owed to the participant are those in existence at the time of his separation from employment.

149.    Pursuant to the terms of the ESOP Plan Document before the 2010 ESOP Amendment, a participant of the Jeld-Wen ESOP who separated from service but was ineligible for Early Retirement was entitled to have his/her benefits maintained by the Administrative Committee in an Undistributed Account and credited with the Local Passbook Rate of interest every year until the Undistributed Account was fully distributed, without the assessment of any New Expenses.

150.    Pursuant to the terms of the Jeld-Wen Plan Document as modified by the 2010 ESOP Amendment, after January 1, 2010, a participant who separated from service prior to the adoption of the 2010 ESOP Amendment was no longer entitled to receive the Local Passbook Rate while the benefits maintained in or based on the Undistributed Account remained undistributed.    Effective as of January 1, 2010, the value of the Undistributed Accounts was linked to the value of Jeld-Wen stock and increased or decreased in value as the value of Company stock appreciated or depreciated in value.

151.    Additionally, beginning in 2010 Undistributed Accounts became subject to an assessment of New Expenses to offset the unfunded liability of the ESOP.

152.    Plaintiffs and the Class Members who were participants in the Jeld-Wen ESOP who separated from service prior to the adoption of the 2010 ESOP Amendment were entitled to

have the balances in their Undistributed Account calculated pursuant to the terms of the Jeld-Wen ESOP in effect at the time of their separation from service.

153.    Under the terms of the Jeld-Wen ESOP Plan Document in effect as of the time that they terminated employment, Plaintiffs and the Class were entitled to have the value of their benefits as of the time that they separated service to be maintained in an Undistributed Account unaffected by the value of the Jeld-Wen stock and the amount credited with the Local Passbook Rate of interest every year until the Undistributed Account was fully distributed, without the deduction of any of the New Expenses.

154.    Plaintiffs and the Class have been denied their right to receive the benefits valued and credited in the manner provided pursuant to the Plan Document in effect at the time of their separation from employment.

155.    As a result, Plaintiffs and the other members of the Class have not received and will not receive the benefits to which they were eligible under the ESOP Plan Document at the time of their termination.  The benefits which Plaintiffs and other Class Members have received thus far have been distributed in a manner that is inconsistent with the provisions of the Jeld-Wen ESOP Plan Document in effect at the time of termination.  As a result, Plaintiffs and the Class will receive less in benefits than they would have received under the terms of the Plan Document in effect at the time of their termination of employment.

156.    Plaintiffs and the Class are entitled at a minimum to receive benefits equivalent to what they would have received under the Plan Document in effect at the time of their separation from service – namely, the full amount of their Undistributed Account balance at separation plus interest credited to that Account at the Local Passbook Rate until such Undistributed Account is fully distributed and without the assessment of any New Expenses.

## COUNT II
## VIOLATION OF THE ANTI CUTBACK PROVISION OF ERISA § 204(G)
### (ON BEHALF OF CLASS #1 AND CLASS #2 AGAINST ALL DEFENDANTS)

157.    Plaintiffs repeats and re-allege the allegations contained in all foregoing paragraphs herein.

158.    ERISA § 204(g), 29 U.S.C. § 1054(g) provides that "[t]he accrued benefit of a participant under a plan may not be decreased by an amendment of the plan."

159.    Under 26 C.F.R. § 1.411(d)-3(a)(1), "a plan amendment includes any changes to the terms of the plan."

160.    ERISA § 3(23), 29 U.S.C. § 1002(23), defines "accrued benefit" as follows:

(a) in the case of a defined benefit plan, the individual's accrued benefit determined under the plan and, except as provided in § 1054(c)(3) of this title, expressed in the form of an annual benefit commencing at normal retirement age, or

(b) in the case of a plan which is an individual account plan, the balance of the individual's account.

161.    An accrued benefit includes not only the "net effect" of the dollars earned and/or paid under the Plan, but also the features and elements of the benefit formula itself.  As such, the accrued benefits protected from elimination by amendment under ERISA § 204(g) includes the conditions on which the benefits are to be paid under the Plan.

