Matthew T. Hurst, (admitted pro hac)
Email: mhurst@heffnerhurst.com
HEFFNER HURST
30 N. LaSalle Street, 12th Floor
Chicago, Illinois 60602
Telephone: (312) 346-3466
Facsimile: (312) 346-2829

R. Joseph Barton (admitted pro hac)
jbarton@cohenmmilstein.com
COHEN MILSTEIN SELLERS & TOLL
1100 New York Ave. NW, Suite 500, West Tower
Washington, DC 20005
Telephone:  (202) 408-4600
Facsimile: (202) 408-4699

*Plaintiffs' Counsel Continued on Signature Page*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| RONNIE DOOLEY, *et al.*, individually and on behalf of all others similarly situated <br><br> Plaintiffs, <br><br> v. <br><br> RONALD SAXTON, RODERICK C. WENDT, R. NEIL STUART, and JELD-WEN EMPLOYEE STOCK OWNERSHIP & RETIREMENT PLAN, <br><br> Defendants. | Case No. 1:12-CV-1207-MC Consolidated with Case Nos: 1:13-CV-177-MC & 1:13-CV-395-MC <br><br> PLAINTIFFS' COUNSEL'S UNOPPOSED MOTION FOR AN AWARD OF ATTORNEY'S FEES AND EXPENSES |

## PLAINTIFFS' COUNSEL'S UNOPPOSED MOTION FOR AN AWARD OF ATTORNEY'S FEES AND EXPENSES

Pursuant to Fed. R. Civ. P. 23(h), Plaintiffs' Counsel hereby moves for an award of attorney's fees in the amount of 30% of the $15.5 million cash recovery ($4.65 million) and reimbursement of their expenses in the amount of $55,562.21. Defendants do no oppose the motion. In support, Plaintiffs' Counsel states as follows:

1.      Pursuant to Local Rule 7-1(a)(1), Matthew Hurst, the undersigned counsel certifies, under the penalties of perjury, that he conferred with counsel for Defendants on July 14, 2015, via telephone, about this motion. Defendants do not oppose the motion.

2.      Plaintiffs' Counsel has settled, and the Court has preliminarily approved, the above captioned litigation for $15.5 million in cash and valuable equitable relief.

3.      " A lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). "When assessing whether the percentage requested is reasonable, courts look to factors such as: (a) the results achieved, (b) the risk of litigation, (c) the skill required, (d) the quality of work, (e) the contingent nature of the fee and the financial burden, and (f) the awards made in similar cases." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).

4.      As explained in the memorandum filed with this motion, a 30% award of attorney's fees is justified by all of the *Vizcanio* factors, awards in similar cases, and the particular facts of this case.

5.      Further, the expenditures necessary to prosecute this litigation are reasonable and what counsel would normally charge any hourly paying client.

6.      Plaintiffs' Counsel also requests that Gilardi and Co., LLC, the administrator appointed by this Court, be awarded its administrative fee of up to $38,500.00 for services

rendered in connection with providing notice and other administrative services to the Class. The actual fee will be known by, and provided to the Court at, the Final Fairness hearing.

For the foregoing reasons and the reasons contained in the contemporaneously filed memorandum in support of this motion, Plaintiffs' Counsel respectfully requests that this Court award them 30% of the recovery in attorney's fees ($4.65 million) and reimbursement of expenses of $55,562.21, plus any interest accrued, and administrative fees of up to $38,500.00 to Gilardi & Co., LLC. A proposed Order is filed with this motion.

Respectfully submitted,

By: s/ *Joseph Bartion*

R. Joseph Barton (admitted pro hac)
jbarton@cohenmmilstein.com
Bruce Rinaldi (admitted pro hac)
brinaldi@cohenmilstein.com
COHEN MILSTEIN SELLERS & TOLL
1100 New York Ave. NW
Suite 500, West Tower
Washington, DC 20005
Telephone:  (202) 408-4600
Facsimile: (202) 408-4699

By: s/ *Matthew T. Hurst*

Matthew Hurst, (admitted pro hac)
Email: mhurst@heffnerhurst.com
Matthew T. Heffner, (admitted pro hac)
Email: mheffner@heffnerhurst.com
HEFFNER HURST
30 N. LaSalle Street, 12th Floor
Chicago, Illinois 60602
Telephone: (312) 346-3466
Fascimile: (312) 346-2829

By: s/ *Jennifer Middleton*

Derek C. Johnson OSB #882340
djohnson@jjlslaw.com
Jennifer Middleton OSB #071510
jmiddleton@jjlslaw.com
JOHNSON JOHNSON LARSON &
SCHALLER
975 Oak Street, Suite 1050
Eugene, Oregon 97401
Telephone: (541) 484-2434
Facsimile: (541) 484-0882

By: s/ *Robert Izard*

Robert A. Izard (admitted pro hac)
Email: rizard@izardnobel.com
Mark P. Kindall (admitted pro hac)
Email: mkindall@izardnobel.com
IZARD NOBEL LLP
29 South Main Street, Suite 215
West Hartford, CT 06017
Telephone: (860) 493-6293
Facsimile: (860) 493-6290

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

RONNIE DOOLEY, *et al.*, individually
and on behalf of all others similarly
situated

    Plaintiffs,

  v.

RONALD SAXTON, RODERICK C.
WENDT, R. NEIL STUART, and JELD-
WEN EMPLOYEE STOCK OWNERSHIP
& RETIREMENT PLAN,

    Defendants.

Case No. 1:12-CV-1207-MC
Consolidated with Case Nos: 1:13-
CV-177-MC & 1:13-CV-395-MC

[PROPOSED] ORDER REGARDING ATTORNEY'S FEES AND EXPENSES

    Plaintiffs' Counsel has moved for an award of attorney's fees and expenses in connection with this litigation. The Court hereby incorporates the findings made in connection with the Final Approval Order and makes the following additional findings. Based on these findings, and in compliance with Fed. R. Civ. P. 23(h), the Court grants Plaintiffs' Counsel's motion.

    A.  The Attorney's Fee Request

    1.  " A lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). However, even where attorneys' fees and costs are authorized by law or the parties' agreement in a certified class action, " courts have an independent obligation to ensure that the award, like the settlement itself, is

reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prod. Liability Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). "When assessing whether the percentage requested is reasonable, courts look to factors such as: (a) the results achieved, (b) the risk of litigation, (c) the skill required, (d) the quality of work, (e) the contingent nature of the fee and the financial burden, and (f) the awards made in similar cases." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).

2.      Here, the Court's review of each of the *Vizcaino* factors demonstrates that an award of 30% of the Settlement Amount is appropriate in these circumstances. Plaintiffs' Counsel secured an all-cash payment of $15.5 million, representing 45% of the maximum possible damages, as well as valuable equitable relief which includes, among other things, a prohibition of new expenses when has been in effect since 2013. As noted in Plaintiffs' Counsel's memorandum, the 45% recovery is substantially higher than many other ERISA class action settlements that have been approved by courts in the Ninth Circuit and around the nation.

3.      Additionally, the Court finds that this litigation was risky. The Independent Fiduciary retained by the Plan has opined that the Defendants had "strong defenses" to the claims. The Court has reviewed those defenses and concurs with the Independent Fiduciary's opinion. The contingency fee arrangement only reinforces the risk. Plaintiffs' Counsel has expended millions of dollars of attorney time and tens of thousands in cash outlays, none of which would have been recovered had they not prevailed.

4.      Further, the Court recognizes that ERISA is a highly specialized field and that Plaintiffs' Counsel have substantial experience in this difficult area of the law. The Court also observes that quality of the work, namely the substantial recovery, has been excellent.

5.      The Court also notes that a 30% fee award is consistent with fee awards in numerous other class action ERISA cases. Further, the Lead Plaintiffs agreed at the outset of

the litigation that Plaintiffs' Counsel could seek up to 33% of any recovery and that the requested fee is below that maximum. Additionally, the Lead Plaintiffs have submitted affidavits supporting the 30% fee request.

6.      Finally, the Court notes that the Independent Fiduciary has concluded that the 30% fee request is reasonable in light of the "excellent results" achieved by Plaintiffs' Counsel. The Independent Fiduciary, retained to assess the settlement for the Plan pursuant to 68 FR 75632-01 (2003), is highly qualified to make determinations as to the reasonableness of the settlement and attorney's fees. The Court finds that the approval of the fee requested by the Independent Fiduciary supports counsel's request.

7.      Cross-checking the requested fee amount with the lodestar method, Class Counsel is requesting a 2.3 multiplier of their lodestar fees. This is within the typical range. *See Vizcaino*, 290 F.3d at 1051 n.6 (noting that multipliers ranging from one to four are common).

        B.      The Litigation Costs Request

8.      Attorneys who create a common fund are entitled to the reimbursement of expenses they advanced for the benefit of the class. Here, Class Counsel request $55,562.21. The Notice specified that Plaintiffs' Counsel's request for costs and expenses shall not exceed $100,000. The Court has reviewed the expenses and costs submitted and determined they were reasonably necessary for the prosecution of this litigation.

9.      The Court also finds the administrator fees of Gilardi & Co., LLC, in the amount of $_____, as reasonable and necessary to provide notice and administrative services to the Class.

        For all the foregoing reasons, the Court hereby GRANTS Plaintiffs' Counsel's motion for an award of attorney's fees and expenses and awards attorney's fees of 30% of the

$15.5 million recovery ($4.65 million) and costs in the amount of $55,562.21, plus any interest which has accrued, and administrative fees of $_____ to Gilardi & Co., LLC.

SO ORDERED,

_____
JUDGE MICHAEL J. MCSHANE
UNITED STATES DISTRICT JUDGE
DISTRICT OF OREGON

_____
Date

Matthew T. Hurst, (admitted pro hac)
Email: mhurst@heffnerhurst.com
HEFFNER HURST
30 N. LaSalle Street, 12th Floor
Chicago, Illinois 60602
Telephone: (312) 346-3466
Facsimile: (312) 346-2829

R. Joseph Barton (admitted pro hac)
jbarton@cohenmmilstein.com
COHEN MILSTEIN SELLERS & TOLL
1100 New York Ave. NW, Suite 500, West Tower
Washington, DC 20005
Telephone:  (202) 408-4600
Facsimile: (202) 408-4699

*Plaintiffs' Counsel Continued on Signature Page*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| RONNIE DOOLEY, *et al.*, individually and on behalf of all others similarly situated | Case No. 1:12-CV-1207-MC |
| Plaintiffs, | Consolidated with Case Nos: 1:13-CV-177-MC & 1:13-CV-395-MC |
| v. | PLAINTIFFS' COUNSEL'S MEMORANDUM IN SUPPORT OF THEIR UNOPPOSED MOTION FOR AN AWARD OF ATTORNEY'S FEES AND EXPENSES |
| RONALD SAXTON, RODERICK C. WENDT, R. NEIL STUART, and JELD-WEN EMPLOYEE STOCK OWNERSHIP & RETIREMENT PLAN, | |
| Defendants. | |

## TABLE OF CONTENTS

Facts...........................................................................................................................1

    A. Nature of the action..........................................................................................1

    B. Plaintiffs' Counsel's efforts on behalf of the Class ........................................2

    C. The Independent Fiduciary reviews the settlement and the proposed fee
       request and determines both are reasonable................................................6

