NICHOLAS L. SAAKVITNE
A LAW CORPORATION

NICHOLAS L. SAAKVITNE
ATTORNEY, ERISA FIDUCIARY

STEVEN E. ROSEBAUGH
ADMINISTRATOR & BUSINESS MANAGER

532 COLORADO AVENUE, SECOND FLOOR
SANTA MONICA, CALIFORNIA 90401-2408
(310) 451-3225     FAX (310) 451-9089
E-MAIL saaklaw@aol.com
www.erisafiduciary.com

MICHELINE HIMES
ORPHAN PLANS COORDINATOR

SHARON L. HERITAGE
BENEFITS COORDINATOR
(877) 385-9111

ERISA FIDUCIARY SERVICES * EMPLOYEE BENEFITS LAW

June 19, 2015

Administrative Committee of the
JELD-WEN, Inc. Employee Ownership
and Retirement Plan
c/o Michael C. Higgins, Esq.
Morgan, Lewis & Bockius, LLP
1701 Market Street
Philadelphia, PA  19103-2921

       Re: **_Third Report of Independent Fiduciary for_**
          **_DOOLEY, et al. v. SAXTON,_**
          **_et al. Civil Action No. 12-cv--1207-CL_**
          **_(United States District Court,_**
          **_District of Oregon Medford Division)_**
          **_(the "Litigation") Approving of January_**
          **_30, 2015 Class Action Settlement Agreement_**
          **_and Releases_**

Dear Administrative Committee:

  By Fiduciary Services Agreement dated February 13, 2014 I was engaged by the Administrative Committee ("Committee") of the JELD-WEN, Inc. Employee Ownership and Retirement Plan (the "Plan") (and by Ronald Saxton, R. Neil Stuart and Roderick C. Wendt) to act as Independent Fiduciary on behalf of the Plan:

  ( a ) to review the Offer of Settlement dated January 31, 2014, which was accepted and so became the Agreement in Principle (the "Agreement in Principle"), to be incorporated into a final Settlement Agreement, to determine whether to approve it on behalf of the Plan and to approve the Releases on behalf of the Plan relating to both the Terminated Employee Class Members and the New Expense Class Members as provided in the Settlement, or whether the Plan should object to the Settlement. (My First Report approving the Agreement in Principle was issued on April 14, 2014);

- 1 -

Exhibit 2

( **b** ) following the execution of the Class Action Settlement Agreement (which was signed on January 30, 2015) (the "Settlement" or "Settlement Agreement") to review the Settlement Agreement and make similar determinations (my Second Report approving the (Final) Settlement Agreement was issued on February 13, 2015); and

( **c** ) following the Court's issuance of an Order Preliminarily Approving the Settlement (which the Court did, and entered on May 27, 2015), to issue a Final Report confirming those determinations (this is the Third and Final Report).

Section XIII of the Settlement Agreement provides for these Reports.

Such role constitutes:

- that of Named Fiduciary in accordance with the provisions governing plan Fiduciaries contained in the Employee Retirement Income Security Act of 1974, as amended ("ERISA"); and

- that of an acknowledged plan Fiduciary on behalf of the Plan, in accordance with the provisions of Prohibited Transaction Class Exemption 2003-39, as amended ("PTCE 2003-39").

I have extensive experience in serving as an ERISA Independent Fiduciary for ESOPs and other retirement plans, including reviews of ERISA class action litigation settlements. A statement of my credentials is attached to this Report.

Consistent with the requirements of PTCE 2003-39: (1) neither I nor my law corporation has any relationship to, nor interest in, any of the parties to the Litigation (including the Plan, Plaintiffs, Defendants and Plan participants) that might affect the exercise of my best judgment as Independent Fiduciary; (2) the terms of the Settlement are described in a written settlement agreement; (3) I have acknowledged in writing that I am a Fiduciary with respect to the Settlement on behalf of the Plan; and (4) I will maintain or cause to be maintained for a period of at least six years the records described in PTCE 2003-39. I affirm the existence of a genuine controversy involving the Plan, reflected by the Litigation and the Settlement; and (as set forth herein) I confirm that the conditions of PTCE 2003-39 are satisfied with respect to the Settlement.

