UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
MEDFORD DIVISION

| | |
|---|---|
| RONNIE DOOLEY, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>RONALD SAXTON, *et al.*,<br><br>Defendants. | Case No. 1:12-CV-1207-CL<br>(Consolidated with Case No.: 1:13-cv-00177-CL and Case No.: 3:13-cv-00395-CL)<br><br>**CLASS ACTION UNDER ERISA** |

## DECLARATION OF ROBERT W. JIMERSON

I, Robert W. Jimerson, declare under penalty of perjury of the laws of the United States:

1. I am an adult over the age of eighteen years of age. I am one of the Plaintiffs in the above-captioned consolidated litigation challenging the 2010 amendment and new expenses and have been appointed as one of the class representatives.

2. I am a former employee of JELD-WEN and a current participant in the JELD-WEN ESOP. I began working for JELD-WEN as a Management Trainee at in 1981 in Arizona. I became a participant in the JELD-WEN ESOP on August 17, 1981. I transferred to the corporate offices in Klamath Falls, Oregon in 1983. I continued to work at the corporate offices until 2005, when I held the position of Manager: Market Research Analyst. At the time of my termination in 2005, I was 47 years old, and was a fully vested participant in the ESOP, having accumulated 25 years of vesting credits.

3. As of December 31, 2005, the December 31 following my separation from employment with JELD-WEN), my total accrued benefit under the Plan (i.e., the combined balance of all the Participant Accounts maintained for the Plaintiff by the Administrative Committee before the crediting of any future interest credits), was valued at $1,739,892.52.

Exhibit 3

4. As a result of the 2010 amendment, my benefits under the Plan were approximately $465,000 less than if the 2010 ESOP amendment had not been implemented by the Administrative Committee and my benefits had been determined and valued in conformity with the terms of the Plan in effect at the time of my termination. This includes: (i) approximately $55,000 in the loss of the Local Passbook Rate of interest that should have been credited to my Account; (ii) $378,000 in depreciation in value as a result of valuing these benefits based upon or reinvesting his account in JELD-WEN stock; and (iii) approximately $34,000 in New Expenses which have been charged to my Undistributed Accounts.

5. I first contemplated litigation after I received notice of the change to the ESOP in 2010. I then contacted former employees I knew about their interest in bringing a lawsuit. Out of the ten or so employees I contacted, four or five were willing to get actively involved.

6. I then researched firms with ESOP experience and interviewed four or five firms about my potential case. Through those interviews, I selected Cohen Milstein Sellers & Toll PLLC ("CMST") to represent me and the potential class. When I retained CMST in June 2012, I executed a retainer agreement which provided that my attorneys could request up to one-third of any recovery.

7. If my attorneys had not been willing to take this suit on contingency and advance the cost of litigation, I would probably not have filed this suit due to cost of prosecuting this case.

8. I understand that counsel for the Class is requesting an award of 30% of the recovery, and I support their request.

9. After I retained Cohen Milstein, I began extensive conversations with Joe Barton and Bruce Rinaldi. I spent approximately 50 hours gathering and providing the attorneys with

Exhibit 3

plan documents, background information on the ESOP, correspondence with JELD-WEN, and other documentation and information.

10.  Prior to filing the lawsuit, I exhausted my administrative remedies through the JELD-WEN, Inc. ESOP Plan administrative process, which included submitting a claim for benefits, appealing JELD-WEN's denial of my claim, making a request for plan documents pursuant to ERISA § 104(b), and submitting two requests for documents reviewed during the administrative review process.

11.  I have read the pleadings filed in this case, including the initial complaint and the briefing on the change of venue, the consolidated amended complaint and documents related to the settlement. In all, I estimate that I spent more than 20 hours reviewing case filings.

12.  I have actively assisted in discovery by reviewing most of the documents and data that Defendants have produced, for a total of approximately 60 hours of review. Prior to the mediation, I had conducted a review and analysis of the class data that was used in connection with negotiating the settlement at the mediation.

13.  In August of 2013, I traveled to Chicago, and stayed for two nights to attend an initial mediation hearing. This required me to travel to the Seattle metro area and fly to Chicago. As the Mediation went late into the night on the second day, I missed my return flight. At the end of this lengthy mediation session, I personally approved the preliminary settlement amount. I would estimate that I expended at least 30 hours in connection with participating in the initial mediation (between travel, time preparing for it while in Chicago and time at the mediation). I read the mediation statement that was submitted as well as a number of other materials to prepare for the mediation.

Exhibit 3

14. On August 8, 2014, I attended the 30(b)(6) deposition of the Plan and the interview of Ronald Saxton in Portland, Oregon. I traveled to the deposition at my own expense, and had to travel to the Seattle metro area by personal auto to Portland. I spent a total of two nights in Portland for the deposition. I expended approximately 25 hours attending this deposition and the interview.

15. At the post-settlement interview of Defendant Ronald Saxton in Portland, Oregon. I assisted Co-Lead Class Counsel in the questioning of Mr. Saxton and information that had been provided in written reports of the ESOP's valuation.

16. At the deposition, I provided questions to the attorneys and requests for clarification. My intimate knowledge of the company and the ESOP allowed Co-Lead Class Counsel to ask more detailed and specific questions about the ESOP.

17. In preparation with the post-settlement deposition of the representative of the Plan, I assisted counsel in discovering a discrepancy between the data Defendants provided and the Form 5500s they filed with the Department of Labor. That discovery revealed that there were 740 participants that were not included in the data Defendants provided, which equated to 740 class members missing from Defendants' production of class data. As a result of that discovery, Co-Lead Class Counsel was able to negotiate an additional $1.5 million be added to the settlement.

18. I reviewed numerous drafts of the settlement term sheet as well as multiple drafts of the settlement agreement. During the settlement negotiations, I communicated with my attorneys concerning the acceptable final number for the Settlement Amount. I have engaged in countless telephone calls with my attorneys about the litigation, the settlement, whether to settle and provided numerous comments on the terms of the settlement.

Exhibit 3

19. In late 2011, my position with Milgard Windows and Doors was terminated. After my termination, I had difficulty securing another position. It is my belief, that at least one job offer was rescinded when human resources at that company discovered that I had sued JELD-WEN, who was a major customer for that company. I have only recently this year been able to secure employment.

20. Overall, I have spent a minimum of 200 hours on this case. I initiated the case, found attorneys to represent my and the other class members' interests, exhausted my administrative remedies, gathered information, reviewed court filings, reviewed data and documents produced in discovery, participated in negotiations and mediations, and the settlement of this case. I have spent an enormous amount of time and effort to help bring this case to a satisfactory conclusion for members of the settlement classes.

The foregoing is true and correct to the best of my knowledge and belief.

Executed on July 16, 2015 at Puyallup, WA

_____
Robert W. Jimerson

Exhibit 3