UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
MEDFORD DIVISION

| | |
|---|---|
| RONNIE DOOLEY, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>RONALD SAXTON, *et al.*,<br><br>Defendants. | Case No. 1:12-CV-1207-CL<br>(Consolidated with Case No.: 1:13-cv-00177-CL and Case No.: 3:13-cv-00395-CL)<br><br>**CLASS ACTION UNDER ERISA** |

## DECLARATION OF PHILIP N. BELLOTTI

I, Philip N. Bellotti, declare under penalty of perjury of the laws of the United States:

1. I am an adult over the age of eighteen. I am one of the named plaintiffs in the above-captioned consolidated litigation challenging the 2010 amendment and new expenses and have been appointed as one of the class representatives.

2. I am a former employee of JELD-WEN and a current participant in the JELD-WEN ESOP. I began working for JELD-WEN in 1992 as the Controller of Trendwest, an affiliate of JELD-WEN. I became a participant in the JELD-WEN ESOP on November 1, 1993. I worked for the next sixteen years as a Controller or Group Controller for a number of JELD-WEN Divisions and affiliated entities. My final position with JELD-WEN was as Group Controller-Pacific Rim. I terminated my employment with JELD-WEN on September 10, 2008 and at that time was a fully vested participant in the ESOP, having accumulated 16 years of vesting credits.

3. As of December 31, 2008 (the December 31 following my separation from employment with JELD-WEN), my total accrued benefit under the Plan (i.e., the combined

Exhibit 6

balance of all the Participant Accounts maintained for the Plaintiff by the Administrative Committee before the crediting of any future interest credits), was valued at $242,345.36.

4. As a result of the 2010 amendment, my benefits under the Plan were approximately $67,800 less than if the 2010 ESOP amendment had not been implemented by the Administrative Committee and my benefits had been determined and valued in conformity with the terms of the Plan in effect at the time of my termination.

5. I estimate that I spent over 50 hours on this litigation.

6. I first became involved with this litigation in 2011, when I began working with Robert Jimerson to seek legal representation. I assisted Mr. Jimerson and discussed strategy as we sought legal representation.

7. When I retained CMST in August 2012, I executed a retainer agreement which provided that my attorneys could request up to one-third of any recovery. If my attorneys had not been willing to take this suit on contingency and advance the cost of litigation, I would not have filed this suit due to cost of prosecuting this case.

8. I understand that Class Counsel is requesting an award of 30% of the recovery, and I support their request.

9. I have read a number of pleadings filed in this case, including the consolidated amended complaint.

10. In August of 2013, I participated in the mediation by telephone. I was willing to attend the mediation in person, but it was decided for purposes of reducing expense that one of the clients represented by Cohen Milstein would attend in person and the others would attend by telephone. It was agreed that Bob Jimerson would be the person to attend in person.

Exhibit 6

11. I participated in telephone conference calls with my attorneys and the other plaintiffs represented by Cohen Milstein at least four times, if not more. Additionally, I spoke with Bob Jimerson about this matter over the phone approximately twenty times.

12. I reviewed drafts of the settlement term sheet as well as drafts of the settlement agreement. During the settlement negotiations, I communicated with my attorneys concerning the acceptable final number for the Settlement Amount, whether to settle and provided numerous comments on the terms of the settlement.

The foregoing is true and correct to the best of my knowledge and belief. Executed on July 15, 2015 at Pleasanton, California.

Philip N. Bellotti

Exhibit 6