IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

RONNIE DOOLEY et al, individually and
on behalf of all others similarly situated

          Plaintiffs,

v.

RONALD SAXTON, RODERICK C.
WENDT, R. NEIL STUART, and JELD-
WEN EMPLOYEE STOCK OWNERSHIP
& RETIREMENT PLAN,

          Defendants.

Case No. 1:12-CV-1207-MC
Consolidated with Case Nos: 1:13-CV-177-MC & 1:13-CV-395-MC

### DECLARATION OF R. JOSEPH BARTON

Pursuant to 28 U.S.C. § 1746, I, R. Joseph Barton, declare under the penalties of perjury of the laws of the United States as follows:

1.     I am an attorney and a partner in the law firm of Cohen Milstein Sellers & Toll, PLLC, 1100 New York Avenue, NW, Suite 500, Washington, DC 20005. I am counsel for Plaintiff in the above-referenced matter. I am an active member of the Bars of the State of California and the District of Columbia and am admitted *pro hac vice* in this matter.

**Cohen Milstein Sellers & Toll, P.L.L.C.**

2.     Cohen Milstein Sellers & Toll, P.L.L.C. ("Cohen Milstein") is a law firm that focuses primarily on plaintiffs'-side complex and class action litigation that has extensive experience in managing large class action lawsuits in general, and employment and employee benefit class actions in particular. Cohen Milstein is and has been sole Lead or Co-Lead Class Counsel in a number of employment and employee class actions. My Firm regularly represents plaintiffs in class action litigation, although the Firm is also hired by individuals, entities or

1

Exhibit 11

fiduciaries to represent clients on either an hourly or blended basis (i.e. partially contingent). In class action cases, we operate nearly exclusively on a contingent fee basis.

3. The Firm and its attorneys have repeatedly received accolades from various legal publications and public interest organizations, as well as courts, for its work. For example, in September 2014, Cohen Milstein was selected as one of the top 50 Elite Trial Lawyer firms in the country by the National Law Journal. In 2013 and 2014, Cohen Milstein was named a "Most Feared Plaintiffs Firm" by Law360. In 2015, 2014, 2013, 2012, 2011, 2006 and 2003, Cohen Milstein was selected as one of a handful of firms to be included on the National Law Journal's "Plaintiffs' Hot List." In 2014, the Firm was one of a handful of firms on the National Law Journal's "Midsize Hot List." More information about most of these accolades is listed on our website at http://www.cohenmilstein.com/about.php?AboutusID=4.

4. As a result of Cohen Milstein's commitment to perform pro bono work for a variety of low-wage individuals in the Washington, DC area in a variety of cases involving wage and hour, employment discrimination, and employee benefits issues, Cohen Milstein received the Pro Bono Law Firm of the Year Award in 2012 from the DC Employment Justice Center (a nonprofit group dedicated to advocating and protecting the rights of low-wage workers in the Washington, DC area) in large part based on pro bono work performed by me and other attorneys in my Group.

5. Cohen Milstein has been lead counsel or co-lead counsel in a number of ERISA class actions that involved allegations concerning the plans' investments in employer stock, including the following: *Chesemore v. Alliance Holdings, Inc.,* No. 09-CV-413-WMC (W.D. Wis.) (private ESOP litigation); *Estey v. Merrill Lynch & Co., Inc.*, No. 07-CV-10268 (JSR)(DFE) (S.D.N.Y.); *Hans v. Tharaldson*, No. 3:05-CV-115 (D.N.D.) (private ESOP litigation); *Beam v. HSBC Bank* No. 02-CV-0682E(F) (W.D.N.Y.) (private ESOP litigation); *Hargrave v. TXU Corp.*, No. 3:02-cv-2573-K (N.D. Tex.); and *Dynegy, Inc. ERISA Litigation*, No. CIV. A.H-02-3076 (S.D. Tex.). Cohen Milstein has also been appointed to leadership roles

Exhibit 11

in *In re Merck & Co., Inc. Securities, Derivative & ERISA Litigation*, No. 05-2369 (D.N.J.) (Member of the Merck Lead Counsel Committee) and *In re Marsh ERISA Litigation*, No. 04 Civ. 8157 (S.D.N.Y.) (Member of the Executive Committee).