162.    Accrued benefits are considered "decreased" for purposes of ERISA § 204(g) not only when they are reduced in size or eliminated entirely, but also when the plan imposes new conditions or materially greater restrictions on their receipt.

163.    Under the terms of the Jeld-Wen ESOP Plan Document prior to the 2010 ESOP Amendment, a Separated Employee was entitled to have the vested balance in each of his or her

Participant Accounts calculated as of the Annual Valuation Date coinciding with or following the participant's separation from service and thereafter maintained in an Undistributed Account.

164.    A Separated Employee was further entitled under the Jeld-Wen ESOP Plan Document prior to the 2010 ESOP Amendment to have the vested balance in each of his or her Participant Accounts maintained in the Undistributed Accounts credited with  the Local Passbook Rate of interest until each of the Participant Account was fully distributed.

165.    A Separated Employee was further entitled prior to 2010 to have the vested balance in each of his or her Participant Accounts maintained in an Undistributed Account calculated without having his account subject to deduction of the New Expenses.

166.    The right of a Separated Employee to have the vested balance in each of his or her Participant Accounts calculated as of the Annual Valuation Date coinciding with or following the participant's separation from service and maintained in an Undistributed Account, which is unaffected by the increase or decrease of Jeld-Wen stock is an accrued benefit.

167.    The right of a Separated Employee to have the vested balance in each of his or her Participant Accounts maintained in an Undistributed Accounts credited with  the Local Passbook Rate of interest until each of the Participant Account was fully distributed is an accrued benefit.

168.    Additionally and alternatively, the right to receive the Local Passbook Rate on the value of the (a) Undistributed Account valued at the time of separation minus (b) the amount already distributed is and was an accrued benefit of a defined benefit pension plan regardless of whether the Jeld-Wen ESOP itself or any portion of the Plan constituted a defined benefit plan.

169.    The 2010 ESOP Amendment to the Jeld-Wen ESOP Plan Document modified the terms of the Jeld-Wen ESOP to provide that:  (a) balances in the Participant Accounts maintained in or benefits based on the Undistributed Account would no longer be credited with

the Local Passbook Rate of interest;(b) after January 1, 2010 the balance in the Participant

Accounts maintained in an Undistributed Account would increase or decrease in value with the

ongoing increases or decreases in the value of Jeld-Wen stock; and (c) would be assessed New

Expenses.

170.    By changing the formula by which the Jeld-Wen ESOP was to pay benefits and/or

by imposing new and greater restrictions on the amount and value of the benefits to be received

under the Plan, the 2010 ESOP Amendment modified and reduced the accrued benefit of

Plaintiffs and the Class. Because the value of Jeld-Wen stock declined substantially between

January 1, 2010 and the present, the benefits that Plaintiffs and the Class have actually received

and will receive is and will be less than the amount that they would have received or will be

entitled to receive if the 2010 ESOP Amendment had not modified the manner in which those

balances are calculated.

171.    By eliminating entirely the right of Plaintiffs and the Class to receive the Local

Passbook Rate of interest on the amount remaining on their Undistributed Accounts, the 2010

ESOP Amendment resulted in the decrease, and in fact, the elimination of the accrued benefit of

Plaintiffs and the Class.

172.    By amending the Plan to permit the Administrative Committee to assess the New

Expenses against the vested benefits of Separated Employees, the 2010 ESOP Amendment

resulted in the decrease of the accrued benefits of Plaintiffs and the Class. As a result of the

assessment of the New Expenses, the benefits of Plaintiffs and the Class have been and will be

less than the amount that they would have received without the 2010 ESOP Amendment. .

173.    The 2010 ESOP Amendment constituted a prohibited cut back of benefits in

violation of ERISA § 204(g), 29 U.S.C. § 1054(g).