Argument .....................................................................................................................7

I. The Court should award Plaintiffs' Counsel 30% of the common fund they
   created as a reasonable attorney fee ........................................................................7

    A. The percentage-of-the-fund method of awarding fees is the preferred
       method of determining fees in common fund cases and should be used here...............7

    B. A 30% award in this case is very reasonable given the amount of work
       performed, excellent results, and awards in comparable cases.....................................9

         1.    Plaintiffs' Counsel's fee request is justified by the results achieved
             here because the $15.5 million settlement provides, at a minimum,
             45% of the Class losses and significant equitable relief ....................................10

         2.    The riskiness of this litigation and the fact that Plaintiffs' Counsel
             undertook it on a wholly contingent basis, devoting millions of
             dollars of professional time to the litigation, supports the fee request .............13

         3.    A 30% fee award is consistent with awards in similar complex,
             contingent litigation ..................................................................................17

         4.    An independent, unbiased fiduciary appointed under 29 U.S.C.
             § 1108 has reviewed the settlement and fee request and
             determined it is fair and reasonable ........................................................19

II. The requested fee is reasonable under a lodestar cross-check analysis............................20

    A. Plaintiffs' Counsel's reasonably spent 3,519.9 hours litigating this
       case and their normal billing rates are reasonable .........................................21

B. Plaintiffs counsel's fee request would amount to a 2.3 lodestar multiplier which is well-within the range of typical multipliers and reasonable given the circumstances in this case ................................................................... 23

    1.    This ERISA case involved novel and difficult legal questions ......................... 24

    2.    This case required the highly specialized skill of experienced ERISA and class-action counsel ...................................................... 25

    3.    The customary fee for contingent ERISA class action representation is 30% to 33% of the fund, and the customary lodestar multipliers are between 1 and 4 ............................................................................. 26

    4.    The contingent nature of Plaintiffs' Counsel's representation justifies their requested fee and lodestar multiplier .......................................... 27

    5.    Plaintiff's Counsel's experience, reputation, and ability supports their fee request ....................................................................... 28

    6.    The amount involved and the results obtained justify the fee request ............ 30

III. The Court should approve Plaintiffs' Counsel's expense reimbursement request because the expenses incurred were reasonable and necessary to achieve the result in this case ......................................................................... 30

Conclusion ............................................................................................... 32

<u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Abrams v. Lightolier Inc.*,
    50 F.3d 1204 (3d Cir. 1995) ........................................................................30

*Amara v. Cigna Corp.*,
    534 F. Supp. 2d 288 (D. Conn. 2008) .........................................................24

*Am. Med. Ass'n v. United Healthcare Corp.*,
    No. 00-2800, 2009 WL 1437819 (S.D.N.Y. May 19, 2009) ........................ 11

*Am. Med. Ass'n v. United Healthcare Corp.*,
    2009 WL 4403185 (S.D.N.Y. Dec. 1, 2009) ............................................... 11

*Am. Med. Ass'n v. United Healthcare Corp.*,
    No. 00-2800, Dkt. 528 (S.D.N.Y. Oct. 5, 2010) .........................................24

*Becher v. Long Island Lighting Co.*,
    64 F. Supp. 2d 174 (E.D.N.Y. 1999) ...........................................................27

*Beesley v. Int'l Paper Co.*,
    No. 06-703, 2014 WL 375432 (S.D. Ill. Jan. 31, 2014) ....................22, 26, 27

*Bd. of Trustees of AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*,
    No. 09-686, 2012 WL 2064907 (S.D.N.Y. June 7, 2012) ...........................23

*Boeing Co. v. Van Gemert*,
    444 U.S. 472 (1980) ......................................................................................7

*Bouman v. Block*,
    940 F.2d 1211 (9th Cir. 1991) .....................................................................22

*Boyd v. Coventry Health Care Inc.*,
    299 F.R.D. 451 (D. Md. 2014) ...............................................................11, 15

*Carlson v. Xerox Corp.*,
    596 F. Supp. 2d 400 (D. Conn. 2009) .........................................................26

*Chicago Truck Drivers, Helpers & Warehouse Workers*
    *Union (Indep.) Pension Fund v. CPC Logistics, Inc.*,
    698 F.3d 346 (7th Cir. 2012) .......................................................................................25

*Chesemore v. Alliance Holdings, Inc.*,
    948 F. Supp. 2d. 928 (June 4, 2013) ............................................................................29

*Curry v. Contract Fabricators Inc. Profit Sharing Plan*,
    744 F. Supp. 1061 (M.D. Ala. 1988) ............................................................................24

*Downes v. Wisconsin Energy Corp. Ret. Account Plan*,
    No. 09-0637, 2012 WL 1410023 (E.D. Wis. Apr. 20, 2012) ................................. 12, 18

*Dyce v. Salaried Employees' Pension Plan of Allied Corp.*,
    15 F.3d 163 (11th Cir. 1994) .......................................................................................16

*Fifth Third Bancorp v. Dudenhoeffer*,
    134 S. Ct. 2459 (2014) ................................................................................................16

*Fischel v. Equitable Life Assur. Society of U.S.*,
    307 F.3d 997 (9th Cir. 2002) ............................................................................ 7, 13, 28

*Florin v. Nationsbank of Georgia, N.A.*,
    60 F.3d 1245 (7th Cir. 1995) .......................................................................................25

*Griffin v. Flagstar Bancorp, Inc.*,
    No. 10-10610, 2013 WL 6511860 (E.D. Mich. Dec. 12, 2013) .....................................18

*Harris v. Marhoefer*,
    24 F.3d 16 (9th Cir. 1994) ...........................................................................................30

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) ....................................................................................................10

*Howard v. Shay*,
    100 F.3d 1484 (9th Cir. 1996) .....................................................................................17

*In re Abrams & Abrams, P.A.*,
    605 F.3d 238 (4th Cir. 2010) .........................................................................................8

*In re Activision Sec. Litig.*,
    723 F. Supp. 1373 (N.D. Cal. 1989) ........................................................... 7, 10

*In re Agent Orange Prod. Liab. Litig.*,
    818 F.2d 226, 236 (2d Cir. 1987) ..................................................................28

*In re Colgate-Palmolive Co. ERISA Litig.*,
    36 F. Supp. 3d 344 (S.D.N.Y. 2014) ........................................................ 17, 24

*In re Dynegy ERISA Litig.*,
    No. 02-3076, Dkt. 117 (S.D. Tex. Dec. 10, 2004) ....................................23, 27

*In re EDS ERISA Litig.*,
    No. 03-126, Dkt. 335 (E.D. Tex. Aug. 6, 2008) ........................................... 18

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
    586 F. Supp. 2d 732 (S.D. Tex. 2008) .........................................................24

*In re Freemont Corp. Litig.*,
    No 07-2693, Dkt. 286 (C.D. Cal. Aug. 10, 2011) ................................... 18, 22

*In re General Motors ERISA Litig.*,
    No. 05-71085, Dkt. 117 (E.D. Mich. Aug. 28, 2007) .................................... 12

*In re HealthSouth ERISA Litig.*,
    No. 03-1700, Dkt. 157 (N.D. Ala. June 28, 2006) .......................................23

*In re Heritage Bond Litig.*,
    No. 02-1475, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ......................... 13

*In re Honeywell Int'l ERISA Litig.*,
    No. 03-1214, Dkt. 80 (D.N.J. July 20, 2005) ..........................................23, 27

*In re Household Int'l ERISA Litig.*,
    No. 02-7921, Dkt. 141 (N.D. Ill. Nov. 22, 2004) ............................... 12, 18, 24

*In re Marsh ERISA Litig.*,
    265 F.R.D. 128 (S.D.N.Y. 2010) ........................................... 11, 18, 19, 20, 27

*In re Merck & Co., Inc. Vytorin ERISA Litig.,*
No. 08-285, 2010 WL 547613 (D.N.J. Feb. 9, 2010) ....................................................23

*In re Merrill Lynch ERISA Litig.,*
No. 07-9633, Dkt. 272 (S.D.N.Y. Aug. 21, 2009) ........................................................23

*In re MetLife Demutualization Litig.,*
689 F. Supp. 2d 297 (E.D.N.Y. 2010) .........................................................................8

*In re Omnivision Techs., Inc.,*
559 F. Supp. 2d 1036 (N.D. Cal. 2008) .............................................................. 7, 13, 20

*In re Royal Dutch/Shell Transport ERISA Litig.,*
No. 04-1398, Dkt. 72 (D.N.J. Aug. 30, 2005) ..............................................................23

*In re Schering-Plough Corp. Enhance ERISA Litig.,*
No. 08-1432, 2012 WL 1964451 (D.N.J. May 31, 2012) ...............................................18

*In re Syncor ERISA Litig.,*
No. 03-2446, Dkt. 318 (C.D. Cal. Mar. 30, 2009) ...................................................11, 18

*In re Textron, Inc. ERISA Litig.,*
No. 09-383, 2014 WL 576139 (D.R.I. Feb. 12, 2014) ...............................................11, 18

*In re Wash. Pub. Power Supply Sys. Sec. Litig.,*
19 F.3d 1291 (9th Cir. 1994) .............................................................................7, 13, 14

*In re WorldCom, Inc. ERISA Litig.,*
No. 02-4816, 2004 WL 2338151 (S.D.N.Y. Oct. 18, 2004) ..........................................11

*In re Xcel Energy, Inc. Sec., Derivative & "ERISA" Litig.,*
364 F. Supp. 2d 980 (D. Minn. 2005) ...................................................................14, 24

*In re Xerox ERISA Litig.,*
No. 02-1138, Dkt. 354 (D. Conn. Apr. 14, 2009) .......................................................18

*Kanawi v. Bechtel Corp.,*
No. 06-05566, 2011 WL 782244 (N.D. Cal. Mar. 1, 2011) ......................................10, 18

*Kerr v. Screen Extras Guild, Inc.*,
  526 F.2d 67 (9th Cir. 1975) ........................................................................ 21

*Kirchoff v. Flynn*,
  786 F.2d 320 (7th Cir. 1986) ........................................................................ 8

*Karpus v. Borelli (In re Interpublic Secs. Litig.)*,
  No. 03-1194, 2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004) ......................................... 25

*Laurenzano v. Blue Cross & Blue Shield of Massachusetts, Inc. Ret. Income Trust*,
  No. 99-11751, Dkt. 75 (D. Mass. Jul. 1, 2002) .............................................. 18

*Levinson v. About.Com Inc.*,
  No. 02-2222, 2010 WL 4159490 (S.D.N.Y. Oct. 7, 2010) .......................................... 18

*Mehling v. New York Life Ins. Co.*,
  248 F.R.D. 455 (E.D. Pa. 2008) ............................................................. 11, 18

*Mogck v. Unum Life Ins. Co. of Am.*,
  289 F. Supp. 2d 1181 (S.D. Cal. 2003) ...................................................... 22, 27

*Paul, Johnson, Alston & Hunt v. Graulty*,
  886 F.2d 268 (9th Cir. 1989) .............................................................. 20, 21

*Quan v. Computer Sciences Corp.*,
  623 F.3d 870 (9th Cir. 2010) ................................................................. 16