## SUMMARY OF FACTS

Plaintiffs, comprising eight former employees of JELD-WEN, Inc. (the "company") filed ERISA class actions which ultimately were consolidated into a single Class Action on behalf of two classes of participants in the Plan (generally, a Terminated Employee Class and a New Expenses Class) against the Plan and the Committee as well

Exhibit 2

as three individual members thereof, alleging various breaches of ERISA fiduciary duties resulting in harm to both classes of participants in the Plan. According to Plaintiffs, the Plan required that terminated employees' accounts in the Plan be calculated based on the year-end value of company stock in the year he or she terminated employment, and thereafter valued as if it were cash earning a Local Passbook rate of interest until it was distributed. However, the plan fiduciaries did not actually invest the terminated participants' accounts in such investments but continued to hold much or all of them in company stock. In the Complaint, Plaintiffs claimed that the company stock steadily declined in value between 2008 and 2011, and that the company amended the Plan on November 19, 2010; such amendment:

1) replaced the Local Passbook interest formula (a defined benefit) with one valuing accounts based on the value of company stock;

2) retroactively eliminated nearly one year of interest, and used a year-old stock valuation; and

3) began charging the participants' accounts grossly excessive "expenses".

Plaintiffs claim that these facts establish fiduciary breaches, as well as prohibited (Internal Revenue Code section 411(d)(6)) cutbacks in benefits, and they seek restoration of an estimated $34.555 million dollars in resulting losses to the Class Members' accounts in the Plan.

Defendants have denied Plaintiffs' assertions, and have vigorously defended the Litigation. Following various proceedings, counsel for the parties conducted extensive negotiations for settlement including two mediations with retired Magistrate Judge Morton Denlow, following which Plaintiffs tendered the Offer of Settlement which resulted in the Agreement in Principle, subsequently documented (following confirmatory discovery and certain changed terms) in the Settlement Agreement.

### *TERMS OF SETTLEMENT*

The Settlement, if finally approved by the Court:

- constitutes a settlement binding on the parties and on all affected participants in the Plan;

- provides a $15,500,000.00 cash settlement amount (settlement fund), paid on behalf of the Defendants;

Exhibit 2

- provides that certain expenses will be paid from the settlement fund, as follows:

    - the costs of providing notice to participants;

    - any taxes incurred by the settlement fund; and

    - such Plaintiffs' counsel fees and expenses and incentive awards for class representatives as may be awarded by the Court, with fees not to exceed one-third of the settlement fund.

    - other costs of administering and implementing the Settlement are to be borne by Defendants, not the Plan nor the Settlement Classes.

    - Net of such expenses, the settlement amount (likely to exceed $10,000,000.00) shall be distributed to the Plan and thereafter to the Members of the Settlement Classes*, in accordance with the (Second Amended) Plan of Allocation and shall be made available: ( a ) generally for immediate distribution to affected participants no longer employed by the company (or direct rollover at their election), even if the balance of their accounts in the Plan are not yet currently distributable; and ( b ) available for subsequent distribution to current employees in accordance with the provisions of the Plan (in the meantime such funds to be prudently invested by the Plan Fiduciaries but in company stock only if the participant so elects). The Plan of Allocation is complex, endeavoring to match net recoveries as closely as possible to the losses suffered by the two Classes.

- restricts the Plan from assessing against participant accounts any of the New Expenses which were the subject of the Litigation.

- the Settlement Agreement (Article XV) includes broad general releases and bars on asserting or maintaining claims or bringing suits on matters asserted in the Litigation relating to the Plan.