6. In addition, Cohen Milstein is currently or has been lead counsel or co-lead counsel in a number of other employee benefit class action cases including the following: *Slipchenko v. Brunel Energy, Inc.*, No. 4:11-cv-01465 (S.D. Tex.) (violation of COBRA); *Palmason v. Weyerhaeuser Co.*, No. C11-695RSL (W.D. Wash) (breach of fiduciary duty regarding plan investments); *Wagener v. SBC Pension Benefit Plan-Nonbargained Program,* No. 04-7060 (D.D.C.) (miscalculation of pension benefits); *Barnes v. AT&T Pension Benefit Plan-Nonbargained Program*, No. C 08-04058 MHP (N.D. Cal.) (miscalculation of pension benefits); *Mehling v. New York Life Ins. Co.,* No. 99-CV-5417 (E.D. Pa.) (breach of fiduciary duty and excessive fees); *Zhu v. The Fujitsu Group 401(K) Plan*, No. C 03-1148 RMW (N.D. Cal) (vesting violation); and *Simpson v. Fireman's Fund Insurance Company*, No. C 05-00225 CW (N.D. Cal.) (violation of discrimination provision of ERISA § 510); *see also Tuten v. United Airlines, Inc.*, No. 12-cv-01561-WJM-MEH (D. Col.) (USERRA violation by pension plan).

7. The Firm is also hired by fiduciaries of ERISA plans to provide litigation advice or to litigate matters arising under ERISA. One such example is the case *Severstal Wheeling Inc. Retirement Committee v. WPN Corporation*, No. 10 Civ. 954 (LTS) (GWG) (S.D.N.Y.) in which Cohen Milstein was hired to represent the fiduciaries of two ERISA-covered pension plans against their former investment manager.

**R. Joseph Barton**

8. I have nearly 14 years of experience litigating a wide variety of class action and non-class complex cases. I have an AV rating from Martindale-Hubbell in the areas of Employee Benefits, Class Actions and Antitrust and Trade Regulation. Every year since 2013, I have been selected as a Washington DC Super Lawyer. I have been the partner in charge of a number of employee benefits class actions, including cases involving plans that invest primarily

or predominately in employer stock. Since at least 2008, my practice has consisted predominantly of handling employee benefit litigation, usually on behalf of employees although I also handle non-class litigation representing fiduciaries of ERISA-covered plans.

9. I have been lead trial counsel in two class actions that proceeded to trial and trial counsel in other non-class action trials. My most recent trial in a class action case was in *Chesemore v. Alliance Holdings, Inc.*, No. 3:09-cv-00413 (W.D. Wis.) (Trachte and Alliance ESOP litigation), which was tried on liability in 2011 over the course of 8 trial days and one and a half trial days (3 half days) on remedies in 2012, and resulted in a finding of liability in favor of the plaintiff class and a remedies award in excess of $17 million plus prejudgment interest for Plaintiffs and the Class. After the Court had issued decisions on liability and remedies, Plaintiffs and the Class reached settlement with all but one of the defendants in that case. A true and correct copy of excerpts of the final approval hearing is attached hereto as Exhibit A.

10. My most recent non-class action trial for which I was lead trial counsel was a two week bench trial in July 2014, in front of Judge Swain in the Southern District of New York in *Severstal Wheeling Inc. Retirement Committee v. WPN Corporation*, No. 10 Civ. 954 (LTS) (GWG) (S.D.N.Y.); the decision in that bench trial is pending. Additionally, I have prepared several class action cases for trial that have settled shortly before trial, including most recently *Slipchenko v. Brunel*, No. 4-11-cv-01465 (S.D. Tex.), the settlement of which resulted in the largest per class-member recovery in any reported COBRA class action and for which the settlement received final approval earlier this year.