174.    As a result, Plaintiffs and members of the Class are entitled to a recalculation of the benefits for which they are eligible in conformity with the provisions of the Jeld-Wen ESOP Plan Document as if the 2010 Amendment had not been implemented (and the New Expenses not been assessed) as well as the payment of any additional benefits, including interest, which may be owing.

**COUNT III**
**VIOLATION OF ERISA § 204(H) REQUIRING NOTICE OF A SIGNIFICANT REDUCTION IN BENEFIT ACCRUALS (ON BEHALF OF CLASS #1 AND CLASS #2 AGAINST ALL DEFENDANTS)**

175.    Plaintiffs repeat and re-allege the allegations contained in all foregoing paragraphs herein.

176.    ERISA § 204(h), 29 U.S.C. § 1054(h) provides that "[a]n applicable pension plan may not be amended so as to provide for a significant reduction in the rate of future benefit accruals" without giving adequate notice  "within a reasonable time before the effective date of the amendment."

177.    An "applicable pension Plan" within the meaning of ERISA § 204(h)(8)(B), 29 U.S.C. § 1054(h)(8)(B) means "any defined benefit plan."

178.    At least some of the benefits owed and payable to Plaintiffs and the Class under the terms of the Plan prior to the 2010 ESOP Amendment constitute benefits paid pursuant to a defined benefit pension plan.

179.    Based on the description in the pre-2010 Jeld-Wen ESOP Plan Document, the Local Passbook Rate paid benefits by providing participants with a guaranteed rate of interest each year at an assumed Local Passbook Rate without regard for the actual earnings of the ESOP Trust and did not provide benefits based solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other

participants which may be allocated to such participant's account.  As such, at least the Local

Passbook Rate (and perhaps other benefits under the Plan) constitutes a benefit paid pursuant to a

defined benefit pension plan.

180.    Regardless of whether some or any of the other benefits described in the Jeld-

Wen ESOP Plan Document are benefits paid pursuant to a defined contribution plan, at least the

Local Passbook Rate itself meets the definition of a benefit paid pursuant to a defined benefit

pension plan under ERISA § 3(35), 29 U.S.C. § 1002(35).  As such, at least a portion of the

benefits described in the Jeld-Wen ESOP Plan Document constitute benefits paid pursuant to an

"applicable pension plan" within the meaning of ERISA § 204(h)(8)(B), 29 U.S.C. §

1054(h)(8)(B).

181.    Under ERISA § 204(h), 29 U.S.C. § 1054(h), participants of an applicable

pension plan are required to be given notice in the manner described in ERISA § 204(h) of any

amendment to an applicable pension plan that provides for a "significant reduction in the rate of

future benefit accrual."

182.    Under 26 C.F.R. § 54.4980F–1 an amendment to a defined benefit plan results in

a "significant reduction in the rate of future benefit accrual" for purposed of ERISA § 204(h) "if

it is reasonably expected that the amendment will reduce the amount of the future annual benefit

commencing at normal retirement age for benefits accruing for a year."

183.    ERISA § 204(h)(2) and (3), 29 U.S.C. § 1054(h)(2) and (3), require that any

notice under ERISA § 204(h) shall (i) "be written in a manner calculated to be understood by the

average plan participant and shall provide sufficient information to allow applicable individuals

to understand the effect of the plan amendment," and (ii) "be provided within a reasonable time

before the effective date of the amendment" which under 26 C.F.R. § 54.4980F–1 is 45 days.

184.    In 2010 it was reasonable to expect that: (i) the value of Jeld-Wen stock would continue to decline in value in 2010 and 2011; (ii) the effectuation of the 2010 ESOP Amendment, which eliminated the Local Passbook Rate of interest and caused the Undistributed Accounts to increase or decrease with the inflation or deflation of the value of Jeld-Wen stock, would cause the value of the Undistributed Accounts to decline in value; and (iii) such a decline in value would result in a "significant reduction in the rate of future benefit accrual" in that the amount of the future annual benefits that Plaintiffs and the members of the Class would receive from their Undistributed Account at normal retirement age would decline significantly.