*Quesada v. Thomason*,
  850 F.2d 537 (9th Cir. 1988) ................................................................. 21

*Rankin v. Rots*,
  No. 02-71045, 2006 WL 1791377 (E.D. Mich. June 27, 2006) .............................. 24, 26

*Rodriguez v. Disner*,
  688 F.3d 645 (9th Cir. 2012) ................................................................. 9

*Savani v. URS Prof'l Solutions LLC*,
  No. 06-02805, 2014 WL 172503 (D.S.C. Jan. 15, 2014) ..................................... 26, 27

*Schumacher v. AK Steel Corp. Ret. Acc. Pension Plan,*
    711 F.3d 675 (6th Cir. 2013) ........................................................................29

*Schumacher v. AK Steel Corp. Ret. Acc. Pension Plan,*
    995 F. Supp. 2d 835 (S.D. Ohio 2014) .......................................................29

*Silverman v. Motorola Solutions, Inc.,*
    739 F.3d 956 (7th Cir. 2013) .................................................................13, 15

*Smith v. Krispy Kreme Doughnut Corp.,*
    No. 05-187, 2007 WL 119157 (M.D.N.C. Jan. 10, 2007) .............................24

*Stephens v. US Airways Grp., Inc.,*
    No. 07-1264, 2015 WL 1949749 (D.D.C. Apr. 30, 2015) ............................18

*Torgeson v. Unum Life Ins. Co. of Am.,*
    No. 05-3052, 2007 WL 433540 (N.D. Iowa Feb. 5, 2007) ..........................22

*Torrisi v. Tucson Elec. Power Co.,*
    8 F.3d 1370 (9th Cir. 1993) ........................................................................27

*Wachtel v. Health Net, Inc.,*
    482 F.3d 225 (3rd Cir. 2007) ......................................................................24

*Wells v. Sullivan,*
    907 F.2d 367 (2d Cir. 1990) ..........................................................................8

*Will v. Gen. Dynamics Corp.,*
    No. 06-698, 2010 WL 4818174 (S.D. Ill. Nov. 22, 2010) ......................18, 27

*Williams v. Rohm & Haas Pension Plan,*
    658 F.3d 629 (7th Cir. 2011) .......................................................................11

*Wright v. Or. Metallurgical Corp.,*
    360 F.3d 1090 (9th Cir. 2004) ...............................................................13, 16

*Vizcaino v. Microsoft Corp.,*
    142 F. Supp. 2d 1299 (W.D. Wash. 2001) ..................................................12

*Vizcaino v. Microsoft Corp.,*
    290 F.3d 1043 (9th Cir. 2002) ............................................................................ *passim*

*Young v. Verizon,*
    No. 05-7314, Dkt. No. 205 (N.D. Ill. Oct. 5, 2009)......................................29

*Young v. Verizon,*
    615 F.3d 808 (7th Cir. 2010).............................................................................29

<u>Statutes and Regulations</u>

29 U.S.C. § 1054(g) ............................................................................................... 15

29 U.S.C. § 1104(a)(2) .......................................................................................... 13

29 U.S.C. 1106(b)................................................................................................... 19

29 U.S.C. § 1108 .................................................................................................... 19

68 FR 75632-01 (2003)......................................................................................... 19

Treas. Reg. § 1.411(d)-3 ...................................................................................... 15

Treas. Reg. § 1.411(d)-4(d)(7) ........................................................................... 16

<u>Secondary Materials</u>

Charles Silver, *Due Process and the Lodestar Method: You Can't Get There from Here,*
    74 Tul. L. Rev. 1809 (2000) ...........................................................................9

Manual for Complex Litigation (Fourth)
    § 14.121 (2004) ...............................................................................................9

Moody's Confidence Intervals for Corporate Default Rates
    (April 2007) ................................................................................................... 17

Moody's Rating
    (June 15, 2015) ............................................................................................. 17

Moody's Rating Symbols and Definitions
    (Mar. 2015) .................................................................................................. 17

Richard Posner, *Economic Analysis of Law*
    § 21.9 (3d ed. 1986) ..................................................................................... 14

### PLAINTIFFS' COUNSEL'S MEMORANDUM IN SUPPORT
### OF THEIR UNOPPOSED MOTION FOR AN AWARD OF
### <u>ATTORNEY'S FEES AND EXPENSES</u>

Plaintiffs' Counsel request a 30% fee award from the common fund of $15.5 million they created in this case. The Court should approve that request as reasonable under FRCP 23(h). As shown in this memorandum, the fee request is not only authorized by law and the parties' agreement, it is perfectly consistent with fee awards in similar cases. Further, the fee request is justified by the particular facts of this case. Plaintiffs' Counsel have achieved an excellent result, recovering at least 45% of the losses alleged here and providing substantial equitable relief, in the face of strong opposition and murky legal precedent. And they litigated this case on a completely contingent basis—advancing millions of dollars in professional time and tens of thousands of dollars in out of pocket expenses with no guarantee it would ever be recovered. For these reasons, an independent fiduciary with no financial connection to Plaintiffs' Counsel has concluded that the fee request is fair and reasonable. Further, all named Plaintiffs support the 30% fee request. Accordingly, this Court should approve the fee request.

### FACTS

#### A.   Nature of the action

This Litigation is a class action under the Employee Retirement Security Income Act of 1974 ("ERISA"). The Plaintiffs in this litigation are, or were, participants in the JELD-WEN, Inc. Employee Ownership and Retirement Plan ("JELD-WEN ESOP" or "Plan").

Beginning on or about July 5, 2012, a number of putative class actions were commenced against the JELD-WEN ESOP and certain of its individual fiduciaries, alleging violations of ERISA. The Court, by Order dated June 27, 2013, appointed Cohen Milstein Sellers and Toll PLLC and Heffner Hurst (formerly Susman Heffner & Hurst) as Interim Co-Lead Counsel,

and Johnson Johnson Larson & Schaller PC as Liaison Counsel. Dkt. 94. Plaintiffs' Counsel filed a consolidated amended class action complaint July 24, 2013 ("Consolidated Amended Class Action Complaint" or "Complaint"). Dkt. 100.

The two primary claims in the Consolidated Amended Class Action Complaint allege violations of ERISA's anti-cutback provision and breaches of fiduciary duty. The Complaint alleges that when the Plan was amended in November 2010, the Defendants violated ERISA and damaged the Terminated Class by (1) requiring Terminated Class Members' accounts to be valued using JELD-WEN stock, (2) backdating the valuation of the stock to January 1, 2010, (3) eliminating the previously guaranteed passbook interest going forward, and (4) eliminating passbook interest which accrued in 2010. *Id*. With respect to the New Expense Class, the Complaint alleged that, beginning in 2010, participants were assessed expenses above and beyond what ERISA permits. *Id*.

### B.  Plaintiffs' Counsel's efforts on behalf of the Class

Plaintiffs' Counsel have spent an enormous amount of time and effort over the last three-and-a-half years litigating this case without ever being compensated. To begin, when the first named plaintiff, Ronnie Dooley, approached counsel in March 2012 complaining about his ESOP, Plaintiffs' Counsel were required to undertake an exhaustive legal and factual investigation of this case. Ex. 1, Hurst Decl. at ¶ 5. That pre-suit investigation took three months, and included a review not only of the over-one-hundred-page Plan documents and amendments, but the hundreds of pages of Plan communications, benefit statements, and letters to Mr. Dooley and any other participants counsel could locate. *Id*. In addition, Plaintiffs' Counsel researched the legal and factual underpinnings of both the Plan and the amendments, including review of numerous legal precedents, DOL and IRS regulations, and their relevant legislative or rule-making history. *Id*. Plaintiffs' Counsel also searched for and reviewed other, similar ESOP configurations—reviewing thousands of pages of dense, obtuse

plan documents—to help better understand the issues in this litigations. *Id*. These pre-suit efforts were time-consuming to be sure, but necessary to the ultimately complex litigation in this case.

Indeed, these pre-suit efforts bore fruit comparatively quickly. Plaintiffs' Counsel, for example, were able to file a class-action complaint on July 5, 2012, alleging the anti-cutback claims and the breach-of-fiduciary-duty claims regarding the backdating of the stock valuation and the imposition of the new expenses. Dkt. 1. Plaintiffs' Counsel wasted no time, issuing interrogatories and document requests to Defendants shortly after they filed their answer. Ex. 1 at ¶ 7. At the same time, the *Jimerson* plaintiffs' claims were proceeding through the Plan's administrative process. *Id*. at ¶ 12. These individuals were ultimately consolidated with the first-filed claims, which eliminated any argument from Defendants that the claims were not procedurally ripe or perfected. *Id*.

Plaintiffs' Counsel—as experienced ERISA counsel—knew that the Defendants' counsel—as experienced ERISA counsel—would bring a procedural motion regarding administrative review. And in fact, early in the litigation, Defendants moved to remand the case to the Plan's administrative review process. Dkt. 43. After hotly contested briefing and an hour-long vigorous oral argument, Magistrate Judge Papak denied Defendants' motion. Dkt. 55. In the same hearing, Judge Papak also granted Plaintiffs' Motion to Compel Discovery based on Defendants' responses. *Id*. Defendants appealed both findings to the district court. Dkt. 57. After further contested briefing, Dkt. 58, Judge Hernandez affirmed Judge Papak's decision. Dkt. 76.

While the victory on this procedural matter was early in the litigation, it was significant. Almost immediately thereafter, the Defendants agreed to sit down to a mediation to resolve this matter. Ex. 1 at ¶ 14. To show their seriousness, both parties agreed to a burdensome process to ensure transparency—Defendants produced approximately 11,000 pages of

documents related to both the losses at issue and the liability questions, and both parties prepared 25-page briefs, fully addressing the merits of the litigation. *Id*. at ¶¶ 15 & 16. To cement the likelihood of a successful and substantive mediation, the parties hired former Magistrate Judge Morton Denlow, who is experienced in both high-stakes litigation and particularly in ERISA class-action law. *Id*. at ¶ 14.

Plaintiffs' Counsel spent a significant amount of time and effort preparing for the mediation. But that time was nothing in comparison to the time spent battling defense counsel in the negotiations at the mediation and beyond. For example, the first mediation occurred in Chicago on August 27, 2013. *Id*. at ¶ 17. That mediation lasted 11 hours, at which point the parties resolved several issues, but many more remained. *Id*. So thereafter, Plaintiffs' Counsel spent dozens of hours in telephone conferences and negotiations with defense counsel over the remaining terms. *Id*. at ¶ 18. The issues were so complex and numerous, that for approximately the next several months, Plaintiffs' Counsel had weekly— sometimes daily—conversations with Defense Counsel regarding finalizing these matters. *Id*. At one point in fact, on January 10, 2014, the parties were required to sit down in person once again with the mediator to discuss sensitive and complicated terms. *Id*. at ¶ 19. Finally, though, despite hard-fought battles on nearly every substantive term and tenacious defense counsel, the parties reached a Settlement Agreement in Principle following an in-person meeting in Philadelphia. *Id*. at ¶ 20. The Agreement in Principle provided, among other things, for $14 million in cash to the two Classes and equitable relief in the form of a prohibition on assessment of future expenses of the type assessed against the New Expense Class. *Id*.