---

\*   *Excluded from the Classes are the following persons: ( a ) Defendants Ron Saxton, R. Neil Stuart, Roderick C. Wendt; ( b ) the members of the ESOP Administrative Committee between 2007 and 2010; ( c ) the members of the Board of Directors of JELD-WEN between 2007 and 2012; ( d ) any person who has any beneficial interest in any of the accounts of the foregoing individuals to the extent such person is entitled to benefits under the Plan through the accounts of any of the foregoing persons as apposed to amounts in their Plan accounts based on their own employment at JELD-WEN.*

Exhibit 2

## *INDEPENDENT FIDUCIARY DUE DILIGENCE*

In reviewing the matters set forth above and the reasonableness of the Settlement as a comprehensive settlement of the claims asserted (and any others that could be anticipated), taking into consideration the various means of determining damages, the Plan's likelihood of full recovery, the amount of attorney's fees and other costs and expenses to be paid from the recovery, the risks and costs of litigation, and the value of claims foregone, I discussed the claims, their bases, potential problems with the Litigation and specifics of the Settlement and attorney's fees and expenses, with:

- R. Joseph Barton and Bruce F. Rinaldi of COHEN MILSTEIN SELLERS & TOLL, Co-Counsel for Plaintiffs; and

- Michael C. Higgins of MORGAN, LEWIS & BOCKIUS, LLP, Co-Counsel for Defendants

My review included without limitation the following documents:

*RONNIE DOOLEY, et al. v. RONALD SAXTON, et al.* [United States District Court District of Oregon Medford Division]

- Class Action Allegation Complaint [Robert Jimerson action, thereafter consolidated][January 30, 2013] [#1]

- Consolidated Amended Class Action Complaint [July 24, 2013] [#100]

- Plaintiffs' Mediation Statement

    Defendants' Mediation Statement [August 16, 2013]

- Offer of Settlement [dated January 31, 2014] [which became Agreement in Principle]

- Class Action Settlement Agreement dated January 28 and January 30, 2015. [#145]

- Proposed Notice of Class Action, Proposed Settlement & Hearing [#145 (2)]

- Memorandum in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement, Certification of Settlement Class and Approval of Notice to the Class [#146]

Exhibit 2

- Declaration of R. Joseph Barton in Support of Plaintiffs' Motion    [#147]

- Second Amended Proposed Plan of Allocation    [#158 - 1,2,3]

- Minutes of Proceeding - Court grants motions to certify class, appoints settlement administrator, appoints class counsel, preliminarily approves amended plan of allocation, and approves notice and plan of notice
[May 26, 2015]   [#162]

- Order Preliminarily Approving Settlement, Approving Form of Notice, Certifying Settlement Class & Setting Final Approval Hearing
[May 26, 2015]   [#163]

* * * * *

- Prohibited Transaction Class Exemption 2003-39 and June 15, 2010 Amendment to Class Exemption (PTE 2003-39)

- ERISA Class Action Settlements & Attorneys Fees (Fiduciary Counselors) www.erisasettlements.com

### SUMMARY OF CONCLUSIONS

*The Settlement is reasonable and provides a substantial recovery in the aggregate to participants and beneficiaries taking into account: ( a ) the substantial hurdles Plaintiffs would have to overcome to prove the various elements of their case and to establish damages greater than provided in the Settlement and so the uncertainty of greater recovery by the Plan, ( b ) the amount of attorney's fees and other costs and expenses potentially to be paid from the recovery, ( c ) the risks and costs of litigation issues, and ( d ) the value of the claims foregone.*

*1. __ERISA Claims__. As a technical ERISA attorney and ESOP Fiduciary I find Plaintiffs' case very strong on its face, with troublesome issues regarding: ( a ) the fiduciaries' failure to invest the Plan assets in a manner tracking the promised Plan benefits, apparently resulting in a "defined benefit" aspect of the Plan with many resulting regulatory complexities, ( b ) the prohibited cutback issues, and ( c ) the characterization of funding gaps as "expenses" to be charged against the participants' accounts. However, I have to weigh in opposition: ( a ) that the Plan document (prior to the November 19, 2010 amendment) apparently did not specifically require that the accounts of terminated employees be invested in Local Passbook account investments or similar investments); and ( b ) that the Internal Revenue Code section 411(d)(6) anti-*