11. On a number of occasions, I have been invited to speak and have spoken on a variety of issues related to civil procedure, class actions and employee benefits at various ABA conferences. I have also been invited to speak and have spoken on litigation generally or class actions specifically at classes at the following law schools: George Washington University School of Law, William & Mary School of Law, and the Texas-Wesleyan School of Law.

4

Exhibit 11

12.  I was the Chair of the Employment Rights Section of the American Association of Justice (AAJ) for 2013-2104, which focuses on all aspects of employment and labor law. I am the Co-Chair of the AAJ Class Action Litigation Group for 2014-2015 and was recently re-elected to serve another term as Co-Chair for 2015-2016. I am and have been for several years, a member of the Publications Committee for the AAJ, which is the Committee that oversees the selection and review of articles for AAJ's award-winning magazine, *Trial*.

13.  Since 2013, I have been the Plaintiffs' Co-Chair of the Civil Procedure Subcommittee for the ABA Employee Benefits Committee. In this position, I am a contributing author and an editor for Chapter 12, *Civil Practice & Procedure* of the ABA Treatise Employee Benefits Law (3d ed.), which is published by BNA.

14.  I am the author of several published articles, including: *Navigating the Unfriendly Skies of ERISA Reimbursement*, Trial Magazine (October 2014); *Determining the Meaning of "Direct Evidence" in Discrimination Cases Within the Eleventh Circuit: Why Judge Tjoflat was (W)right*, 77-OCT Fla. B.J. 42 (2003); *Drowning in a Sea of Contract: Application of the Economic Loss Rule to Fraud and Negligent Misrepresentation Claims*, 41 Wm. & Mary L. Rev. 1789 (2000); and *Utilizing Statistics and Bellwether Plaintiff Trials: What do the Constitution and the Federal Rules of Civil Procedure Permit?* 8 Wm. & Mary Bill Rts. J. 199 (1999). Each of the articles published before 2012 have been cited by courts and commentators.

15.  In 2013, I was retained to and did provide an expert opinion on the scope of ERISA in a European case, *Deminor International & all v/ Ageas/ BNP Paribas Fortis / Merrill Lynch International*, Court of Commerce of Brussels, Chamber 14°, Docket numbers: R.G. n° A/10/00744, R.G. n° A/12/05781, R.G. n° A/12/09039 & R.G. n° A/12/09035.

**This Litigation**

16.  Along with Heffner Hurst, Cohen Milstein was appointed Co-Lead Counsel in this litigation. During the course of this litigation, I was the partner in charge of this litigation. During the course of this litigation, I structured my Firm's work so that the work

Exhibit 11

was conducted efficiently and with cost-savings in mind. I frequently coordinated with Matt Hurst at Heffner Hurst to ensure that work was properly divided between our firms and as appropriate, delegated to Izard Nobel so that the Firms were not duplicating work and efforts. As all three firms had been retained on a contingent fee basis, Class Counsel had every incentive to litigate this case efficiently and to avoid "make work" projects. Any inefficiencies would take time away from other potential revenue-generating work. When more than one attorney worked on a task, it was because we concluded the task was worthy of such attention, could benefit from more than one perspective, or was labor intensive enough to justify such attention or I had delegated the work to a junior attorney and needed to review the work.