185.    It was also reasonable to expect that the 2010 ESOP Amendment which allowed the Administrative Committee to assess substantial New Expenses against the Undistributed Accounts of Separated Employees would result in a "significant reduction in the rate of future benefit accrual" in that the amount of the future annual benefits that Plaintiffs and the members of the Class would receive from their Undistributed Accounts at normal retirement age would decline significantly.

186.    The 2010 ESOP Amendment has had the effect of significantly reducing the benefits accrued by Plaintiffs and the Class and will continue to result in a significant reduction in the rate of future benefit accruals.

187.    Pursuant to ERISA § 204(h) and 26 C.F.R. § 54.4980F–1, Q-9, Plaintiffs and the Class were entitled to receive notice of the 2010 ESOP Amendment at least 45 days prior to the effective date of the amendment.   Pursuant to ERISA § 204(h)(2) and 26 C.F.R. § 54.4980F–1, Q-11, such notice was required to be written in a manner and to include sufficient information to allow participants to understand the effect of the plan amendment.

188.    The 2010 ESOP Amendment violated ERISA § 204(h) 29 U.S.C. § 1054(h), because the amendment was applied retroactively and no notice of the amendment was provided to participants of the ESOP until after January 1, 2010, the effective date of the 2010 ESOP Amendment.

189.    The 2010 ESOP Amendment further violated ERISA § 204(h), 29 U.S.C. § 1054(h), because notice of the amendment failed to provide sufficient information to allow participants of the ESOP to understand the effect of the New Expenses on their benefits. To the extent that Plaintiffs and members of the Class were provided insufficient notice as required under § 204(h) of ERISA, 29 U.S.C. § 1054(h), as to the effects of the 2010 ESOP Amendment, they are entitled to a recalculation of the benefits for which they are eligible in conformity with the provisions of the Jeld-Wen ESOP Plan Document as if no amendments had occurred from the effective date of the amendment until such time as Plaintiffs and the members of the Class have been or are given adequate notice of the Amendment, as well as the payment of any additional benefits, including interest, which may be owing.

<u>COUNT IV</u>
<u>BREACH OF FIDUCIARY DUTIES UNDER ERISA § 404(a)(1)(A)(B) AND (D)</u>
<u>(ON BEHALF OF CLASS #1 AGAINST THE ADMINISTRATIVE COMMITTEE</u>
<u>DEFENDANTS)</u>

190.    Plaintiffs repeat and re-allege the allegations contained in all foregoing paragraphs herein.

191.    As fiduciaries of the Jeld-Wen ESOP, the Administrative Committee Defendants were required under ERISA § 404(a)(1)(A), (B) and (D),  29 U.S.C. § 1104(a)(1)(A),(B), and (D), to discharge their duties with respect to the Jeld-Wen ESOP solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of providing benefits to participants and their beneficiaries of the ESOP;  (B) with the care, skill, prudence, and diligence

under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and like aims; and (D) in accordance with the documents and instruments governing the Jeld-Wen ESOP in so far as those documents and instruments are consistent with ERISA.

192.    Among other duties, the Administrative Committee Defendants had a duty to follow the terms of the Jeld-Wen ESOP Plan Document, including §§ 16.2(c),(e) and (f) to the extent that those terms were consistent with ERISA.

193.    Section 16.2 of the Jeld-Wen ESOP Plan Document provides that no amendment of the ESOP shall cause any reduction in the nonforfeitable accrued benefit of any participant and requires the Administrator of the Jeld-Wen ESOP to disregard any amendment that has the effect of eliminating or reducing any protected benefit.

194.    The 2010 ESOP Amendment modified the terms of the Jeld-Wen ESOP to provide that balances in the Participant Accounts maintained in Undistributed Accounts would no longer be credited with the Local Passbook Rate of interest and after January 1, 2010 the balance in the Participant Accounts maintained in Undistributed Accounts would increase or decrease in value with the ongoing increases or decreases in the value of Jeld-Wen stock.