Thereafter, to ensure the Agreement in Principle was fair to the Class, Plaintiffs' Counsel undertook substantive confirmatory discovery, involving both the production of documents and witnesses. *Id*. at ¶¶ 22 & 23. This was not an easy process, either; the parties

battled over the scope of discovery and the witnesses to be presented. *Id.* Ultimately, though, Plaintiffs' Counsel obtained approximately 20,000 additional pages of documents and oral discovery of the necessary witnesses. *Id.* For example, in August 2014, during one of the depositions, Plaintiffs' Counsel learned that there were approximately 740 accounts which had not been included in the data previously provided to Plaintiffs. *Id.* at ¶ 24. Plaintiffs' Counsel obtained the information about these accounts and began a series of negotiations with Defendants. *Id.* at ¶¶ 27 & 28. Ultimately, Plaintiffs' Counsel negotiated a $1.5 million increase to the settlement amount to resolve this data discrepancy and to account for losses related to the decline of the stock in undistributed accounts since the initial settlement was reached. *Id.* at ¶ 28.

Unsurprisingly, even the drafting of the final settlement agreement was hotly contested and time consuming. *Id.* at ¶ 30. But Plaintiffs' Counsel's determination paid off. They sought, and ultimately obtained, the right to exclude from the recovery individuals who were responsible for the breach of fiduciary duty and the amendment. *Id.* In addition, they also protected the recovery from being reinvested in JELD-WEN stock unless a Class Member affirmatively elected to direct his or her investment. *Id.* These non-monetary benefits are in addition to the prohibition on the assessment of new expenses against participants, which has been in place since Plaintiffs' Counsel negotiated for it in 2013. *Id.* at ¶ 31.

All told, then, although this case "only" has 168 docket entries, those entries are simply the tip of the litigation iceberg. The complicated legal issues, and even more complicated settlement negotiations and agreement, required Plaintiffs' Counsel to expend over 3,500 professional hours and over $55,000 in out-of-pocket expenses on behalf of the Class.

### C.  The Independent Fiduciary reviews the settlement and the proposed fee request and determines both are reasonable

Nicholas L. Saakvitne was retained by the Plan as an independent fiduciary to assess the fairness of the settlement in this case. Ex. 2, Third Report Independent Fiduciary at 1-2 ( June 19, 2015). He has worked with both the Department of Labor and the Pension Benefit Guarantee Corporation as Trustee and Independent Fiduciary for orphaned retirement plans, served as Trustee and Independent Fiduciary for more than 200 Employee Stock Ownership Plans, currently serves as Trustee for 90 plans, and has been appointed as a plan fiduciary by many federal courts. Id., Statement of Credentials of Independent Fiduciary. Neither Mr. Saakvitne, nor his law firm, have any relationship with any of the parties. Id. at 2.

The Independent Fiduciary concluded that the settlement "provides a substantial recovery" to the Class and that it is "a reasonable and attractive settlement for the Plan." Id. at 6 & 9. He has noted that the Defendants had "strong defense arguments" and that litigation "would have been ongoing, hardfought and risky for an extended period of time." Id. at 7. He also noted that the regulations "are not totally clear" and "even ESOP legal experts do not uniformly agree" on the legal requirements for the ESOP. Id. In reviewing the substantive terms of the settlement, the Independent Fiduciary has opined that Plaintiffs' Counsel's 30% request is reasonable "based on the efforts expended, the work remaining to be done, and in light of the substantial recovery achieved for the Plan, especially when compared with the attorney's fees often awarded in these types of actions" because Plaintiffs' Counsel achieved "excellent results." Id.

## ARGUMENT

I.   **The Court should award Plaintiffs' Counsel 30% of the common fund they created as a reasonable attorney fee.**

   A.   **The percentage-of-the-fund method of awarding fees is the preferred method of determining fees in common fund cases and should be used here.**

   Class counsel whose efforts create a common fund of money for class members are entitled to a payment from that fund. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."); *Fischel v. Equitable Life Assur. Society of U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002). Put another way, "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("WPPSS").

   Courts most often use one method for determining how much of the fund class counsel is entitled to: the percentage-of-the-fund method. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (stating "use of the percentage method in common fund cases appears to be dominant" and its "advantages . . . have been described thoroughly by other courts."); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002) (approving percentage method in ERISA case); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989) ("this court concludes that in class action common fund cases the better practice is to set a percentage fee"). The Court should use the percentage-of-the-fund method here for the same reasons most other courts employ that method.

   First, Plaintiffs' Counsel signed contingent-fee agreements with their clients—the class representatives here on behalf of themselves and the class—that call for a fee of up to 33% of any recovery. Ex. 3, Jimerson Decl. at ¶ 6; Ex. 4, Dooley Decl. at ¶ 3; Ex. 5, Kitt Decl. at ¶ 3;

Ex. 6, Bellotti Decl. at ¶ 7; Ex. 7, Wolf Decl. at ¶ 5; Ex. 8, Snodgrass Decl. at ¶ 5. These agreements are relevant to the reasonableness of the fee request. *Vizcaino*, 290 F.3d at 1050.

Second, percentage approaches are the standard contingent-fee arrangements, and awarding them in cases like these acts as a strong incentive to attorneys to take risky cases such as this. Indeed, without contingent-fee contracts and their percentage awards, many individuals could not afford access to the courts. *In re Abrams & Abrams, P.A.*, 605 F.3d 238, 245 (4th Cir. 2010) ("contingency fees provide access to counsel for individuals who would otherwise have difficulty obtaining representation"). "Many claimants . . . cannot afford to retain counsel at fixed hourly rates . . . yet they are willing to pay a portion of any recovery they may receive in return for successful representation. Ignoring reasonable contingent fee agreements or automatically reducing them would impair claimants' ability to secure representation." *Wells v. Sullivan*, 907 F.2d 367, 371 (2d Cir. 1990).

This was a risky and expensive case. Few, if any, members of the Class had the financial wherewithal to pay Plaintiffs' Counsel their normal hourly rates to prosecute this action. Ex. 3 at ¶ 7; Ex 4 at ¶ 4; Ex. 5 at ¶ 4; Ex. 6 at ¶ 7; Ex. 7 at ¶ 6; Ex. 8 at ¶ 6; Ex. 9, Woerner Decl. at ¶ 4; Ex. 10, Powell Decl. at ¶ 4. Indeed, without the contingent fee contract here, this case probably would have never been filed. *Id*. In addition to providing just compensation, awards of fair attorney's fees from a common fund should also serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of people. *See*, *e.g.*, *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 356 (E.D.N.Y. 2010).

Third, the percentage approach best emulates the real-world market value of attorney's services that are provided on a contingent basis. *See Kirchoff v. Flynn*, 786 F.2d 320, 328 (7th Cir. 1986).

Fourth, the percentage method aligns the interest of the attorney and client, while avoiding the downsides of the lodestar method. It provides class counsel with a strong

incentive to effectuate the maximum possible recovery in the shortest amount of time, which is a tangible benefit to class members and the judicial system. The "lodestar method is difficult to apply, time-consuming to administer, inconsistent in result, and capable of manipulation" and "creates inherent incentive to prolong the litigation until sufficient hours have been expended." Manual for Complex Litigation (Fourth) § 14.121 (2004); *see also* *Vizcaino*, 290 F.3d at 1050 n.5 ("The lodestar method is merely a cross-check on the reasonableness of a percentage figure, and it is widely recognized that the lodestar method creates incentives for counsel to expend more hours than may be necessary on litigating a case so as to recover a reasonable fee . . . ."). Consequently, one of the nation's leading scholars in the field of class actions and attorneys' fees, Professor Charles Silver of the University of Texas School of Law, has concluded that the percentage method of awarding fees is the only method of fee awards that is consistent with class members' due process rights. *See* Charles Silver, *Due Process and the Lodestar Method: You Can't Get There from Here*, 74 Tul. L. Rev. 1809 (2000).

### B. A 30% award in this case is very reasonable given the amount of work performed, excellent results, and awards in comparable cases.

Next, the Court must determine the proper percentage of the fund to award. In the Ninth Circuit, the "usual range" for percentage fee awards in common fund cases is 20-30%. *Vizcaino*, 290 F.3d at 1047. The mid-point—roughly called a "25% benchmark," *id.*—should be adjusted upwards or downwards based on the particular circumstances of the case, to ensure the fee is "reasonable under the circumstances." *Rodriguez v. Disner*, 688 F.3d 645, 653 (9th Cir. 2012). Which circumstances are relevant to the fee award will vary from case to case, but generally, the Ninth Circuit has recognized that a number of factors can be considered, including: (1) the result achieved, (2) the riskiness of the representation to class counsel, (3) any benefits beyond the cash settlement fund, (4) customary fees awarded in

similar cases, and (5) the burden of contingent representation. *See Vizcaino*, 290 F.3d at 1048-50.

All of these factors strongly support Plaintiffs' counsel's 30% fee request—which is within the "usual range" of class action fee awards in this Circuit. *Id.*, at 1047 ("20-30% [is] the usual range"); *Kanawi v. Bechtel Corp.*, No. 06-05566, 2011 WL 782244, at *2 (N.D. Cal. Mar. 1, 2011) (ERISA class action awarding 30% because less "is below the market rate for similar cases"); *In re Activision*, 723 F. Supp. at 1378 ("this court concludes that in class action common fund cases the better practice is to set a percentage fee and that, absent extraordinary circumstances that suggest reasons to lower or increase the percentage, the rate should be set at 30%."). In addition, this case has a factor unique to ERISA cases—an Independent Fiduciary, with no ties to Plaintiffs' Counsel and vast expertise in the area of ERISA, has determined the fee request is reasonable because Plaintiffs' Counsel achieved "excellent results" for the Class. Ex. 2, Third Report Independent Fiduciary at 7. In fact, all of the named Plaintiffs, each of whom witnessed Plaintiffs' Counsel's efforts on their behalf, support the 30% fee request. Ex. 3 at ¶ 8; Ex 4 at ¶ 6; Ex. 5 at ¶ 6; Ex. 6 at ¶ 8; Ex. 7 at ¶ 7; Ex. 8 at ¶ 7; Ex. 9 at ¶ 6; Ex. 10 at ¶ 6.

> **1. Plaintiffs' Counsel's fee request is justified by the results achieved here because the $15.5 million settlement provides, at a minimum, 45% of the Class losses and significant equitable relief.**

One of the most important factors in determining the reasonableness of a fee is the result achieved for the class. *See Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained"); *Vizcaino*, 290 F.3d at 1048. Here, Plaintiffs' Counsel's efforts have secured $15.5 million in cash for the Class along with significant equitable relief. Given that Plaintiffs' Counsel estimated maximum damages to the Class of $34.555 million, this is a very significant sum. Ex. 1 at ¶ 27.

Here, the $15.5 million cash recovery alone is a sufficient reason to grant Plaintiffs'
Counsel's fee request. That cash component of the settlement represents, at a minimum,
approximately 45% of the total estimated losses.[1] _Id._ at ¶ 29. As the Independent Fiduciary has
opined, this is an "excellent result[]" for the Class. Ex. 2 at 7.