Exhibit 2

*cutback regulations are perhaps not totally clear on the difference between an accrued benefit (which generally would be protected) and the right to have one's account invested in a specific investment (which would not be protected), and even ESOP legal experts do not uniformly agree on the scope of the exemption for ESOP benefits contained in those regulations. Finally, I must acknowledge both the mediator's lack of persuasion on the overall strength of the case, and the fact that Federal Courts do not always perceive and apply the technical intricacies of pension law the same as technical practitioners do. Taking all these factors into account, as well as the risks, costs, burdens and uncertainties associated with continuing the litigation, I believe the recovery is substantial (before the attorney's fee award, almost half of the total damages claimed by Plaintiffs).*

   2.   <u>*Attorney's fees Award*</u>.  *Attorney's fee awards (and named plaintiff incentive awards) are typically within the purview of the Court and are subject to Court approval; as Independent Fiduciary I believe that an attorney's fee request of up to thirty percent (the amount Class Counsel inform me they will request) is reasonable based on the efforts expended, the work still remaining to be done, and in light of the substantial recovery achieved for the Plan, especially when compared with the attorney's fees often awarded in these types of actions. Class Counsel informs me that this is roughly 2.3 times their lodestar amount, which I understand is by no means excessive in cases of this type, given the excellent results achieved for the classes.*

## DISCUSSION

The Consolidated Amended Complaint, and the Settlement Agreement, the Mediation Briefs and the Motion for Preliminary Approval of the Settlement describe the history of the Litigation, the underlying claims and possible defenses, the damages claimed by Plaintiffs on behalf of the Plan, the substantial mediation and negotiation process which culminated in the Settlement, and the releases to be issued as a part thereof.

The parties are in fundamental disagreement as to all aspects of the ERISA claims.

The Defendants have continued to deny all wrongdoing and challenge both the factual and legal underpinnings to Plaintiffs' claims. In the absence of the Settlement, the Litigation would have been ongoing, hardfought and risky for an extended period of time. While Plaintiffs have already refined their claims through the process, in order to prevail in the Litigation, Plaintiffs would have had to prove the necessary components of the case over strong defense arguments, win at trial, and potentially survive inevitable post-trial motions and appeals. Each stage of the proceedings would have involved considerable

Exhibit 2

risk for Plaintiffs, and it likely would have been several years at least until Plaintiffs could have hoped to obtain a final judgment in their favor - - a judgment which at most might approach twice the Settlement prior to attorney's fees (and Defendants deny that damages could be so great) - - and then Plaintiffs would face the uncertainties of collecting it.

Under these circumstances, given the hurdles Plaintiffs still would have to overcome and the likelihood that the ultimate judgment might not meaningfully exceed the Settlement, I believe the Settlement to be appropriate and advantageous to the Plan participants and beneficiaries.

The fact that it is an all cash Settlement and the relative speed at which the Settlement was reached, increase its attractiveness to the Plan participants and beneficiaries.

With respect to claims foregone, while the releases in the Settlement are broad, they are closely tailored to the specific claims in the Complaint, and it does not appear to me that there are meaningful claims not yet asserted which the Settlement will block.

In sum, I find the Settlement both reasonable and in the best interests of the Plans and Plan participants and beneficiaries.

I believe the attorney's fee anticipated to be requested to be reasonable given all of the facts and circumstances surrounding the Litigation and the Settlement, and in particular the results obtained for the Plan participants. Class Counsel informs me that their expense recovery request will be less than $100,000.00, and their requested Service Awards for the eight named Plaintiffs / Class Representatives will not exceed approximately $75,000.00. Both of these figures appear reasonable to me.

Accordingly:

(1) As previously stated, I affirm the existence of a genuine controversy involving the Plan;

(2) I believe that the Settlement is reasonable in light of the likelihood of full recovery by the Plan, the amount of attorney's fees and other costs and expenses to be paid from the recovery, the risks and costs of litigation, and the value of claims foregone;

(3) I conclude that the terms and conditions of the Settlement are not less favorable to the Plan than comparable arm's-length terms and conditions that would have been agreed to by unrelated parties under similar circumstances;

(4) The Settlement is not part of an agreement, arrangement or understanding designed to benefit a party in interest to the Plan; and

(5) The Settlement satisfies the conditions for the application of PTCE 2003-39.