17. From my Firm's contemporaneous time records, my Firm expended the following hours for each timekeeper:

| Timekeeper | Rate | Hours | Lodestar |
|---|---|---|---|
| R. Joseph Barton, Partner | $ 655 | 477.25 | $ 312,598.75 |
| Bruce Rinaldi, Of Counsel | $ 790 | 640.5 | $ 505,995.00 |
| Kira Hettinger, Associate | $ 375 | 147.75 | $ 55,406.25 |
| Robyn Swanson, Associate | $ 525 | .75 | $ 393.75 |
| John Fust, Paralegal | $ 260 | 471.25 | $ 122,525.00 |
| Gail Regina, Paralegal | $ 260 | 37.0 | $ 9,620.00 |
| Jason Kolcun, Paralegal | $ 240 | 38.5 | $ 9,240.00 |
| Grace Jang, Paralegal | $ 260 | 22.0 | $ 5,720.00 |
| Alina Lindblom, Paralegal | $ 250 | 4.0 | $ 1,000.00 |
| Christian Craft-Ellison, Paralegal | $ 260 | 1.0 | $ 260.00 |
| Eva Schildhause, Paralegal | $ 245 | .25 | $ 61.25 |

Exhibit 11

18. The rates of each timekeeper are those that are customary for an ERISA attorney of that experience. As my Firm litigates ERISA cases across the country, the rates reflect the national rates for this type of work. My Firm's rates (including my own rate) have been approved by Courts around the country, including most recently in *Chesemore v. Alliance Holdings, Inc.*, No. 09-cv-413-wmc, 2014 WL 4415919 (W.D. Wis. Sept. 5, 2014) and *Tuten v. United Airlines, Inc.*, 41 F. Supp. 3d 1003 (D. Colo. 2014).

19. As reflected in my Firm's time records, my Firm's total lodestar as of June 30, 2015 is $1,022,820 (although some of my June time may not be reflected in these records).

20. I estimate an additional 65 hours of time is necessary to complete this litigation. Prior to the final approval hearing, I will update our time records with additional time that has been incurred.

21. My Firm was first retained by Robert Jimerson on June 15, 2012. After my Firm was retained, we assisted Mr. Jimerson with exhausting his administrative remedies and then prepared a complaint. At the time that we entered into the agreement to represent Mr. Jimerson, our agreement provided for us to obtain attorneys' fees of up to one-third of any recovery. The agreements with each of the other plaintiffs who retained Cohen Milstein, Philip N. Bellotti, Bradley S. Snodgrass, and Steven J. Wolf, contained similar provisions.

22. After each of our clients retained us, attorneys and paralegals at my Firm assisted them in exhausting their administrative remedies. We assisted our clients in exhausting their administrative remedies because based on my experience handling similar litigation involving amendments to ESOPs, I understood that there was not only a potential claim to assert under ERISA § 502(a)(1)(B), which requires exhaustion, but also because there were certain arguments that Defendants could raise with respect to claims under ERISA § 502(g) with respect to cutbacks in ESOPs that would likely not apply to an ERISA § 502(a)(1)(B) claim. As such, I wanted to be able to assert both claims.

Exhibit 11

23.     During the time that my clients were exhausting their administrative remedies, Cohen Milstein assisted my clients obtaining documents from the ESOP that they were entitled to obtain under ERISA and in the administrative process, obtained other publicly available information, reviewed those documents, and researched various legal theories. After three of our clients had exhausted their remedies, Cohen Milstein drafted and filed a Complaint that asserted five different counts, including a claim for benefits under ERISA § 502(a)(1)(B), an anti-cutback claim under ERISA § 204(g), a claim under ERISA § 204(h) and two breach of fiduciary duties claims. As part of our research and investigation, my Firm discovered that the 2010 Amendment did not merely impact terminated employees, but all current participants in the JELD-WEN ESOP. As such, our Complaint included claims on behalf of those persons as well (i.e. the New Expense Class).

24.     At the time that I agreed that Cohen Milstein would take on this litigation, I was aware based on my prior experience handling ESOP litigation, that the litigation could be expensive, hard-fought and lengthy. I understood that ESOP litigation is document intensive, involves complicated factual and legal issues, usually requires expensive and extensive expert testimony and the fiduciaries of ESOPs frequently engage some of the largest law firms to handle the defense of litigation. One my prior ESOP lawsuits has taken 6 years, two trials, and a portion of which is on appeal and efforts are ongoing to collect the judgment.