195.    The 2010 ESOP Amendment also modified the terms of the Jeld-Wen ESOP to provide that balances in the Participant Accounts maintained in Undistributed Accounts could be assessed or allocated New Expenses which had not been assessed previously.

196.    The application of the 2010 ESOP Amendment at the end of 2010 when the Company was facing serious financial difficulties and the value of Jeld-Wen stock was declining rapidly, was almost certain to decrease the value of the accrued benefits of Plaintiffs and

members of the Class held in Undistributed Accounts and therefore was not in the best interest of the Plaintiffs and the Class.

197.    The application of the 2010 ESOP Amendment was certain to decrease the value of the accrued benefits of Plaintiffs and member of the Class held in Undistributed Accounts which, but for the 2010 ESOP Amendment, would have otherwise have been credited with the Local Passbook Rate of interest and grown at a rate of least 3% per annum, and therefore was not in the best interest of the Plaintiffs and members of the Class

198.    The 2010 ESOP Amendment as applied by the Administrative Committee was certain to result in the assessment of significant New Expenses against the accrued benefits of Plaintiffs and members of the Class held in Undistributed Accounts and therefore was not in the best interest of the Plaintiffs and members of the Class.

199.    Upon information and belief, the Administrative Committee Defendants either knew or should have been aware of facts by which they should have known that the implementation of the 2010 ESOP Amendment adopted by the Company would decrease the accrued benefits of Separated Employees whose Participant Accounts were maintained by the Administrative Committee in Undistributed Accounts and result in an impermissible cut back of the accrued benefits of the Plaintiffs and members of the Class.

200.    In the event the Administrative Committee Defendants did not know or were not aware that the implementation of the 2010 ESOP Amendment would result in a decrease in the accrued benefits of Separated Employees whose Participant Account were maintained in Undistributed Accounts, a prudent fiduciary would not have implemented the 2010 ESOP Amendment without undertaking an appropriate investigation to determine the amendment's

potential impact upon the accrued benefits of Separated Employees and whether such an amendment was in accordance with the Plan Document.

201.    The Administrative Committee Defendants were either aware or should have been aware of the following information by conducting an appropriate investigation:

(a)    Jeld-Wen sales declined in 2008 and 2009;

(b)    As result between December 31, 2007 and December 31, 2009, the value of Jeld-Wen stock had declined by over 43% from $746.31 a share to $417.42 a share;

(c)    The results of the Company's operation through 2009 continued to "reflect the impact of the global economic recession and the challenges facing the New Construction and Repair & Remodel industries, which drive our manufacturing operations;"

(d)    By end of 2009 the Board did not know whether Jeld-Wen had "hit the bottom of the downturn;"

(e)    The company "did not expect meaningful recovery of economic conditions to occur very rapidly;" and

(f)    At the end of the 3rd Quarter of 2010 the Company was reporting a 4% decline in gross profits from the previous year;

(h)    The Company was highly leveraged with over $1.1 billion in outstanding debt and faced the risk that it may be unable to generate cash sufficient to service that debt; and

(i)    By the end of 2010, Jeld-Wen reported $127 million in underfunded defined benefit pension liability.

202. The Administrative Committee Defendants also knew or should have known their decision to deduct the New Expenses from the benefits of Plaintiffs and the Class pursuant to the 2010 ESOP Amendment would decrease the accrued benefits of the Plaintiffs and the members of the Class.

203. The Administrative Committee Defendants also knew or should have known that §§ 16.2(c) and (e) of the Plan Document expressly provided that "[n]o amendment shall decrease a Participant's Account balance" and "no amendment shall cause any reduction in the nonforfeitable accrued benefit of any Participant," and that the implementation of the 2010 ESOP Amendment was likely to violate these provisions of the Plan.

204. The Administrative Committee Defendants knew or should have known that §16.2(f) of the Plan Document required that any amendment to the Plan which "has the affect of reducing a protected benefit. . . . shall be disregarded" by the Administrator of the Plan and that therefore the Administrative Committee Defendants were obligated under the Plan to disregard the 2010 ESOP Amendment.