The Independent Fiduciary is correct. Most ERISA class actions settle for far, far less.
_Cf._ _Boyd v. Coventry Health Care Inc._, 299 F.R.D. 451, 463 (D. Md. 2014) (approving
settlement that recovered 3.2% of maximum damages); _Williams v. Rohm & Haas Pension Plan_,
658 F.3d 629, 634 (7th Cir. 2011) (settlement recovered 24.3% of maximum damages); _Mehling_
_v. New York Life Ins. Co._, 248 F.R.D. 455, 462 (E.D. Pa. 2008) (20% recovery); _In re_
_WorldCom, Inc. ERISA Litig._, No. 02-4816, 2004 WL 2338151, at *6 (S.D.N.Y. Oct. 18, 2004)
(recovered 7% of maximum damages); _compare_ _Am. Med. Ass'n v. United Healthcare Corp._, No.
00-2800, 2009 WL 1437819, at *2 (S.D.N.Y. May 19, 2009) _with_ _id._, 2009 WL 4403185, at *1
(S.D.N.Y. Dec. 1, 2009) (7.4% recovery). Even more on point, ERISA class counsel are
awarded far _more than_ 25% of a fund, when securing _far less_ than 45% of the potential losses.
For example:

- _In re Textron, Inc. ERISA Litig._, No. 09-383, 2014 WL 576139, at *1 (D.R.I. Feb.
  12, 2014) & Dkt. 109-1 at 1 & 13 (awarding 30% of common fund where
  attorneys recovered 5.5% of maximum damages);

- _In re Syncor ERISA Litig._, No. 03-2446, Dkt. 318 at 3 (C.D. Cal. Mar. 30, 2009)
  & Dkt. 300 at 9 (awarding 33.3% of common fund where attorneys recovered
  8.7% of maximum damages);

- _In re Marsh ERISA Litig._, 265 F.R.D. 128, 146-47 (S.D.N.Y. 2010) & No. 04-
  8157, Dkt. 138 at 1 & 13 (awarding 33.3% of common fund where attorneys
  recovered 35% of maximum damages);

---

[1] The 45% figure is based on Plaintiffs' own loss estimates, which were much higher than
Defendants' estimates. Ex. 1 at ¶ 26. Had the Defendants prevailed in whole or in part in
reducing the loss number in litigation, the settlement here would be even better.

- *Downes v. Wisconsin Energy Corp. Ret. Account Plan*, No. 09-0637, 2012 WL 1410023, at *4 (E.D. Wis. Apr. 20, 2012) & No. 09-637, Dkt. 142 at 7-21 (awarding 30% of common fund where attorneys recovered 22% of maximum damages);

- *In re Household Int'l ERISA Litig.*, No. 02-7921, Dkt. 141 (N.D. Ill. Nov. 22, 2004) & Dkt. 136 at 3 (awarding 30% of common fund where attorneys recovered 15.5% of maximum damages); and,

- *In re General Motors ERISA Litig.*, No. 05-71085, Dkt. 117 (E.D. Mich. Aug. 28, 2007) & Dkt. 108 at 13 (awarding 30% of common fund where attorneys recovered 28% of maximum damages).

Moreover, when the Court factors in the value of the equitable relief in the settlement, Plaintiffs' Counsel's fee request represents substantially *less* than 30% of the settlement value conferred on the Class. *See Vizcaino v. Microsoft*, 142 F. Supp. 2d 1299, 1302 & 1305 (W.D. Wash. 2001) (the fee percentage awarded is based on recovery and "include[s] future benefits"), *affirmed* 290 F.3d at 1049 ("non-monetary benefits conferred by the litigation are a relevant circumstance" for fee determination). For example, Plaintiffs' Counsel secured a prohibition against charging any further "new expenses" against the 11,000 Class Members' accounts as of 2013. Ex. 1, at ¶ 31. These expenses were millions of dollars more than the Plan reported to the Department of Labor as the Plan's actual operating costs. In 2010 and 2011 alone, these expenses amounted to over $11 million in Class Members' losses. Dkt. 100 at ¶¶ 179-80. But Plaintiffs' Counsel negotiated a stop to those charges in 2013 and beyond. Ex. 1 at ¶ 31. When added to the $15.5 million cash component, this equitable relief substantially increases the value of the settlement, likely by millions, making Plaintiffs' Counsel's fee request of $4.65 million likely significantly less than 30% of the benefit conferred upon the Class.

Moreover, the settlement prohibits the Plan from reinvesting proceeds of the settlement in JELD-WEN stock unless the participant explicitly consents in writing. *Id.* at ¶ 30. This prohibition protects Class Members from the risk of non-diversification of their retirement

nest egg in a wildly fluctuating, non-publically traded stock, which has real value to the Class. Since an ESOP fiduciary does not normally have the obligation to diversify assets, 29 U.S.C. § 1104(a)(2); *Wright v. Or. Metallurgical Corp.*, 360 F.3d 1090, 1097 (9th Cir. 2004), the Class Members' ability to secure a portion of their accounts in more conservative assets is a significant benefit.

Finally, the settlement requires the Plan to provide Plaintiffs' Counsel the yearly valuation reports for the ESOP until 2021, when all Terminated Employee Class Members will have been completely divested of their benefits in the Plan. *Id.* at ¶ 32. That is, for the next six years, Plaintiffs' Counsel will continue to protect Class members from any harm such as alleged in this suit. That relief, too, has concrete value that should be considered by the Court and supports the fee requested. *See Vizcaino*, 290 F.3d at 1049 ("non-monetary benefits conferred by the litigation are a relevant circumstance").

> **2.   The riskiness of this litigation and the fact that Plaintiffs' Counsel undertook it on a wholly contingent basis, devoting millions of dollars of professional time to the litigation, supports the fee request.**

In addition to the risks associated with complex litigation, "the risk of non-payment or reimbursement of expenses [in cases undertaken on a contingent basis] is a factor in determining the appropriateness of counsel's fee award." *In re Heritage Bond Litig.*, No. 02-1475, 2005 WL 1594403, at *21 (C.D. Cal. June 10, 2005); *see, e.g.*, *WPPSS*, 19 F.3d 1300, 1299-301 (9th Cir. 1994); *In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2004). "Contingent fees compensate lawyers for the risk of nonpayment. The greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel." *Silverman v. Motorola Solutions, Inc.*, 739 F.3d 956, 958 (7th Cir. 2013). "This provides the 'necessary incentive' for attorneys to bring actions to protect individual rights and to enforce public policies" *Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002). Contingent fees that may far exceed the market value of the

services rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless of whether they win or lose. *WPPSS*, 19 F.3d at 1299.

Here, Plaintiffs' Counsel have spent over three years and devoted 3,519.9 hours of professional time investigating, negotiating, litigating, and soon, administering the settlement to this litigation. Ex. 1, Hurst Decl. at ¶ 39; Ex. 11, Barton Decl. at ¶ 17; Ex. 12, Izard Decl. at ¶ 5; Ex. 13, Middleton Decl. at ¶ 5. In that time, they have never been paid for their work, taking the case on a wholly contingent basis. Instead, they faced the very real risk—in the face of staunch opposition from highly qualified defense counsel—that they would receive nothing for the almost $2 million worth of professional time spent on this case. Ex. 1 at ¶ 44; Ex. 11 at ¶ 19; Ex. 12 at ¶ 7; Ex. 13 at ¶ 7. They also stood to lose over $55,000 in hard cash outlays spent to achieve the settlement here. Ex. 1 at ¶ 49; Ex. 11 at ¶ 33; Ex. 12 at ¶ 11; Ex. 13 at ¶ 11.

"[I]n most cases it may be more appropriate to examine lawyers' reasonable expectations, which are based on the circumstances of the case and the range of fee awards out of common funds of comparable size." *Vizcaino*, 290 F.3d at 1050. In taking this risk, Plaintiffs' Counsel had an expectation that they would receive a percentage award of up to 33% of the fund, a common fee requested. *See*, *e.g.*, Ex. 1 at ¶ 47. Plaintiffs' lawyers need to recoup fees like this to offset the numerous cases in which they devote millions of dollars of time and expenses but receive nothing in return. *See*, *e.g.*, *WPPSS*, 19 F.3d at 1299 ("It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases."); Richard Posner, *Economic Analysis of Law* § 21.9, at 534-35 (3d ed. 1986); *In re Xcel Energy, Inc. Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 994 (D. Minn. 2005) ("[p]recedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their

advocacy."); _Silverman_, 739 F.3d at 958 ("Contingent fees compensate lawyers for the risk of nonpayment. The greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel.").

ERISA cases are especially risky. "While every attorney undertaking a class action bears substantial risks, those risks are especially pronounced in ERISA litigation of this nature." _Boyd v. Coventry Health Care Inc._, 299 F.R.D. 451, 464 (D. Md. 2014). This case exemplifies that risk because, in the words of the Independent Fiduciary, Defendants had "strong defense arguments." Ex. 2 at 7. In respect to the anti-cutback claims, ERISA protects against reductions in "accrued benefits." 29 U.S.C. § 1054(g). Plaintiffs alleged that the 2010 amendment reduced the Terminated Employee Class's accrued benefits by reinvesting their accounts in JELD-WEN stock and eliminating 3% passbook interest on those accounts. But Defendants argued that the amendment to the Plan did not reduce accrued benefits. ERISA's anti-cutback provision only looks at the value as of the date of the amendment, not the possibility that future economic developments could result in a decline in benefits. _See_ Treas. Reg. § 1.411(d)-3. The reinvestment of the Terminated Employee Class's accounts in JELD-WEN stock was, potentially, a direct exchange of equal value of one type asset for another. In other words, as a result of the amendment, the accounts were worth exactly the same as they were they were before the amendment. Not only did Defendants have an argument that the reinvestment was an exchange of equal value assets, they further argued that the amendment actually _increased_ the value of Terminated Employee Class's accounts. This is because Defendants reinvested the accounts using a share value of $417.40 when, according to the most recent valuation at the time of the amendment, the shares were worth $468.50 per share. In other words, the Class's accounts actually increased 12.25% as a result of the amendment – hardly a cutback of benefits by any standard.

Similarly, Defendants argued that the elimination of the 3% passbook interest was not a cutback. Under the Treasury regulations, "[t]he right to a particular form of investment (e.g. investment in employer stock or securities or investment in certain types of securities, commercial paper, or other investment media" is not protected by the anti-cutback rules. Treas. Reg. § 1.411(d)-4(d)(7). If the form of investment, such as a passbook interest bearing account, is not protected then the Plan may be entitled to eliminate it in favor of investing in company stock. Additionally, ERISA allows retroactive amendments to the Plan. *See*, *e.g.*, *Dyce v. Salaried Employees' Pension Plan of Allied Corp.*, 15 F.3d 163, 166 (11th Cir. 1994) ("applicable regulations permit employee benefit plans under ERISA to be amended, not only prospectively, but also retroactively."). Defendants also argued that, under the language of the Plan, interest did not accrue until the end of the year. By making the November 19, 2010 amendment retroactive to January 1, 2010, Defendants may have been within their rights to eliminate the interest as a benefit since it had not yet accrued.