## APPROVAL OF SETTLEMENT

*In sum, I believe that the Settlement is a reasonable and attractive settlement for the Plan and I hereby approve it as Independent Fiduciary acting on behalf of the Plan and authorize the Plan to participate in the Settlement in accordance with PTCE 2003-39, and I direct Plan fiduciaries not to object to the Settlement.*

## RELEASE OF CLAIMS

*Upon the Court's Final Approval Order approving the Settlement becoming Non-Appealable, I hereby fully, finally, and forever release, relinquish and discharge:*

*(1) Plaintiffs, each member of the Class, and Class Counsel from each and every claim that could have been asserted in this Litigation related to the filing of this Litigation including any claims for attorneys' fees, costs, expenses or sanctions, that relate to the filing, commencement, prosecution or settlement of this Action whether such Claim arises under ERISA or any federal law, state law, foreign law, common law doctrine, rule, regulation or otherwise; and*

*(2) the Terminated Employee Class as to any claims related challenging the correctness of any distribution or allocation in any of their Plan accounts that are subject to this Settlement, except to the extent that any such Class*

Exhibit 2

*Member submits a claim based on one of the Non-Released Claims in Section XV.4(a) of the Settlement Agreement.*

*[Capitalized terms herein shall have the meanings assigned to them in the Settlement Agreement]*

Sincerely,

NICHOLAS L. SAAKVITNE
*Independent Fiduciary for the*
JELD-WEN EMPLOYEE STOCK
OWNERSHIP AND RETIREMENT
PLAN

Enclosure

NICHOLAS SAAKVITNE
Independent Fiduciary of
EMPLOYEE BENEFIT PLAN
532 Colorado Avenue 2nd Floor
Santa Monica, CA 90401-2408

Exhibit 2

NICHOLAS L. SAAKVITNE
A LAW CORPORATION

NICHOLAS L. SAAKVITNE
ATTORNEY, ERISA FIDUCIARY

STEVEN E. ROSEBAUGH
ADMINISTRATOR & BUSINESS MANAGER

532 COLORADO AVENUE, SECOND FLOOR
SANTA MONICA, CALIFORNIA 90401-2408
(310) 451-3225    FAX (310) 451-9089
E-MAIL saaklaw@aol.com
www.erisafiduciary.com

MICHELINE HIMES
ORPHAN PLANS COORDINATOR

SHARON L. HERITAGE
BENEFITS COORDINATOR
(877) 385-9111

ERISA FIDUCIARY SERVICES * EMPLOYEE BENEFITS LAW

## *Statement of Credentials of Independent Fiduciary*

Nicholas L. Saakvitne [N.Y.U. School of Law J.D. 1976, L.L.M. in Taxation 1977; Fellow, American College of Employee Benefits Counsel] has been an ERISA attorney for more than 30 years. Since 1997, he has acted as an ERISA fiduciary for employee benefit plans, and such fiduciary service now comprises substantially all of his practice.

Serving as Trustee and Independent Fiduciary to coordinate the termination of orphan retirement plans (working closely with the EBSA division of the U.S. Department of Labor and, for defined benefit pension plans, with the Pension Benefit Guaranty Corporation), he has served as fiduciary for thousands of plans and has overseen well over $1 billion of plan benefit payments/direct rollovers. Mr. Saakvitne has been appointed as a plan fiduciary by many Federal courts, and on occasion by California state courts.

Mr. Saakvitne has served as Trustee and Independent Fiduciary for more than 200 Employee Stock Ownership Plans over the past 15 years, on an ongoing basis for active plans, and to negotiate stock purchase or stock/asset sale transactions, or to approve settlements or review other ESOP fiduciary transactions. **ESOP fiduciary service now is the majority of his practice, and he currently serves as Trustee for more than 90 ESOPs in 15 states.**

On many occasions, Mr. Saakvitne has acted as Independent Fiduciary for retirement plans to review and approve Class Action ERISA litigation settlements and/or to revive plans for purposes of coordinating distribution of settlement proceeds, working with nationally recognized members of the plaintiff's Bar and established defense counsel.

He has also been approved as Independent Fiduciary for several Prohibited Transaction Exemptions issued by the National Office of the U.S. Department of Labor.

\* \* \* \* \*

[2015]

Exhibit 2