25.     Because of the novel nature of many of the issues in ESOP litigation, I am also aware that ESOP litigation is risky. Indeed, I am aware of several cases that Plaintiffs have lost, particularly after investing a substantial amount of time and expense. As such, I was well aware that there was a significant likelihood my Firm might recover nothing in this case, given its risky nature. In fact, at the time that Mr. Jimerson approached me to represent him in this litigation, I was aware that he had previously approached another lawyer and law firm that regularly handles ERISA litigation and that firm had declined to take the case.

Exhibit 11

26. The retainer agreements with the clients in this case are consistent with contingency fee retainer agreements that I have entered into with fiduciaries of ERISA plans in non-class litigation. In this case, my clients were sophisticated and as reflected by their JELD-WEN ESOP account balances, had significant financial resources; nonetheless, even these individuals probably could not have afforded to pay for this litigation on an hourly basis.

27. After the complaint was filed and Cohen Milstein was appointed Co-Lead Counsel with Heffner Hurst, Plaintiffs obtained documents and filed a consolidated amended complaint. I personally and another attorney at my Firm with substantial ESOP litigation experience, Bruce Rinaldi, worked significantly on the consolidated amended complaint. Based on the additional information, the Consolidated Amended Complaint alleged several additional claims for breach of fiduciary duties.

28. After obtaining class member data from Defendants, Cohen Milstein, in particular, Bruce Rinaldi, conducted a thorough review of the data and conducted calculations regarding the likely potential losses. Those numbers served the basis for our settlement negotiations at the mediation. I also personally reviewed the data and calculations.

29. Both Bruce Rinaldi and I attended the mediation sessions and I also attended the settlement meeting in Philadelphia. The settlement negotiations were hard fought. Based on my observation, all of my clients took their roles as class representatives very seriously; they participated in numerous discussions with me and Bruce Rinaldi about the case, understood the strengths and weakness of the case, and gave serious consideration as to whether reaching a settlement was in the best interest of the class. After it was discovered that the original data at mediation did not include 740 class members and we had to re-negotiate the terms of the settlement, there were a series of serious negotiations, and were no assurances that the settlement would go through. Both I and my clients were prepared to

Exhibit 11

withdraw from the settlement and litigate the case if an acceptable settlement was not reached.

30. After the settlement in principle was reached, I verbally promised my clients, on behalf of my Firm, that we would not seek more than 30% of settlement recovery in attorneys' fees.

31. I have been substantially and substantively involved in all aspects of this case. I drafted significant portions of the complaint and the amended complaint, attended all of the mediation and settlement discussions, have reviewed and analyzed the class data, had significant and numerous negotiations about the terms of the formal settlement with Defendants, attended and participated in the interview of Ron Saxton and examined the representative of the ESOP at the Rule 30(b)(6) deposition. I have had significant and numerous discussions with my Firm's clients about the legal theories, documents and data produced, the negotiations and the settlement.

32. In any class action case, my Firm expects to recover expenses from the recovery just as it does when we represent clients who agree to pay expenses of the litigation. As is typical of our retainer agreements, our agreements expressly provide that we will recover our expenses in addition to an award for attorneys' fees. The expenses that we seek to recover in class action cases are the same types of expenses that we charge clients in non-class action cases.

33. My Firm's expenses, necessary to the successful prosecution of this case, were as follows:

    a. Mediator fees: $ 7,705.49
    b. Travel: $ 7,016.59
    c. Research charges: $ 7,274.73
    d. Postage: $ 843.89
    e. Other related and necessary expenses: $ 799.41

Exhibit 11

       Total:                                                $ 23,640.11

Prior to the final approval hearing, I will update our submission with additional expenses that have been incurred.

The foregoing is true to the best of my knowledge and belief.

Executed on July 17, 2015 in Washington, D.C.