205. Upon information and belief, the Administrative Committee consists of two or more high-level officers of Jeld-Wen who have significant interests in Jeld-Wen stock outside the Jeld-Wen ESOP.   As such, those members of the Administrative Committee had an interest in attempting to decrease the expense burden on the Company.

206. By causing the 2010 ESOP Amendment to be implemented by the Plan, which had the effect of decreasing  the value of the accrued benefits of Separated Employees whose Participant Accounts were maintained in Undistributed Accounts and therefore was not in the interest of the Plaintiffs and the Class, the Administrative Committee Defendants breached their fiduciary obligations under ERISA by failing to discharge their duties with respect to

the Plan solely in the interest of the participants and beneficiaries and (A) for the exclusive

purpose of providing benefits to participants and their beneficiaries; (B) with the care, skill,

prudence, and diligence under the circumstances then prevailing that a prudent person acting

in a like capacity and familiar with such matters would use in the conduct of an enterprise of

like character and like aims, and (C) in accordance with the documents and instruments

governing the Jeld-Wen ESOP, all in violation of ERISA § 404(a)(1)(A), (B) and (D),  29

U.S.C. § 1104(a)(1)(A),(B), and (D).

## COUNT V
## BREACH OF FIDUCIARY DUTIES UNDER ERISA § 404(A)(1)(C)OF ERISA
## (ON BEHALF OF CLASS #1 AND CLASS #2 AGAINST THE ADMINISTRATIVE
## COMMITTEE DEFENDANTS)

207.    Plaintiffs repeat and re-alleges the allegations contained in all foregoing

paragraphs herein.

208.    As fiduciaries of the Jeld-Wen ESOP, the Administrative Committee Defendants

were required under ERISA § 404(a)(1)(C), 29 U.S.C. § 1104(a)(1)(C), to discharge their duties

with respect to the ESOP solely in the interest of the participants and beneficiaries by

diversifying the investment of the plan so as to minimize the risk of large losses, unless under the

circumstances it is clearly prudent not to do so.

209.    At least some of the benefits owed and payable to Plaintiffs and the Class under

the terms of the Plan prior to the 2010 ESOP Amendment, in particular the benefits owed and

paying pursuant to the application of the Local Passbook Rate to the Undistributed Accounts of

separated employees which were guaranteed by the Plan without regard to actual earnings of the

ESOP, constituted benefits paid pursuant to a defined benefit pension plan.

210.    Regardless of whether a portion of the Plan constituted a defined benefit pension

plan, pursuant to the terms of the Plan prior to the 2010 ESOP Amendment, the Plan was

obligated to pay certain benefits to the Separated Participants unrelated to the value of Jeld-Wen stock. As participants of the Plan retired and/or separated from service with the Company, the benefits which the ESOP was obligated to distribute to participants in the future from the Undistributed Accounts as well as the benefits related to the crediting of the Local Passbook Rate to the Undistributed Accounts increased in value and were not solely related to amounts actually in participant's accounts. As a result, the ESOP's liability to pay these benefits increased over time unrelated to the value of Jeld-Wen stock.

211.    The Administrative Committee was responsible for the investment of the assets of the ESOP. As a result, the Administrative Committee had an obligation to ensure that the assets of the Plan were prudently invested so that the Plan would have sufficient assets to pay the benefits that the ESOP was obligated to pay pursuant to the defined benefit portion of the Plan arising out of the obligation to pay according to the Local Passbook Rate formula.

212.    As the Plan's obligation to pay benefits to Separated Employees, including pursuant to the Local Passbook Rate formula, was unrelated to the increase or decrease in the value of Jeld-Wen stock, a prudent fiduciary would have invested the assets of the Plan such that: (i) sufficient assets were invested to fund the Plan's growing defined benefit obligations in the event that the value of Jeld-Wen stock declined; and (ii) investing such assets in prudent well diversified investments which were not exposed to excessive risk of loss.