Defendants also had arguments with respect to the breach of fiduciary duty claims. Plaintiffs' Counsel alleged that Defendants breached this duty by failing to set aside enough cash in the Plan to pay out accounts if there was a decline in the stock price. But at the time this case was filed, the decision by the fiduciaries to set aside, or not to set aside, cash was entitled to a presumption of prudence under ERISA. *See Wright*, 360 F.3d at 1099. To overcome this presumption, Plaintiffs would need to plead and prove facts "that clearly implicate[ ] the company's viability as an ongoing concern or show a precipitous decline in the employer's stock . . . combined with evidence that the company is on the brink of collapse or is undergoing serious mismanagement." *Quan v. Computer Sciences Corp.*, 623 F.3d 870, 882 (9th Cir. 2010) (internal quotations omitted), *abrogated by Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459 (2014). Even if that presumption could be overcome, the Plan explicitly mandated that "the Plan is to invest primarily in Company Stock." Plan § 12.1. In

light of this mandate, Defendants argued that diversification is not required by the Plan. Moreover, Defendants had insulated themselves by obtaining a legal opinion, prior to the implementation, that both the New Expenses and the amendments were permissible under ERISA. *See Howard v. Shay*, 100 F.3d 1484, 1489 (9th Cir. 1996) ("securing an independent assessment from a financial advisor or legal counsel is evidence of a thorough investigation [by fiduciary]." As such, Defendants had arguments that they complied with their fiduciary obligations.

Those risks were exacerbated by the risk of non-payment here due to JELD-WEN's financial condition. The company—a manufacturer of windows and doors— is still struggling to recover from the housing-market implosion. Recently, Moody's reaffirmed its rating of company debt at B1—essentially "junk bond" status—with a default probability rating of B1-PD. Ex. 14, Moody's Rating ( June 15, 2015). Debts of B1 are a "high credit risk" and the "PD" designation means they are "speculative" and "subject to high default risk." Ex. 15, Moody's Rating Symbols and Definitions at 5 & 15 (Mar. 2015). Debt of this rating has a mean five-year cumulative default rate of 26.8%, which grows to 43.3% at ten years. Ex. 16, Moody's Confidence Intervals for Corporate Default Rates at 5 (April 2007). In other words, the longer this litigation continued, the greater the risk to both the Class and Plaintiffs' Counsel of receiving absolutely nothing no matter how successful they were in the litigation.

### 3.    A 30% fee award is consistent with awards in similar complex, contingent litigation.

Plaintiffs' Counsel's fee request is comparable to fees awarded in comparable cases, too. Typically, ERISA cases are entitled to greater fee awards because of the complexity of the law and the low chance of success for the plaintiffs. *See In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 350 (S.D.N.Y. 2014) ("a higher fee is warranted in ERISA cases as compared with some other types of cases"). So, nationally, the "standard fee awards as a

percentage of the fund in ERISA actions [is] typically award between 30% and 33% on a percentage of the fund fee calculation." *Griffin v. Flagstar Bancorp, Inc.*, No. 10-10610, 2013 WL 6511860, at *8 (E.D. Mich. Dec. 12, 2013). In fact, "[c]ourts have also awarded percentage fees of one-third or higher in ERISA company stock cases in appropriate circumstances, and especially when, as here, the fund is not a 'mega' recovery." *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 149 (S.D.N.Y. 2010).

Numerous courts, including those from the Ninth Circuit, have awarded 30% or more of the fund in ERISA class actions. *See, e.g.*, *In re Syncor ERISA Litig.*, No. 03-2446, Dkt. 318 at 3 (C.D. Cal. Mar. 30, 2009) (awarding 33.3%); *Kanawi v. Bechtel Corp.*, No. 06-05566, 2011 WL 782244, at *2 (N.D. Cal. Mar. 1, 2011) (awarding 30%); *In re Freemont Corp. Litig.*, No 07-2693, Dkt. 286 at ¶ 14 (C.D. Cal. Aug. 10, 2011) (30%); *In re Textron, Inc. ERISA Litig.*, No. 09-383, 2014 WL 576139, at *1 (D.R.I. Feb. 12, 2014) (30%); *Stephens v. US Airways Grp., Inc.*, No. 07-1264, 2015 WL 1949749, at *6 (D.D.C. Apr. 30, 2015) (38%); *In re Marsh ERISA Litig.*, 265 F.R.D. at 146-47 (33.3%); *Downes v. Wisconsin Energy Corp. Ret. Account Plan*, No. 09-0637, 2012 WL 1410023, at *4 (E.D. Wis. Apr. 20, 2012) (30%); *In re Xerox ERISA Litig.*, No. 02-1138, Dkt. 354 at 3 (D. Conn. Apr. 14, 2009) (30%); *In re Household Int'l ERISA Litig.*, No. 02-7921, Dkt. 141 at 2 (N.D. Ill. Nov. 22, 2004) (30%); *In re EDS ERISA Litig.*, No. 03-126, Dkt. 335 (E.D. Tex. Aug. 6, 2008) (33%); *In re General Motors ERISA Litig.*, No. 05-71085, Dkt. 117 at 5 (E.D. Mich. Aug. 28, 2007) (30%); *Levinson v. About.Com Inc.*, No. 02-2222, 2010 WL 4159490, at *3 (S.D.N.Y. Oct. 7, 2010) (30%); *Mehling v. New York Life Ins. Co.*, 248 F.R.D. 455, 464 (E.D. Pa. 2008) (30%); *Will v. Gen. Dynamics Corp.*, No. 06-698, 2010 WL 4818174, at *1 (S.D. Ill. Nov. 22, 2010) (33.33%); *In re Schering-Plough Corp. Enhance ERISA Litig.*, No. 08-1432, 2012 WL 1964451, at *7 (D.N.J. May 31, 2012) (33.3%); *Laurenzano v. Blue Cross & Blue Shield of Massachusetts, Inc.*

*Ret. Income Trust*, No. 99-11751, Dkt. 75 at 3 (D. Mass. Jul. 1, 2002) (33.3%). Thus, Plaintiffs'

Counsel's fee request here is in line with other customary awards in ERISA class action cases.

> **4.    An independent, unbiased fiduciary appointed under 29 U.S.C. § 1108 has reviewed the settlement and fee request and determined it is fair and reasonable.**

ERISA class-action settlements involving breach-of-fiduciary-duty claims are unique. In

other class cases, only the court reviews the reasonableness of a fee request, often unaided by

a party who has reviewed or challenged the underlying settlement and fee information. But

when plan fiduciaries settle litigation against them (ostensibly with the plan as well as the

class members), the Department of Labor has found such settlements might constitute

prohibited transactions, which are illegal under 29 U.S.C. 1106(b). To address this problem,

the Department of Labor requires settling fiduciaries to hire an independent, non-conflicted

party—an independent fiduciary—to review the settlement and authorize a settlement. 29

U.S.C. § 1108; 68 FR 75632-01 (2003). The independent fiduciary must review the

settlement and the attorney's fee request and determine if the plan received fair value for any

release negotiated for the allegedly breaching fiduciaries. *See* 68 FR 75632(I)(C); *In re Marsh

ERISA Litig.*, 265 F.R.D. at 139 (under the regulation, "the independent fiduciary must

determine that the plan received fair value for the release.").

Here, the Plan hired Nicholas L. Saakvitne to serve as the Independent Fiduciary. Mr.

Saakvitne has extensive ERISA experience, practicing in this area—specializing on ESOP

plans—for the last 18 years. Ex. 2, Statement of Credentials of Independent Fiduciary.

Moreover, Mr. Saakvitne has earned the respect of the Department of Labor, being hired to

act by the Department to act as a fiduciary for several orphaned ERISA plans. *Id*. Mr.

Saakvitne conducted a thorough review of the attorney's-fee request with the sole purpose of

determining whether that request was fair and reasonable to the Plan. His unbiased

conclusion is that the 30% request is reasonable "based on the efforts expended, the work

remaining to be done, and in light of the substantial recovery achieved for the Plan, especially when compared with the attorney's fees often awarded in these types of actions." *Id.* at 7. Indeed, the Independent Fiduciary concluded that Plaintiffs' Counsel achieved "excellent results," noting the risk in undertaking this litigation, the Defendants "strong defense arguments," and that litigation "would have been ongoing, hardfought and risky for an extended period of time." *Id*.

This unique fact—that an independent fiduciary has reviewed and approved the fee request on behalf of the Plan and the participants—strongly supports Plaintiffs' Counsel's fee request. *See In re Marsh ERISA Litig.*, 265 F.R.D. at 151 ("The Independent Fiduciary's approval . . . weigh heavily in support of the Court's decision to award the requested fees and expenses.").

## II.   The requested fee is reasonable under a lodestar cross-check analysis.

In the Ninth Circuit, the Court may also use the lodestar method to cross-check the reasonableness of a fee request. "[As] a final check on the reasonableness of the requested fees, courts often compare the fee counsel seeks as a percentage with what their hourly bills would amount to under the lodestar analysis." *In re Omnivision*, 559 F. Supp. 2d at 1048; *see also Vizcaino*, 290 F.3d at 1050 n.5 (the "lodestar method is merely a cross-check on the reasonableness of a percentage figure, and it is widely recognized that the lodestar method creates incentives for counsel to expend more hours than may be necessary on litigating a case so as to recover a reasonable fee, since the lodestar method does not reward early settlement."). A lodestar cross-check here further supports the reasonableness of Plaintiffs' Counsel's fee request.

In performing a lodestar analysis, a court first multiplies the number of professional hours spent by the hourly rates of plaintiffs' counsel to determine the "lodestar." *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989). Both the hours and the

rates should be reasonable. *Id*. Then the court applies a multiplier to the lodestar to factor in the risk taken by plaintiffs' counsel in the representation, the novelty and difficulty of the questions involved, the skill requisite to perform the legal service properly, the customary fee, whether the fee is fixed or contingent, the amount involved and the results obtained, the experience, reputation, and ability of the attorneys, and awards in similar cases. *Quesada v. Thomason*, 850 F.2d 537, 539 n. 1 (9th Cir. 1988) (citing *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)). The typical multiplier for contingent class litigation is between 1 and 4. *Vizcaino*, 290 F.3d at 1051 n.6.

### A. Plaintiffs' Counsel's reasonably spent 3,519.9 hours litigating this case and their normal billing rates are reasonable.

Plaintiffs' Counsel and staff have spent a total of 3,519.9 hours working on this case. *See* Ex. 1, Hurst Decl. at ¶ 39; Ex. 11, Barton Decl. at ¶ 17; Ex. 12, Izard Decl. at ¶ 5; Ex. 13, Middleton Decl. at ¶ 5. As reflected in the Declarations, the hours claimed were incurred by, among other things, investigating the claims against Defendants, reviewing and analyzing Plan documents and information, preparing the Complaint and amendments thereto, conducting necessary legal research, briefing and arguing Defendants' motion to remand and Plaintiffs' motion to compel, briefing the appeal of the rulings on these motions, review of thousands of pages of documents, preparing and reviewing the full merits briefs on the issues, multiple mediation sessions, protracted negotiations, conducting confirmatory discovery, preparing for and taking oral discovery, renegotiating the settlement to provide for an addition $1.5 million in recovery, and preparing the necessary agreements and pleadings related to the settlement. Ex. 1 at ¶¶ 5-11, 15-20, 22, 27-28, 30-32 & 37; Ex. 11 at ¶¶ 21-23, 27-29 & 31. Given these activities, the complexity of the legal issues involved (*see* Section I.B.2, above), and the intensity of the defense, the hours incurred are reasonable. Further, Plaintiffs' Counsel anticipates expending substantial additional hours on this litigation to

bring it to a conclusion. Ex. 1 at ¶ 45; Ex. 11 at ¶ 20; Ex. 12 at ¶ 8; Ex. 13 at ¶ 8. Thus, these additional hours are appropriately taken into account when performing the lodestar cross-check.