                                                  R. Joseph Barton

Exhibit 11

# EXHIBIT A

Exhibit 11-A

```
                    UNITED STATES DISTRICT COURT

                FOR THE WESTERN DISTRICT OF WISCONSIN

   * * * * * * * * * * * * * * * * * * * * * * * * * * *

   CAROL CHESEMORE, DANIEL DONKLE,
   THOMAS GIECK, MARTIN ROBBINS, and
   NANNETTE STOFLET on behalf of themselves,
   individually, and on behalf of all others
   similarly situated,

           Plaintiffs,

   -vs-                                 Case No. 09-CV-413-WMC

   ALLIANCE HOLDINGS, INC., DAVID
   FENKELL, A.H.I. INC., AH TRANSITION
   CORPORATION, PAMELA KLUTE, JAMES
   MASTRANGELO, STEPHEN PAGELOW,
   JEFFREY SEEFELDT, ALPHA INVESTMENT
   CONSULTING GROUP, LLC and JOHN MAIER,

           Defendants.                  Madison, Wisconsin
                                        July 24, 2014
   and                                  1:05 p.m.

   TRACHTE BUILDING SYSTEMS, INC.
   EMPLOYEE STOCK OWNERSHIP PLAN
   and ALLIANCE HOLDINGS, INC.
   EMPLOYEE STOCK OWNERSHIP PLAN,

           Nominal Defendants.

   * * * * * * * * * * * * * * * * * * * * * * * * * * *

         STENOGRAPHIC TRANSCRIPT OF SETTLEMENT HEARING
           HELD BEFORE CHIEF JUDGE WILLIAM M. CONLEY,




                Lynette Swenson    RMR, CRR, CBC
             U.S. District Court Federal Reporter
             120 North Henry Street, Rm. 520
                 Madison, Wisconsin  53703
                        (608)255-3821
```

Exhibit 11-A

Case: 3:13-cv-00173-MC Document #: 151-b4 Filed: 07/30/15 Page 14 of 17
Case: 3:09-cv-00413-wmc Document #: 1004 Filed: 10/31/14 Page 2 of 51

2

```
 1  APPEARANCES:

 2  For the Plaintiffs:
                Cohen Milstein
 3              BY:  JOSEPH BARTON
                1100 New York Avenue, N.W.
 4              Madison, Wisconsin  53703

 5              Hurley, Burish & Stanton
                BY:  ANDREW ERLANDSON
 6              33 East Main Street, Ste. 40
                Madison, Wisconsin  53703

 7

 8  For Alliance entities defendants:
                Morgan Lewis & Bockius LLP
 9              BY:  CHARLES JACKSON
                     EMILY GLUNZ (by phone)
10              77 W. Wacker Drive
                Chicago, Illinois  60601
11
                Morgan Lewis & Bockius LLP
12              BY:  CHRISTOPHER WEALS (by phone)
                1111 Pennsylvania Avenue N.W.
13              Washington, D.C.  20004

14  For Trustee Defendants:
                Vedder Price P.C.
15              BY:  CHARLES WOLF  (by phone)
                     PATRICK SPANGLER  (by phone)
16              222 North LaSalle Street
                Chicago, Illinois  60601

17
    For Fenkell Defendants:
18              Jackson & Lewis
                BY:  DAVID JOHANSON
19                   DOUG RUBEL
                725 South Figueroa Street, Ste. 2500
20              Los Angeles, California  90017

21  For Alliance ESOP defendant:
                Groom Law Group
22              BY:  SARAH ZUMWALT (by phone)
                1700 Pennsylvania Ave., NW  Ste. 1200
23               Washington, D.C.  20006

24

25
```

Exhibit 11-A

Case: 3:13-cv-00177-MC Document #: 151-11 Filed: 07/20/15 Page 15 of 17
Case: 3:09-cv-00413-wmc Document #: 1004 Filed: 10/31/14 Page 3 of 51

3

```
 1  For Defendant Stephen Pagelow:
                Bassford Remele
 2              BY:  ALAN SILVER    (by phone)
                JONATHAN NORRIE    (by phone)
 3              33 South Sixth Street, Ste. 3800
                Minneapolis, Minnesota  55402
 4
 5  For Alpha Defendants:
                Laner Muchin
 6              BY:  JAMES CONVERY   (by phone)
                515 North State Street, Ste. 2800
 7              Chicago, Illinois  60654
 8
 9                     * * * *
10       (Proceedings called to order.)
```

11          THE CLERK: Case Number 09-CV-413-WMC. *Carol*

12  *Chesemore v. Alliance Holdings, Inc. et al.* called for

13  settlement approval hearing. May we have the

14  appearances, please.