213.    Although the ESOP invested primarily in Jeld-Wen Stock, under the express terms of § 12.5 of the Plan Document, the Administrative Committee was authorized to invest the assets of the ESOP in Collective Investment Funds.

214.    Under the terms of the Plan Document, the Administrative Committee was permitted to and could have set aside sufficient Plan assets to fund the benefits which the ESOP

was required to pay certain benefits to the Separated Participants unrelated to the value of Jeld-Wen stock and/or pursuant to the defined benefit portion of the Plan, including the Guaranteed Benefits that arose out of the Local Passbook Rate formula and the Grandfathered Accounts, and invested sufficient assets in Collective Investment Trust that were well-diversified and structured to reduce the risk of significant loss.

215.    Instead, on information and belief, the Administrative Committee continued to invest virtually all of the assets of the ESOP in Jeld-Wen stock.  The continued investment of virtually all assets of the ESOP in Jeld-Wen stock constituted an undiversified investment, presented an enormous risk of loss to the Plan and its participants, and was an unsuitable investment for funding the guaranteed benefits the ESOP was required to pay under the defined benefit portion of the Plan arising out of the Local Passbook Rate formula.

216.    As a result of the failure of the Administrative Committee to set aside and diversify the investment of sufficient Plan assets to fund the benefits which the ESOP was required to pay pursuant to the defined benefit portion of the Plan and/or for which the Plan was obligated to pay unrelated to the value of Jeld-Wen stock, when the value of Jeld-Wen stock declined precipitously between 2007 and 2010, a shortfall was created between the obligations of the ESOP and the assets held in Trust to meet the ESOP's defined benefit obligations.

217.    In order to address this funding shortfall the Administrative Committee assessed the ESOP's funding shortfall as a "New Expense" beginning in 2010 against the remaining Participant Accounts in the ESOP, with the result that the Accounts of all the participants in the ESOP (other than the Grandfathered Accounts), including the Undistributed Accounts of the Separated Employees, significantly decreased in value.

218.    By failing to take steps to set aside sufficient ESOP assets to fund the Plan's growing defined benefit obligation arising out of the crediting of the Local Passbook Rate to the Undistributed Accounts and failing to invest such assets in prudent well diversified investments, the Administrative Committee Defendants caused the Plan to suffer significant losses and breached their fiduciary obligations under ERISA to diversify the investments of the plan so as to minimize the risk of large losses, all in violation of ERISA § 404(a)(1)(C), (29 U.S.C. § 1104(a)(1)(C).

## ENTITLEMENT TO RELIEF

219.    By virtue of the violations described in the preceding paragraphs, Plaintiffs and members of Class #1 are entitled to have the vested benefits that were and continue to be maintained in the Undistributed Accounts credited with the Local Passbook Rate of interest every year until they receive a full distribution as provided under the Plan at the time of their separation from service, without the application of any New Expenses.  Pursuant to ERISA § 502(a)(1)(B) and/or 502(a)(3), Plaintiffs, on behalf of themselves and other members of Class #1, by this Action request a determination, a declaration and an order by the Court that: (a) they are entitled to have their benefits calculated pursuant to the terms of the Jeld-Wen ESOP in effect at the time of their separation from service and not as calculated under the 2010 ESOP Amendment adopted subsequent to their separation from employment; (b) that they are entitled to receive as an accrued benefit under the Plan calculated as if the 2010 ESOP Amendment and the New Expenses had never been adopted and in accordance with the provisions of the Plan that were in effect at the time of separation from employment had remained in effect without amendment.

220.    By virtue of the violations described in the preceding paragraphs, Plaintiffs and members of Class #1 and/or Class #2 are entitled to sue the Administrative Committee Defendants, as fiduciaries of the Plan for their fiduciary breaches and (a) pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) for relief on behalf of the Jeld-Wen ESOP as provided in ERISA § 409, 29 U.S.C. § 1109, including recovery of any losses to the Jeld-Wen ESOP, the recovery of any profits resulting from such breach, and such other equitable or remedial relief as the Court may deem appropriate and (b) pursuant to ERISA § 502(a)(3), 29 U.S.C. § 502(a)(3) for any appropriate equitable relief, including but not limited to reformation of the plan, and a surcharge against the fiduciaries.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs prays that judgment be entered against the Defendants on all claims and request that the Court award the following relief:

A.    Declaring that Plaintiffs and the Class are entitled to have their benefits calculated and/or paid in conformity with the terms of the Plan document in effect at the time of their termination and distribution request.