Plaintiffs' Counsel's rates, between $375 and $790 per hour, are based on each attorney's position, experience level, and location. *See* Ex. 1 at ¶ 41; Ex. 11 at ¶ 18; Ex. 12 at ¶ 6; Ex. 13 at ¶ 6. These rates are reasonable because they are based on the prevailing rates in the communities in which Plaintiffs' Counsel practice or on hourly rates obtained by counsel in other complex or class action litigation. *Bouman v. Block*, 940 F.2d 1211, 1235 (9th Cir. 1991) (finding that declarations submitted by counsel of the "prevailing market rate in the relevant community . . . [are] sufficient to establish the appropriate [billing] rate for lodestar purposes"); *Mogck v. Unum Life Ins. Co. of Am.*, 289 F. Supp. 2d 1181, 1191 (S.D. Cal. 2003) (ruling that in ERISA cases, "it is appropriate to consider the declarations of attorneys in other jurisdictions because ERISA cases involve a national standard and attorneys practicing ERISA law in the Ninth Circuit tend to practice in different districts"); *Beesley v. Int'l Paper Co.*, No. 06-703, 2014 WL 375432, at *3 (S.D. Ill. Jan. 31, 2014) (concluding that "the market for legal services" by plaintiffs' firms handling ERISA breach of fiduciary duty cases "is a national one.") ; *Torgeson v. Unum Life Ins. Co. of Am.*, No. 05-3052, 2007 WL 433540, at *6 (N.D. Iowa Feb. 5, 2007) (finding out-of-town counsel's rate was reasonable because "ERISA cases involve a national standard"). But this Court need not only rely on Plaintiffs' Counsel's declarations, as other ERISA class action attorneys practicing in the Ninth Circuit charge similar rates. *See In re Freemont Corp. Litig.*, No. 07-2693, Dkt. 263 at 19 (2011 ERISA rates of between $220 and $750); *Alvidres v. Countrywide Fin. Corp.*, No. 07-5810, Dkt. 258 at 19 (2009 ERISA rates of between $260 and $695); *Wilson v. Venture Fin. Grp. Inc.*, No. 09-

5768, Dkt. 121 at 10 (2009 ERISA rates of between $275 and $650).[2] Additionally, Plaintiffs' Counsel's rates in this case have been reviewed by a respected ERISA practitioner, Daniel Feinberg, who is familiar with ERISA rates. Ex. 17, Feinberg Decl. at ¶ 15. Mr. Feinberg has attested that these rates are reasonable and consistent with the market rates for ERISA litigators. *Id*.

**B. Plaintiffs counsel's fee request would amount to a 2.3 lodestar multiplier which is well-within the range of typical multipliers and reasonable given the circumstances in this case.**

The lodestar of Plaintiffs' Counsel in this case is $1,996,228.25. Ex. 1, Hurst Decl. at ¶ 44; Ex. 11, Barton Decl. at ¶ 19; Ex. 12, Izard Decl. at ¶ 7; Ex. 13, Middleton Decl. at ¶ 7. Therefore, the requested fees of $4.65 million would equate to a multiplier of 2.3.[3]  That is well below multipliers routinely awarded in ERISA class actions. *See In re Merck & Co., Inc. Vytorin ERISA Litig.*, No. 08-285, 2010 WL 547613, at *13 (D.N.J. Feb. 9, 2010) (multiplier of 2.786); *Bd. of Trustees of AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*, No. 09-686, 2012 WL 2064907, at *2 (S.D.N.Y. June 7, 2012) (2.86 multiplier); *In re Merrill Lynch ERISA Litig.*, No. 07-9633, Dkt. 256 at 2 & Dkt. 272 at 6 (S.D.N.Y. Aug. 21, 2009) (2.9 multiplier); *In re HealthSouth ERISA Litig.*, No. 03-1700, Dkt. 153-1 at 13 & Dkt. 157 at 11-12 (N.D. Ala. June 28, 2006) (2.15 multiplier); *In re Royal Dutch/Shell Transport ERISA Litig.*, No. 04-1398, Dkt. 55 at 53 & Dkt. 72 at 13-14 (D.N.J. Aug. 30, 2005) (3.3 multiplier); *In re Honeywell Int'l ERISA Litig.*, No. 03-1214, Dkt 76 at 39 & Dkt. 80 at 1 (D.N.J. July 20, 2005) (3.7 multiplier); *In re Dynegy ERISA Litig.*, No. 02-3076, Dkt. 105 at 24 & Dkt. 117 at 2 (S.D. Tex. Dec. 10, 2004)

---

[2] Adjusting these rates for inflation at a modest 3% rate would make the top end of these rates between approximately $775 and $844 per hour.

[3] Plaintiffs' Counsel estimate that it will take an additional $100,000 worth of professional time to complete the settlement and have Plaintiffs' Counsel review the valuations through 2021. Ex. 1 at ¶ 45; Ex. 11 at ¶ 20; Ex. 12 at ¶ 8; Ex. 13 at ¶ 8. If this time is taken into account, the multiplier is actually 2.2.

(4.37 multiplier); _Am. Med. Ass'n v. United Healthcare Corp._, No. 00-2800, Dkt. 528 at 15 (S.D.N.Y. Oct. 5, 2010) (2.4 multiplier); _In re Household Int'l, Inc. ERISA Litig._, No. 02-7921, Dkt. 139 at 25 & Dkt. 141 at 16 (N.D. Ill. Nov. 22, 2004) (4.65 multiplier); _In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig._, 364 F. Supp. 2d 980, 999 (D. Minn. 2005) (4.7 multiplier); _In re Colgate-Palmolive Co. ERISA Litig._, 36 F. Supp. 3d 344, 347 (S.D.N.Y. 2014) (awarding a 5.2 multiplier); _In re Enron Corp. Sec., Derivative & ERISA Litig._, 586 F. Supp. 2d 732, 779 & 791 (S.D. Tex. 2008) (awarding 5.2 multiplier). In fact, the Ninth Circuit has approved a multiplier in an ERISA case settlement that is _59% higher_ than the multiplier requested here. _Vizcaino_, 290 F.3d at 1051 (approving a 3.65 multiplier). So there is ample precedent for the multiplier requested here.

Further, a review of the case-specific factors that cement the reasonableness of Plaintiffs' Counsel's requested fee and lodestar multiplier.

### 1.    This ERISA case involved novel and difficult legal questions.

In general, most ERISA disputes involve difficult legal questions. Part of the reason is because pension plans and the rules surrounding them are governed not only by a byzantine federal statute, but also by federal regulations and an intersection of federal and state common law. This statutory scheme is, to put it mildly, "a tangled web." _Amara v. Cigna_ Corp., 534 F. Supp. 2d 288, 296 (D. Conn. 2008); _see also Wachtel v. Health Net, Inc._, 482 F.3d 225, 237 (3rd Cir. 2007) ("ERISA is an enormously complicated statute"); _Curry v. Contract Fabricators Inc. Profit Sharing Plan_, 744 F. Supp. 1061, 1069 (M.D. Ala. 1988) ("ERISA is extremely complex and substantially still unsettled. It is almost essential that claimants have the assistance of attorneys willing to spend many hours researching their way through this legal forest."); _Smith v. Krispy Kreme Doughnut Corp._, No. 05-187, 2007 WL 119157, at *2 (M.D.N.C. Jan. 10, 2007) (ERISA "is a highly complex and quickly-evolving area of the law."); _Rankin v. Rots_, No. 02-71045, 2006 WL 1791377, at *3 (E.D. Mich. June 27, 2006)

(ERISA fiduciary litigation is "rapidly evolving"). In this complex area, the Seventh Circuit has observed that "[v]ery few areas of the law are as unsettled and complex as ESOP valuation." *Florin v. Nationsbank of Georgia, N.A.*, 60 F.3d 1245, 1248 (7th Cir. 1995).

This case was no different. The claims here had little, if any, precedential authority to help counsel (and ultimately the Court) navigate ERISA's fairly broad and vague language regarding its application to the facts here. For example, there is a dearth of precedential authority regarding when and if an ESOP may reinvest terminated participants back into company stock. In addition, there are no known cases, regulations, or laws dealing directly with a challenge to a fiduciary's investment strategy when the plan itself appears to be a hybrid defined-contribution/defined-benefit plan. Given these complex and thorny issues, this case certainly involved novel issues of law and fact. And Plaintiffs' Counsel did not have the benefit of a prior governmental action or investigation that would have shed some light on the case. *Cf. Karpus v. Borelli (In re Interpublic Secs. Litig.)*, No. 03-1194, 2004 WL 2397190, at *12 (S.D.N.Y. Oct. 26, 2004) ("This was not a case in which there was a government investigation that had resulted in disclosure of misconduct and was also driving a settlement").

Despite these muddy waters and the Defendants' "strong defense arguments," Ex. 2, Third Report Independent Fiduciary at 7, Plaintiffs' counsel secured a recovery that amounts to 45% of the Class's losses due to the challenged conduct and provides valuable equitable relief. These facts strongly support the requested fee and justify the lodestar multiplier.

### 2. This case required the highly specialized skill of experienced ERISA and class-action counsel.

Given the complex nature of ERISA, lawyers litigating in this area need to devote significant time and effort to become "highly specialized" in this field. *See Chicago Truck Drivers, Helpers & Warehouse Workers Union (Indep.) Pension Fund v. CPC Logistics, Inc.*, 698

F.3d 346, 350 (7th Cir. 2012); *see also* Rankin, 2006 WL 1791377, at \*3 (ERISA "involves highly-specialized and complex areas of law."). When one adds in the inherent complexity of litigating a class action, it is no wonder that there are "few firms handling ERISA class actions such as this" and that "few lawyers or law firms are capable of handling, much less willing to handle, this type of national litigation." Beesley, 2014 WL 375432, at \*3. Given the amount of time, expense, and risk involved in litigating these suits, any lawyer who represents a class must devote significant time and careful research to "analyze complicated legal claims and defenses under ERISA, and to synthesize technical pension plan-related issues that were presented in this case. Few law firms have the experience and resources to pursue such litigation." *Savani v. URS Prof'l Solutions LLC*, No. 06-02805, 2014 WL 172503, at \*3 (D.S.C. Jan. 15, 2014).

For further proof, look at the conduct of the Defendants. When faced with this complicated and novel suit, they apparently scoured the nation to find a firm with the requisite skill to represent them and elected lawyers, located nearly 3,000 miles away, from Morgan Lewis's Philadelphia office. That selection was warranted, given Morgan Lewis's vigorous defense, *see*, *e.g.*, *Carlson v. Xerox Corp.*, 596 F. Supp. 2d 400, 412 (D. Conn. 2009) (approving fee request where "the Class received high legal representation and obtained a very large settlement in the face of vigorous opposition by highly experienced and skilled defense counsel"), but the Plaintiff Class was no less deserving of skilled and knowledgeable counsel.