15          MR. BARTON: Good afternoon, Your Honor. For

16  the plaintiffs, Joseph Barton.

17          MR. ERLANDSON: Good afternoon, Your Honor.

18  Andrew Erlandson for the plaintiffs as well.

19          MR. JACKSON: Good morning, Your Honor. Chuck

20  Jackson for the Alliance entities. On the phone are my

21  partners Chris Weals and Emily Glunz.

22          MR. JOHANSON: Good afternoon, Your Honor.

23  David Johanson and Doug Rubel with Jackson Lewis for the

24  Fenkell defendants.

25          THE COURT: Very good. We are here for a

Exhibit 11-A

Case 1:13-cv-00177-MG Document 145-11 Filed 07/29/15 Page 16 of 17
Case: 3:09-cv-00413-wmc Document #: 1004 Filed: 10/31/14 Page 50 of 51

50

1  least leave the record open to that extent so that I
2  have jurisdiction over disputes.  That would also
3  address any unforeseen problem with respect to the
4  exemption.
5       Anything more for the plaintiffs?
6            MR. BARTON:  No, Your Honor.  Thank you.
7            THE COURT:  All right.  Anything more for the
8  defendants at this time?
9            MR. JACKSON:  Not for Alliance, Your Honor.
10           THE COURT:  All right.  I guess we'll do the
11 list one more time.  What about for the Trachte
12 Trustees?
13           MR. WOLF:  Nothing further, Your Honor.  Thank
14 you.
15           THE COURT:  All right.  For the Alpha
16 defendants.
17           MR. CONVERY:  Nothing further, Your Honor.
18 Thank you for your time in this matter.
19           THE COURT:  All right.  And for the Fenkells.
20           MR. JOHANSON:  Nothing further at this time,
21 Your Honor.
22           THE COURT:  All right.  If I've left anyone
23 out, I'll assume there's nothing more unless I hear from
24 you at this time.
25      Very good.  I do continue to thank the attorneys.

Exhibit 11-A

Case 1:13-cv-00173-MC Document 145-11 Filed 07/29/15 Page 17 of 17
Case: 3:09-cv-00413-wmc Document #: 1004 Filed: 10/31/14 Page 51 of 51

51

1  This must be incredibly frustrating for members of the
2  class who have watched this unfold over too many years.
3  But I can assure you that the lawyering that has
4  occurred in this case, for both sides, but certainly
5  including the lawyers representing the class, has been
6  exceptional and very professionally done and you should
7  feel gratified by that work, notwithstanding the slow
8  movement of the wheels of justice on occasion.  I will
9  do everything we can to bring this to a close.
10         With that said, we are adjourned.  Thank you.
11         (Proceedings concluded at 2:06 p.m.)
12
13                        * * * * *
14         I, LYNETTE SWENSON, Certified Realtime
   and Merit Reporter in and for the State of Wisconsin,
15 certify that the foregoing is a true and accurate record
   of the proceedings held on the 24th day of July 2014
16 before the Honorable William M. Conley, Chief Judge for
   the Western District of Wisconsin, in my presence and
17 reduced to writing in accordance with my stenographic
   notes made at said time and place.
18 Dated this 31st day of October 2014.
19
20                          /s/_____
21                          Lynette Swenson, RMR, CRR
                            Federal Court Reporter
22
23
24 The foregoing certification of this transcript does not
   apply to any reproduction of the same by any means
25 unless under the direct control and/or direction of the
   certifying court reporter.

Exhibit 11-A