B.    Declaring that Plaintiffs and the Class are entitled to receive benefits based on a calculation that is at least equal to the amount due under the terms of the Plan as it existed at the time of their separation of employment from Jeld-Wen;

C.    Requiring Defendants to re-calculate the benefit amounts due under the terms of the Plan as it existed at the time of their separation of employment from Jeld-Wen and for the Defendant to pay the difference, plus interest, to or on behalf of Plaintiffs and all Class members who receive less in benefits than the amount to which they are entitled.

D.      Enjoining the Defendants from continuing to violate the terms of the Plan and ERISA in the manners alleged or referenced in this Complaint or hereafter proven.

E.      Reforming the terms of the ESOP Plan Document to eliminate the 2010 ESOP Amendment so as to provide participants of the ESOP with the full value of their Undistributed Accounts calculated under terms of the ESOP as it existed at the time of their separation from service.

F.      Declaring pursuant to ERISA that the Defendants who were fiduciaries at the time of the adoption and implementation of the 2010 ESOP Amendment have violated their fiduciary duties in the manner described.

G.      Requiring each fiduciary alleged herein to have breached his fiduciary duty to the Plan to jointly and severally pay such amount to the Plan as is necessary to make the Plan whole for any losses which resulted from said breaches of fiduciary duty and to disgorge any profits which have been made as a result of those breaches.

H.      Requiring the proceeds of any recovery for the Plan to be allocated to the accounts of participants in the Plan to make such participants whole for any injury that they suffered as a result of the breach of fiduciary duty.

I.      Requiring the forfeiture of any interest in the Plan of any fiduciary alleged to have breached his fiduciary duty to the plan to the extent necessary after any recovery for the Plan to make whole the innocent participants of the Plan.

J.      Ordering that the proceeds of any recovery for the Jeld-Wen ESOP be allocated to the accounts of participants in the Jeld-Wen ESOP in proportion to the injury that they suffered as a result of any breach of fiduciary duty or other violation.

K.     An order removing the Administrative Committee Defendants from their role as fiduciaries of the Jeld-Wen ESOP, enjoining any of the breaching fiduciaries from acting as fiduciaries for any plan that covers the employees of Jeld-Wen and appointing an Independent Fiduciary to manage the Jeld-Wen ESOP.

L.     Awarding pre- and post-judgment interest.

M...   Requiring Defendant to pay attorney's fees and the costs of this action pursuant to ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1) and/or this Court's inherent equitable authority and powers and ordering the payment of reasonable fees and expenses of this action to Plaintiffs' Counsel on the basis of the common benefit and/or common fund doctrine (and/or other applicable law) out of any money or benefit recovered for the Classes in this Action.

N.     Awarding, declaring or otherwise providing Plaintiffs and the Classes all relief under ERISA § 502(a), 29 U.S.C. § 1132(a), or any other applicable law, that the Court deem proper.

Dated: January **30**, 2013

Respectfully submitted,

Derek C. Johnson, OSB #88234
*Of Attorneys for Plaintiffs*

R. Joseph Barton
Bruce F. Rinaldi
**COHEN MILSTEIN SELLERS &
TOLL PLLC**
1100 New York Avenue, N.W.
West Tower, Suite 500
Washington, DC 20005-3934
*Attorneys for Plaintiffs*

Derek C. Johnson
Jennifer Middleton
**JOHNSON JOHNSON LARSON & SCHALLER**
975 Oak Street, Suite 1050
Eugene, OR 97401
*Attorneys for Plaintiffs*

58-CLASS ACTION ALLEGATION COMPLAINT