### 3. The customary fee for contingent ERISA class action representation is 30% to 33% of the fund, and the customary lodestar multipliers are between 1 and 4.

As laid out in Section I.B.3, above, the typical fee for ERISA class actions is 30% to 33% of the recovery due to these actions' complex nature. In fact, a number of courts have concluded that in ERISA cases "a one-third fee is consistent with the market rate in

settlements concerning this particularly complex area of law." *Beesley*, 2014 WL 375432, at *2; *Will v. Gen. Dynamics Corp.*, No. 06-698, 2010 WL 4818174, at *3 (S.D. Ill. Nov. 22, 2010) (awarding one-third in an ERISA case); *In re Marsh*, 265 F.R.D. at 149 (awarding one-third and observing that courts award one-third or higher in ERISA company stock cases); *Becher v. Long Island Lighting Co.*, 64 F. Supp. 2d 174, 182 (E.D.N.Y. 1999) (awarding 33.33% in ERISA case). So this factor, too, supports the fee request.

Further, in regards to the lodestar cross-check, the effective multiplier on Plaintiffs' Counsel's time—2.3—is typical as well. Indeed, compared to the awards in the comparable cases, this multiplier could be considered too low. *See, e.g.*, *Vizcaino*, 290 F.3d at 1051 (approving a 3.65 multiplier); *In re Honeywell Int'l ERISA Litig.*, No. 03-1214, Dkt 76 at 39 & Dkt. 80 at 1 (D.N.J. July 20, 2005) (3.7 multiplier); *In re Dynegy ERISA Litig.*, No. 02-3076, Dkt. 105 at 24 & Dkt. 117 at 2 (S.D. Tex. Dec. 10, 2004) (4.37 multiplier).

### 4. The contingent nature of Plaintiffs' Counsel's representation justifies their requested fee and lodestar multiplier.

Plaintiffs' Counsel took this case on a purely contingent basis and have litigated this case for over three years, advancing significant expenses, without being paid a dime. *See Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1377 (9th Cir. 1993) (relevant to fee analysis is fact that "class counsel not only for the hours they had in the case to the date of the settlement, but for carrying the financial burden of the case."). If this case had been unsuccessful, they would have lost millions in attorney time and tens of thousands in out-of-pocket expenses. That fact weighs heavily in favor of an increased lodestar multiplier. *Cf. Savani*, 2014 WL 172503, at *3 (ERISA class actions "typically consume an immense amount of attorney time and are litigated for years."); *Mogck v. Unum Life Ins. Co. of Am.*, 289 F. Supp. 2d 1181, 1191 (S.D. Cal. 2003) (ERISA plaintiff cases are "often undesirable").

Indeed, compensation for the risk and this risk-of-success factor is "perhaps the foremost factor" in determining the multiplier. *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 226, 236 (2d Cir. 1987) (quotation omitted). This risk must be determined at the outset of the litigation, not after it has concluded. *Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1009 (9th Cir. 2002). For example, if one thought a case had a 50% chance of success at the outset, a court should award a multiplier of 2 "to simulate market compensation." *In re Agent Orange Prod. Liab. Litig.*, 818 F.2d at 236.

This case was much more risky than a coin flip, however. Given the complex issues involved here and the financial condition of JELD-WEN (*see* Section I.B.2, above), not to mention the strong judicial deference to fiduciaries under ERISA, Plaintiffs' Counsel undertook an enormous financial risk here. That contingent risk further justifies the fee request and the lodestar multiplier here.

### 5. Plaintiffs' Counsel's experience, reputation, and ability supports their fee request.

Plaintiffs' Counsel respectfully submit that their experience, reputation, and ability in litigating class actions in general and ERISA cases specifically support their fee request. Cohen Milstein is widely recognized as one of the leading class action firms in the country. Dkt. 89 at 10-11. Its attorneys have been handling ERISA class actions, including ESOP class actions, for more than 25 years.[4] Cohen Milstein has been appointed lead or co-lead class counsel in a number of cases concerning plans investing in employer stock. Ex. 11, Barton Decl. ¶ 5. Joseph Barton, the Cohen Milstein partner in charge of this litigation has been litigating a wide variety of ERISA cases for over 14 years, including a number of cases involving ESOPs investing in privately held employer stock. He has tried four ERISA cases, including the trials of two ESOP cases. *Id.* at ¶¶ 9-10. In an ESOP case in which Mr. Barton

---

[4] The *Florin* case cited in this brief was brought by Cohen Milstein more than 20 years ago.

was lead trial counsel, Plaintiffs and the Class were awarded more than $17.2 million plus prejudgment interest (resulting in a total award on Plaintiffs' claims of approximately $20 million). *Chesemore v. Alliance Holdings, Inc.*, 948 F. Supp. 2d. 928 ( June 4, 2013). In that case, at the final approval hearing of the settlements after trial, the Court addressed the numerous class members who attended by stating:

> I can assure you that the lawyering that has occurred in this case, for both sides, but certainly including the lawyers representing the class, has been exceptional and very professionally done and you should feel gratified by that work.

Ex. 11-A, Transcript of July 24, 2015 Hearing in *Chesemore v. Alliance Holdings* at 51.

Similarly, Heffner Hurst's lawyers have recovered hundreds of millions of dollars for their clients in class cases and have extensive experience in ERISA matters. Dkt. 89 at 11-12. Indeed, they tried one of the largest ERISA class actions in history. In *Young v. Verizon*, both the trial court and the Seventh Circuit specifically commented on the quality of Heffner Hurst's advocacy. *See Young v. Verizon*, No. 05-7314, Dkt. No. 205 at 384 (N.D. Ill. Oct. 5, 2009) ( Judge Denlow stating our clients "should feel that they have been well served in the litigation process . . . it's been a real privilege to work on this case . . . and I appreciate the fine lawyering."); *Young v. Verizon*, 615 F.3d 808, 815 (7th Cir. 2010) (praising Heffner Hurst's "fine advocacy."). Similarly, Heffner Hurst litigated to judgment an ERISA case that the trial court described as "an uphill battle." *Schumacher v. AK Steel Corp. Ret. Acc. Pension Plan*, 995 F. Supp. 2d 835, 849 (S.D. Ohio 2014). And its appeal to the Sixth Circuit, where it obtained complete relief for the class, clarified the law on releases of ERISA benefits and prejudgment interest on such awards. *Id.*, 711 F.3d 675 (6th Cir. 2013). Thus, this factor supports the request as well.

### 6.    The amount involved and the results obtained justify the fee request.

This factor is repetitive of Section I.B.1, above, so Plaintiffs' Counsel refer to that section and note here that the recovery of 45% of the Class's losses, plus the valuable equitable relief obtained, justify the modest lodestar multiplier of 2.3, especially when compared the multipliers used in ERISA other class action cases, as demonstrated above. Because all of these factors support the lodestar multiplier, Plaintiffs' Counsel's fee request effectively amounts to a multiplier well-within the normal range used in this Circuit and nationally. It is entirely reasonable and should be approved by the Court.

## III.  The Court should approve Plaintiffs' Counsel's expense reimbursement request because the expenses incurred were reasonable and necessary to achieve the result in this case.

Expenses are compensable in common-fund cases when the expenses are of the type typically billed by attorneys to paying clients in the marketplace. _Harris v. Marhoefer_, 24 F.3d 16, 19 (9th Cir. 1994) (out-of-pocket expenses recoverable where they "would normally be charged to a fee paying client.") (internal citation omitted); _see also Abrams v. Lightolier Inc._, 50 F.3d 1204, 1225 (3d Cir. 1995) (expenses recoverable if customary to bill clients for them).

Here, Plaintiffs' Counsel expended a total of $55,562.21 in expenses that would "normally be charged to a fee paying client."  These expenses include charges such as

- fees for the mediator;
- travel;
- typically billed research charges;
- postage;
- filing fees; and
- other related and necessary expenses.

Ex. 1, Hurst Decl. at ¶ 49; Ex. 11, Barton Decl. at ¶ 33; Ex. 12, Izard Decl. at ¶ 11; Ex. 13, Middleton Decl. at ¶ 11. And, as Plaintiffs' counsel detail in their affidavits, these expenses

were necessary to the successful prosecution of this case. *Id*. Lawyers routinely bill all of these types of expenses to hourly clients. *See* Ex. 1 at ¶ 48; Ex. 11 at ¶ 32; Ex. 12 at ¶ 10; Ex. 13 at ¶ 10.

Two final points regarding the expenses bear mentioning. First, Plaintiffs' counsel expended these costs on a contingent basis—that is, they had no guarantee that they would ever be recovered. For this reason, the Court should presume they were necessary for the litigation. Second, by comparison to other similar cases, it is clear that Plaintiffs' counsel were extremely efficient and cost conscious with respect to the expenses. *See, e.g.*, *In re Freemont Corp. Litig.*, No. 07-2693, Dkt. 263 at 22 (over $400,000 in expenses in two years); *Alvidres v. Countrywide Fin. Corp.*, No. 07-5810, Dkt. 258 at 22 (over $255,000 in expenses in two years). For all of these reasons, the Court should approve Plaintiffs' Counsel's request for expense reimbursement of $55,562.21.

## CONCLUSION

For the forgoing reasons, Plaintiffs' Counsel respectfully request that this Court award 30% of the recovery, amounting to $4.65 million, in attorney's fees and $55,562.21 in expenses.

Dated: July 20, 2015

Respectfully submitted,

By: s/ *Joseph Bartion*

**R. Joseph Barton** (admitted pro hac)
jbarton@cohenmmilstein.com
**Bruce Rinaldi** (admitted pro hac)
brinaldi@cohenmilstein.com
COHEN MILSTEIN SELLERS & TOLL
1100 New York Ave. NW
Suite 500, West Tower
Washington, DC 20005
Telephone:  (202) 408-4600
Facsimile: (202) 408-4699


By: s/ *Jennifer Middleton*

**Derek C. Johnson** OSB #882340
djohnson@jjlslaw.com
**Jennifer Middleton** OSB #071510
jmiddleton@jjlslaw.com
JOHNSON JOHNSON LARSON &
SCHALLER
975 Oak Street, Suite 1050
Eugene, Oregon 97401
Telephone: (541) 484-2434
Facsimile: (541) 484-0882

By: s/ *Matthew T. Hurst*

**Matthew Hurst,** (admitted pro hac)
Email: mhurst@heffnerhurst.com
**Matthew T. Heffner,** (admitted pro hac)
Email: mheffner@heffnerhurst.com
HEFFNER HURST
30 N. LaSalle Street, 12th Floor
Chicago, Illinois 60602
Telephone: (312) 346-3466
Fascimile: (312) 346-2829


By: s/ *Robert Izard*

**Robert A. Izard** (admitted pro hac)
Email: rizard@izardnobel.com
**Mark P. Kindall** (admitted pro hac)
Email: mkindall@izardnobel.com
IZARD NOBEL LLP
29 South Main Street, Suite 215
West Hartford, CT 06017
Telephone: (860) 493-6293
Facsimile: (860) 493-6290